# 21-2690(L),

## 21-2691(CON)

To be Argued by:
JONATHAN J. EINHORN

## United States Court of Appeals
## for the
## Second Circuit

―――――――――

UNIVERSITAS EDUCATION, LLC,

*Petitioner-Appellee,*

― v. ―

GRIST MILL CAPITAL, LLC, LAW OFFICES OF CAROLE R. BERNSTEIN
41 Maple Avenue North 41 Maple Avenue North Westport, CT
06880 2032558698,

*Respondents-Appellants,*

NOVA GROUP, INC, as Trustee, Sponsor and Named Fiduciary of The Charter
Oak Trust Welfare Benefit Plan, GRIST MILL TRUST WELFARE BENEFIT
PLAN, AVON CAPITAL LLC, CHARTER OAK TRUST WELFARE BENEFIT
PLAN, PHOENIX CAPITAL MANAGEMENT, LLC, HANOVER TRUST
COMPANY, CARPENTER FINANCIAL GROUP, INC.,

*Respondents,*

―――――――――

*(For Continuation of Caption See Inside Cover)*

―――――――――

On Appeal from the United States District Court
for the Southern District of New York

**BRIEF AND SPECIAL APPENDIX FOR RESPONDENT-
APPELLANT GRIST MILL CAPITAL, LLC AND
MOVANT-APPELLANT DANIEL E. CARPENTER**

LAW OFFICE OF JONATHAN J. EINHORN
129 Whitney Avenue, Suite 1
New Haven, Connecticut 06510
(203) 777-3777

*Attorneys for Respondent-Appellant
Grist Mill Capital, LLC and Movant-
Appellant Daniel E. Carpenter*

DANIEL E. CARPENTER,

*Movant-Appellant.*

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to Fed. R. App. P. 26.1, Appellant Grist Mill Capital, LLC hereby states that is has no parent corporation and no publicly-held corporation owns 10% or more of its stock or units.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF JURISDICTION .......................................................... 4

STATEMENT OF THE CASE .................................................................. 5

STATEMENT OF ISSUES ....................................................................... 6

STATEMENT OF FACTS ......................................................................... 7

    I.      STANDARD OF REVIEW .................................................. 10

    II.     LAW AND ARGUMENT .................................................... 12

          A.     The District Court erred in not Vacating its Turnover Order in that it did not have *In Personam* Jurisdiction over Grist Mill Capital, LLC or Mr. Carpenter ....................... 12

          B.     The District Court erred in not Vacating its Turnover Order in that it did not have Personal Jurisdiction over Grist Mill Capital, LLC or Mr. Carpenter ................................ 21

          C.     The District Court erred in not Vacating its Turnover Order as the Clerk signed the Judgment rather than the District Judge as required by Rule 58(b)(2) Federal Rules of Civil Procedure ........................................................ 30

          D.     The District Court erred in not Vacating its Turnover Order in that it did not have Subject Matter Jurisdiction pursuant to the Supreme Court's decision in Peacock v. Thomas 516 U.S. 349, 351 (1996) .......................................... 35

CONCLUSION ......................................................................................... 36

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*7 W. 57th Realty Co.*,
    2015 WL 1514539 (S.D.N.Y. March 31, 2015)............................................19

*Ackermann v. Levine*,
    788 F.2d 830 (2d Cir. 1986) ........................................................................22

*Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.*,
    190 F.3d 16 (2d Cir. 1998) ...................................................................24, 25

*Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.*,
    8 F. Supp. 2d 372 (S.D.N.Y. 1998) ............................................................21

*American Interinsurance Exchange v. Occidental Fire & Casualty Co.*,
    835 F.2d 157 (7th Cir. 1987) .......................................................................33

*Asahi Metal Indus. v. Superior Court of Cal.*,
    480 U.S. 102 (1987)....................................................................................20

*Bank of America v. Herrick*,
    233 A.D.2d 351 (1996)................................................................................22

Bankers Trust Co. v. Mallis,
    435 U.S. 381 (1978)...............................................................................31, 32

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
    137 S. Ct. 1773 (2017)...........................................................................16, 17

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016) .........................................................................2

*Buck v. Davis*,
    137 S. Ct. 759, (2017)................................................................................10

*Burda Media, Inc. v. Viertel*,
    417 F.3d 292 (2d Cir. 2005) ..................................................................11, 26

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..............................................................14, 16, 17, 19

*Burnley v. City of San Antonio*,
    470 F.3d 189 (5th Cir. 2006) .......................................................................34

*Camreta v. Greene*,
    131 S. Ct. 2020, 179 L. Ed. 2d 1118 (U.S. 2011) ........................................34

*Central Vt. Pub. Serv. Corp. v. Herbert*,
    341 F.3d 186 (2d Cir. 2003) ........................................................10

*China Mariners Assur. Corp. v. M.T. W.M. Vacy Ash*,
    1999 WL 126921 (S.D.N.Y. Mar. 9, 1999)..............................................21

*Chufen Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020) ........................................................12

*Columbus Coated Fabrics v. Industrial Com. of Ohio*,
    498 F.2d 408 (6th Cir. 1974) .......................................................34

*Communications Workers of America v. United Tel. Co.*,
    491 F.2d 207 (6th Cir. 1974) ..................................................34, 35

*Cooper v. Town of East Hampton*,
    83 F.3d 31 (2d Cir. 1996) .........................................................32

*Covington Indus., Inc. v. Resintex A.G.*,
    629 F.2d 730 (2d Cir. 1980) .......................................................10

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014).....................................................1, 2, 6, 18

*DePrins v. Clark*,
    566 Fed. Appx. 608 (9th Cir. 2014) ...........................................34, 35

*Goodyear v. Brown*,
    564 U.S. 915 (2011)...............................................................18

*Gucci Am., Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014) .................................................13, 16, 17

*Guggenheim Capital, LLC v. Birnbaum*,
    722 F.3d 444 (2d Cir. 2013) .......................................................25

*H. C. Cook Co. v. Beecher*,
    217 U.S. 497, 54 L. Ed. 855, 30 S. Ct. 601 (1910) ......................................35

*Hanson v. Denckla*,
    357 U.S. 235 (1958)...............................................................15

*Harmston v. City & Cty. of San Francisco*,
    627 F.3d 1273 (9th Cir. 2010) .....................................................34

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ................................................................14, 17

*Howard Johnson v. Wang*,
7 F.Supp.2d 336 (S.D.N.Y. 1998) .............................................21

*In re Litas Inter'l, Inc.*,
316 F.3d 113 (2d Cir. 2003) .......................................................32

*In re Thelen LLP*,
736 F.3d 213 (2d Cir. 2013) .......................................................12

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945)...............................................6, 13, 14, 15

*Irvin v. Harris*,
944 F.3d 63 (2d Cir. 2019) .....................................................2, 10

*Jaffe & Asher v. Van Brunt*,
158 F.R.D. 278 (S.D.N.Y. 1994)................................................21

*Kulko v. Superior Court of Cal., City and County of San Francisco*,
436 U.S. 84 (1978).....................................................................16

*Liljeberg v. Health Services Acquisition Corp.*,
486 U.S. 847, (1988)..................................................................10

*Macchia v. Russo*,
67 N.Y.2d 592 (1986).................................................................22

*Matarese v. Le Fevre*,
801 F. 2d. 98 (2d Cir. 1986) ......................................................10

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996) ..................................................17, 20

*Milliken v. Meyer*,
311 U.S. 457 (1940)...................................................................14

*Mullane v. Cent. Hanover Bank & Trust, Co.*,
339 U.S. 306 (1950)...................................................................22

*Omni Capital Inter'l v. Rudolf Wolff & Co., Ltd.*,
484 U.S. 97 (1987)................................................................21, 22

*Orix Fin. Servs. v. Phipps*,
2009 WL 2486012 (S.D.N.Y. Aug. 14, 2009) ............................21

*Peacock v. Thomas*,
   516 U.S. 349 (1996)..................................................................1, 6, 9, 35

*Peralta v. Heights Med. Ctr., Inc.*,
   485 U.S. 80 (1988)...................................................................22, 26

*Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*,
   No. 17 Civ. 5553 (LGS) (GWG), 2020 WL 4497160 (S.D.N.Y.
   Aug. 5, 2020), *report and recommendation adopted*, No. 17 Civ.
   5553 (LGS), 2020 WL 7093592 (S.D.N.Y. Dec. 4, 2020), *appeal
   dismissed* (May 21, 2021)..............................................................11

*Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*,
   No. 17 CIV. 5553 (LGS), 2020 WL 7093592 (S.D.N.Y. Dec. 4,
   2020) ....................................................................................26

*Runway Development Group v.
   Pentagen Technologies International Limited*,
   396 F. Supp. 2d 471 (S.D.N.Y. Oct. 31, 2005) .............................24

*Sartor v. Toussaint*,
   70 F. App'x 11 (2d Cir. 2002)....................................................11, 26

*SAS Group, Inc. v. Worldwide Inventions, Inc.*,
   245 F. Supp.2d 543 (S.D.N.Y. 2003) ...........................................18

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
   22 F.4th 103 (2d Cir. 2021) .......................................................13

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018) ......................................................12

*Sullivan v. Barclays*,
   2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ..................................19

*Sunward Elecs., Inc. v. McDonal*d,
   362 F.3d 17 (2d Cir. 2004) ........................................................18

*Triad Energy Corp. v. McNell*,
   110 F.R.D. 382 (S.D.N.Y. 1986)..................................................11

*Tuqui Tuqui Dominicana, S.R.L. v. Castillo*,
   No. 19 Civ. 108, 2020 WL 1689763 (S.D.N.Y. Apr. 7, 2020) .........25, 26, 29

*United States v. Indrelunas*,
   411 U.S. 216 (1973)..................................................................32

*Universitas Educ., LLC v. Bank*,
No. 15-CV-5643 (SAS), 2015 WL 9304551 (S.D.N.Y. Dec. 21, 2015) .........................................................................................1

*Universitas Education, LLC v. Nova Group, Inc.*,
No. 1:11-cv-01590-LTS-HBP (LTW) (S.D.N.Y. March 31, 2020)...............1

*Velez v. Vassallo*,
203 F. Supp. 2d 312 (S.D.N.Y. 2002) .........................................................29

*Walden v. Fiore*,
571 U.S. 277 (2014)...............................................................................*passim*

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016) .................................................................*passim*

*Wasserman Media Grp., LLC v. Bender*,
No. 10 CIV. 8783 SAS, 2012 WL 1506181 (S.D.N.Y. Apr. 26, 2012) ...............................................................................................*passim*

*World–Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)..................................................................................13

*Yniques v. Cabral*,
985 F.2d 1031 (9th Cir.1993) .....................................................................33


STATUTES & OTHER AUTHORITIES:

28 U.S.C. §1291 ................................................................................................4

28 USC 2106 .............................................................................................7, 36

28 USC 2108 .....................................................................................................3

CPLR § 308(2) ................................................................................................29

CPLR § 308(6) ................................................................................................29

CPLR 308.................................................................................................*passim*

CPLR 308(2) ...................................................................................................29

CPLR 318 ........................................................................................................28

CPLR 5225 ......................................................................................................24

CPLR 5225(a) ...............................................................................2, 22, 24, 25

vi

CPLR 5225(b) ......................................................................*passim*

Fed. R. Civ. P. 4 ........................................................................21

Fed. R. Civ. P. 4(e) ................................................................6, 26

Fed. R. Civ. P. 4(e)(1) ..........................................................27, 30

Fed. R. Civ. P. 4(e)(2) ..............................................................27

Fed. R. Civ. P. 54(b) ..................................................................26

Fed. R. Civ. P. 55 ......................................................................26

Fed. R. Civ. P. 55(c) ..................................................................26

Fed. R. Civ. P. 58 ......................................................31, 32, 33, 34

Fed. R. Civ. P. 58(a) ..................................................................31

Fed. R. Civ. P. 58(b) ............................................................30, 33

Fed. R. Civ. P. 58(b)(1) ..............................................................34

Fed. R. Civ. P. 58(b)(2) ......................................................6, 30, 31

Fed. R. Civ. P. 4(e)(1) ..........................................................27, 30

Fed. R. Civ. P. 60(b) ............................................................10, 33

Fed. R. Civ. P. 60(b)(1) ..............................................................11

Fed. R. Civ. P. 60(b)(4) ........................................................*passim*

Fed. R. Civ. P. 60(b)(6) ........................................................*passim*

Fed. R. Civ. P. 69(a) ............................................................23, 24

David D. Siegel, Practice Commentaries, N.Y. C.P.L.R. 5225 (McKinney 1997) ..............................................................................24

## PRELIMINARY STATEMENT

The District Court did not have jurisdiction over Grist Mill Capital, LLC or Daniel Carpenter based on the Supreme Court's Decisions in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) and *Walden v. Fiore,* 571 U.S. 277 (2014)

It is likely that Grist Mill Capital, LLC and Mr. Carpenter would not have had to do their Rule 60(b)(4) and Rule 60(b)(6) Motions below had they been in front of the Hon. Shira Scheindlin as the later addressed a similar issue in the past involving some of these same parties.

In *Universitas Educ., LLC v. Bank,* No. 15-CV-5643 (SAS), 2015 WL 9304551, at *2–4 (S.D.N.Y. Dec. 21, 2015)*,* Judge Scheindlin examined all of the facts of the case and concluded that any lawsuit against any party brought by Universitas after October 2012 was time-barred because the Charter Oak Trust was indeed a welfare benefit plan and Universitas knew that it was not getting paid no later than October 2009.

Since the Charter Oak Trust was a welfare benefit plan that failed to pay a benefit to its beneficiary, the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349, 351 (1996), is dispositive of this case. Judge Swain realized that herself when she dismissed the latest foray by Universitas in suing innocent third parties in 2020. See *Universitas Education, LLC v. Nova Group, Inc.*, NO. 1:11-cv-01590-LTS-HBP (LTW) (S.D.N.Y. March 31, 2020).

Similarly, Judge Scheindlin dismissed an attempt by a party trying to do exactly what Universitas attempted to do in this case—which is using Federal Rule 69 to do a "Turnover Motion" under CPLR 5225(a) when it is clear from the law that a separate action is required against the third-party pursuant to CPLR 5225(b). *See Wasserman Media Grp., LLC v. Bender*, No. 10 CIV. 8783 SAS, 2012 WL 1506181 (S.D.N.Y. Apr. 26, 2012).

Finally, the Motion to vacate the Turnover Judgment ought to have been granted as neither Mr. Carpenter nor GMC were ever properly served as is required for personal jurisdiction over a party. See, for example a finding of no personal jurisdiction over Lockheed Martin in Connecticut after they bought Sikorsky Aircraft of Stratford, on *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) (*See Brown v. Lockheed Martin Corp*., 814 F.3d 619, 639–41 (2d Cir. 2016).,

GMC, a Connecticut LLC with no minimum contacts with New York, respectively requests that this Court grant its Rule 60(b)(4). Furthermore, the Judgment was void as a matter of law and Rule 60(b)(4) treatment is mandatory and not discretionary, *See e.g. Irvin v. Harris*, 944 F.3d 63, 68 (2d Cir. 2019).

As the Supreme Court's decisions in *Daimler* and *Walden v. Fiore,* 571 U.S. 277 (2014) make clear, there was no action taken by Mr. Carpenter or GMC in New York and therefore, there was no jurisdiction over GMC and Mr. Carpenter

and the jurisdictional mandates under *Daimler* and *Walden v. Fiore* require

vacating the turnover judgment pursuant to 28 USC 2106 and Rule 60(b)(4).

## STATEMENT OF JURISDICTION

This is an appeal from an Order of the United District Court for the Southern District of New York in two consolidated cases (SPA-22), denying Motions to Vacate a Turnover Judgment filed pursuant to Federal Rules of Civil Procedure 60(b)(4) and 60(b)(6). This court has jurisdiction pursuant to 28 U.S.C. §1291.

## STATEMENT OF THE CASE

This is an appeal from an Order of the Southern District of New York (Swain, C.J.), denying two Motions to Vacate a Turnover Judgment (see SPA-22).

The District Court entered a Turnover Judgment at –SPA-13 and SPA-15, after a previous judgment confirming an arbitration award at SPA-1 and SPA-7. The Appellants moved to vacate that turnover judgment atA-329 and A-380.

The appellants argue, principally, that there was no subject matter or personal jurisdiction over them and that the Judgment at SPA-19 was invalid in that it was not signed by the District Judge.

# STATEMENT OF ISSUES

1.     The District Court plainly erred by not establishing personal jurisdiction over Grist Mill Capital, LLC or Mr. Carpenter pursuant to *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny including *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) and *Walden v. Fiore*, 571 U.S. 277 (2014).

2.     The District Court plainly erred by not following the clear mandate of how service of process must be done pursuant to CPLR 5225(b) as a separate action. It was Plain Error that neither Grist Mill Capital, LLC or Mr. Carpenter was properly served as required under CPLR 308 to commence an action and establish the District Court's jurisdiction Pursuant to Fed. R Civ. P. 4(e).

3.     The Clerk's Judgment (Dkt No. 475) was void as a matter of law because Rule 58(b)(2) requires the Judge to Approve and Sign the order dealing with more than just damages.

4.     The District Court plainly erred by not establishing that it had Subject Matter Jurisdiction pursuant to the Supreme Court's decision in *Peacock v Thomas* 516 U.S. 349, 351 (1996).

## STATEMENT OF FACTS

This case centers on whether the District Court had personal jurisdiction over two of the parties involved with the Charter Oak Trust Welfare Benefit Plan. The underlying facts of this case are largely not disputed—but rather it is the characterization of the transactions made in 2009 that are in dispute. However, this Appeal is focused on the Court's inherent powers pursuant to 28 USC 2106 to vacate a judgment pursuant to Rule 60(b)(4) because even in the light of the facts most favorable to the District Court's view, the Defendants had no minimum contacts with New York and the denial of benefits under ERISA happened in Connecticut as did all of the financial transactions identified by Universitas as "fraudulent" conveyances. The only thing that happened in New York was the Arbitration, which the District Court affirmed in June 2012. Neither Grist Mill Capital nor Mr. Carpenter participated in that arbitration.

The Charter Oak Trust Welfare Benefit Plan was a Multiple Employer Trust operated out of Simsbury, Connecticut. Its Sponsor was Nova Group, Inc., a Connecticut licensed and domiciled corporation. Wayne Bursey was the principal of Nova Group, Inc., and the Trustee of the Charter Oak Trust. The Grist Mill Capital, LLC. that worked with the Charter Oak Trust was and still is a Connecticut LLC that was established by Attorney Robert Cox of the law firm Halloran & Sage in Connecticut. Attorney Cox was and still is the designated Agent for Service of

Process. Wayne Bursey and Jack Robinson were the two principals of Grist Mill Capital, LLC, but they are both deceased—Wayne Bursey died in 2015 and Jack Robinson died in 2017. Attorney Cox is still alive and well but was never served with any process by Universitas as required by law.

Defendant Daniel Carpenter was and has been a resident of Connecticut. He has denied all of the claims by Universitas, but for the purposes of this appeal, he was never served with any type of process and Carole Bernstein, who was the attorney for a different Grist Mill Capital, LLC—Delaware, wrote a letter to Judge Swain saying that she had been fired in May of 2014 well before the Clerk's Judgment of August 2014 was issued. Even assuming that sending an email to an attorney constitutes "Service of Process," Attorney Bernstein never represented Mr. Carpenter personally or Grist Mill Capital—CT, which is the entity that had a secured interest on all of the Charter Oak Trust policies, including the Sash Spencer policy that is the subject of the denial of benefits, the Arbitration, and the resulting litigation that lead to the Clerk's Judgment that is the subject of this Appeal. There is also no dispute that Universitas itself dismissed Grist Mill Capital from the Arbitration before it began and then dismissed Mr. Carpenter before the second phase of the Arbitration began. In fact, Mr. Carpenter's name is nowhere to be found in the two previous appeals before this Court in 2013 and 2015.

Therefore, Grist Mill Capital and Mr. Carpenter wish to respectfully suggest that the Supreme Court's decisions in *Peacock v. Thomas* and *Walden v. Fiore* are dispositive of this case because Wayne Bursey of Nova Group CT moved the money to Grist Mill Capital because Grist Mill Capital had UCC filings and a secured collateral interest in all of the policies and actually funded all of the insurance policies including the Sash Spencer policies. But for the purpose of this case, Mr. Carpenter and GMC respectively suggest that the District Court did not have jurisdiction over the Defendants because they were not properly served and none of the allegedly fraudulent acts occurred in New York and the Supreme Court has made it clear that the fact that Universitas was a New York plaintiff does not mean that the District Court in New York has personal jurisdiction over Mr. Carpenter or GMC.

## I.  STANDARD OF REVIEW

"Rule 60(b) vests wide discretion in courts, but we have held that relief under Rule 60(b)(6) is available only in extraordinary circumstances. In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863–864, (1988). *See Buck v. Davis*, 137 S. Ct. 759, 777–78, (2017). Further, Fed. R. Civ. P. 60(b)(6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice and to constitute a grand reservoir of equitable power to do justice in a particular case". *Matarese v. Le Fevre*, 801 F. 2d. 98, 106 (2d Cir. 1986).

When we consider a Rule 60(b)(4) motion challenging a judgment obtained without due process, a deferential standard of review is not appropriate because if the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)." *Central Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 189 (2d Cir. 2003). Indeed, Rule 60(b)(4) "is unique ... because relief is not discretionary and a meritorious defense is not necessary." *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 733 n.3 (2d Cir. 1980). *Irvin v. Harris*, 944 F.3d 63, 68 (2d Cir. 2019).

"A judgment is void for lack of personal jurisdiction over the defendant where service of process was not properly effected," and "actual notice of suit [cannot] cure a failure to comply with the statutory requirements for serving process." *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) (summary order) (citations omitted). Rule 60(b)(4) implicates a different legal standard than 60(b)(1) or (6), because "[w]hen a judgment entered against the defaulting party is void, the Court has no discretion and is compelled to grant the motion [to set aside a default judgment] for the reason that a void judgment cannot be enforced." *Id*.; accord *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005).

Moreover, "[t]he burden of proof [in Rule 60(b)(4) motions] is properly placed on the party asserting" that the judgment is not void. *Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 385 (S.D.N.Y. 1986). However, "on a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur." *Burda Media*, 417 F.3d at 299. "Where, as here, it is in dispute whether the defendant had actual notice before the entry of default judgment, courts have found that the *burden of proof properly remains with the plaintiff*." *Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, No. 17 Civ. 5553 (LGS) (GWG), 2020 WL 4497160, at *4 (S.D.N.Y. Aug. 5, 2020)(emphasis added),

11

report and recommendation adopted, No. 17 Civ. 5553 (LGS), 2020 WL 7093592 (S.D.N.Y. Dec. 4, 2020), appeal dismissed (May 21, 2021).

"We review a district court's dismissal of an action for want of personal jurisdiction *de novo*, construing all pleadings and affidavits in the light most favorable to the plaintiff." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018). "[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Id*. Where a district court's jurisdictional finding is premised on an application of state law, we similarly review the district court's interpretation of state law *de novo. In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). When deciding a question of state law, "we ... look to the state's decisional law, as well as to its constitution and statutes." *Id.; see e.g., Chufen Chen v. Dunkin' Brands, Inc*., 954 F.3d 492, 497 (2d Cir. 2020).

## II.   LAW AND ARGUMENT

### A. The District Court erred in not Vacating its Turnover Order in that it did not have *In Personam* Jurisdiction over Grist Mill Capital, LLC or Mr. Carpenter

Before a court may exercise personal jurisdiction over a defendant, three requirements must be met: (1) "the plaintiff's service of process upon the defendant must have been procedurally proper"; (2) "there must be a statutory basis for personal jurisdiction that renders such service of process effective"; and (3) "the exercise of personal jurisdiction must comport with constitutional due process

principles." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327–28 (2d Cir. 2016) ... As the Supreme Court has long held, due process demands that each defendant over whom a court exercises jurisdiction have some "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Waldman*, 835 F.3d at 330–31 (applying analysis to Fifth Amendment). *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 121 (2d Cir. 2021).

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). "[T]he touchstone due process principle has been that, before a court may exercise jurisdiction over a person or an organization, such as a bank, that person or entity must have sufficient minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (*quoting Inter'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

As an initial matter, ***the "minimum contacts" inquiry principally protects the liberty of the nonresident defendant, not the interests of the plaintiff***. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (emphasis added). The

Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. *World–Wide* at 291. Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have "certain minimum contacts ... such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Inter'l Shoe* at 316 (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *See Walden* at 283-84. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State. First, the relationship must arise out of contacts that the "defendant himself" creates with the forum State. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. *See World–Wide Volkswagen* at 291-92.

The Supreme Court has consistently rejected attempts to satisfy the defendant-focused "minimum contacts" inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State. *See Helicopteros Nacionales de*

*Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"). The Court has thus rejected a plaintiff's argument that a Florida court could exercise personal jurisdiction over a trustee in Delaware based solely on the contacts of the trust's settlor, who was domiciled in Florida and had executed powers of appointment there. *Hanson v. Denckla*, 357 U.S. 235, 253-54 (1958). It has likewise held that Oklahoma courts could not exercise personal jurisdiction over an automobile distributor that supplies New York, New Jersey, and Connecticut dealers based only on an automobile purchaser's act of driving it on Oklahoma highways. *World–Wide Volkswagen* at 298.

Second, the "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. *See, e.g., Inter'l Shoe* at 319 (Due process "does not contemplate that a state may make binding a judgment *in personam* against an individual ... with which the state has no contacts, ties, or relations"); *Hanson* at 251 ("However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him").

But the plaintiff cannot be the only link between the defendant and the forum; rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. *See Burger King* at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot"); *Kulko v. Superior Court of Cal., City and County of San Francisco*, 436 U.S. 84, 93 (1978) (declining to "find personal jurisdiction in a State ... merely because [the plaintiff in a child support action] was residing there"). The requirements of *International Shoe* must be met as to each defendant over whom a court exercises jurisdiction. Due process requires that, for a defendant be haled into court, the "minimum contacts" must be based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State. *Burger King* at 475.

For specific jurisdiction, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal*., 137 S. Ct. 1773, 1780 (2017) (*quoting Goodyear* at 919). Put differently, "[s]pecific jurisdiction ... permits adjudicatory authority only over issues that 'aris[e] out of or relat[e] to the [entity's] contacts with the forum.'" *Gucci Am.* at 134 (*quoting*

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

In principle, the two-step analysis is well established: First, the court must decide if

the individual or entity has "purposefully directed his activities at ... the forum and

the litigation ... arise[s] out of or relate[s] to those activities." *Burger King* at 472.

Second, the court must "determine whether the assertion of personal jurisdiction

would comport with fair play and substantial justice." *Id.* at 476. But "[t]he Supreme

Court has not ... addressed specific jurisdiction over nonparties." *See Gucci Am.* at

136.

In *Gucci America*, the Second Circuit suggested the following framework for

nonparties: (1) "first assess the connection between the nonparty's contacts with the

forum and the order at issue" and (2) "then decide whether exercising jurisdiction

for the purposes of the order would comport with fair play and substantial justice."

*Id.* at 137. In the liability context, "[t]he exercise of specific jurisdiction depends on

in-state activity that gave rise to the episode-in-suit." *Waldman v. Palestine

Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016); *see also Bristol-Myers Squibb* at

1781 (holding that unrelated contacts cannot diminish the required showing of an

affiliation between the forum and the underlying controversy).

"To determine whether a defendant has the necessary 'minimum contacts,' a

distinction is made between 'specific' and 'general' personal jurisdiction." *Id.* at

331, (*citing Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567-68 (2d

Cir. 1996)). "A court may assert general jurisdiction over a foreign defendant to hear any and all claims against that defendant only when the defendant's affiliations with the State in which the suit is brought are so constant and pervasive so as to render it essentially at home in the forum State." *Waldman* at 331 (*quoting Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014)). "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and therefore subject to the State's regulation." *Id.* (*quoting Goodyear v. Brown*, 564 U.S. 915, 919 (2011)); *see also Licci* at 170 ("Where the claim arises out of, or relates to, the defendant's contacts with the forum—*i.e.*, specific jurisdiction [is asserted]— minimum contacts [necessary to support such jurisdiction] exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.") *Id.* (*quoting Brussels Lambert* at 127).

Specific personal jurisdiction is predicated on "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum." *Goodyear* at 919. "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* A plaintiff must plead personal jurisdiction with respect to each claim asserted. *Sunward Elecs., Inc. v. McDonal*d, 362 F.3d 17, 24 (2d Cir. 2004) (*citing SAS Group, Inc. v.*

*Worldwide Inventions, Inc.*, 245 F. Supp.2d 543, 548 (S.D.N.Y. 2003)). "[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum...." *Walden* at 284 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "The activities of plaintiffs or third parties alone will not confer jurisdiction, and the court's analysis is directed to the defendant's contacts with the forum itself and 'not the defendant's contacts with persons who reside there." *Sullivan v. Barclays*, 2017 WL 685570, at *43 (S.D.N.Y. Feb. 21, 2017) (*quoting Walden* at 284).

In addition, the underlying "suit-related conduct must create a substantial connection with the forum State." *Walden* at 284. "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285-86. Therefore, the analysis necessarily includes consideration of the claims' elements and where the conduct occurred. *Waldman* at 335-39. The forum must be the "focal point" or "nucleus" of plaintiff's alleged harm. *Id.* at 340. Continuous presence in the forum does not confer specific jurisdiction unless that presence involves "suit-related conduct." *Id.* at 335; *see also 7 W. 57th Realty Co.*, 2015 WL 1514539, at *10 (S.D.N.Y. March 31, 2015) ("Plaintiff must demonstrate that the Foreign Banks' suit-related conduct creates minimum contacts with New York, however, not simply that the Foreign Banks have a presence here or conduct business activities here in general.").

If the contacts are not sufficient, the due process inquiry ends. *See Metro. Life Ins*. at 568-69. If the court has either general or specific jurisdiction, it must turn to the second step of the due process inquiry, and determine "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' - that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci* at 60 (*citing Chloe* at 164). The "reasonableness" analysis requires district courts to evaluate the following five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Chloe* at 164-65 (*citing Asahi Metal Indus. v. Superior Court of Cal*., 480 U.S. 102, 109 (1987)).

Therefore, based on the Supreme Court's decision in *Walden,* and this Court's decisions in *Gucci* and *Waldman*, Appellants respectfully submits that this Court did not have personal jurisdiction over Mr. Carpenter and therefore the judgment was void as a matter of law and should be vacated pursuant to Rule 60(b)(4), or in the interests of justice pursuant to Rule 60(b)(6).

**B. The District Court erred in not Vacating its Turnover Order in that it did not have Personal Jurisdiction over Grist Mill Capital, LLC or Mr. Carpenter**

"A judgment obtained in the absence of *in personam* jurisdiction is void." *Orix Fin. Servs. v. Phipps,* 2009 WL 2486012, at *2 (S.D.N.Y. Aug. 14, 2009) (*quoting China Mariners Assur. Corp. v. M.T. W.M. Vacy Ash,* 1999 WL 126921, at *3 (S.D.N.Y. Mar. 9, 1999) (*citing Jaffe & Asher v. Van Brunt,* 158 F.R.D. 278, 279 (S.D.N.Y. 1994)). "Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction over a defendant." *Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.,* 8 F.Supp.2d 372, 375 (S.D.N.Y. 1998).

A court lacks *in personam* jurisdiction where a judgment has been "obtained by defective service." *Omni Capital Inter'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 103 (1987). Accordingly, a judgment obtained by way of defective service is void for lack of personal jurisdiction and must be set aside as a matter of law." *Id.* (*citing Howard Johnson v. Wang,* 7 F.Supp.2d 336 (S.D.N.Y. 1998)). Rule 4(e) governs the procedure for service of individuals. This rule states that proper service may be effected by, *inter alia*, "following state law for serving a summons ... in the state where the district court is located or where service is made." Fed. R. Civ. P. 4.

Since service of process is the means by which a court asserts jurisdiction to adjudicate the rights of a party, especially when the defendant was not a party to the original arbitration, a judgment is void if the defendant was not properly served

because the court is powerless to enter judgment against that defendant. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84-87 (1988). Moreover, the fact that Petitioner may have had actual notice of the underlying action does not suffice to confer jurisdiction in the absence of proper service. *See, e.g., Macchia v. Russo*, 67 N.Y.2d 592 (1986); *Bank of America v. Herrick*, 233 A.D.2d 351 (1996). This Motion must be granted if service of process was insufficient because "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital* at 104. Service of process must satisfy not only the rule under which service is made but also the constitutional requirement of due process. *Ackermann v. Levine*, 788 F.2d 830, 838 (2d Cir. 1986). To satisfy due process, the serving party must provide "notice reasonably calculated, **under all circumstances**, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust, Co.*, 339 U.S. 306, 314 (1950) (emphasis added).

Neither Grist Mill Capital, LLC nor Mr. Carpenter was properly served under CPLR 308, therefore depriving the District Court of jurisdiction as a matter of law. Moreover, it was Plain Error for Judge Swain to entertain a "Turnover Motion" under CPLR 5225(a) when Judge Scheindlin made it clear that when you are going after a third party, you have to utilize CPLR 5225(b). *See Wasserman Media Grp.,*

*LLC v. Bender*, No. 10 CIV. 8783 SAS, 2012 WL 1506181 (S.D.N.Y. Apr. 26, 2012). In that case, Petitioner Wasserman Media Group, LLC ("WMG"), had a judgment against the individual respondent, Jonathan Bender, in the amount of $399,914.73. *Id.* at 1. The question presented was whether WMG can seek a "turnover order," pursuant to New York Civil Practice Law and Regulations ("NYCPLR") § 5225(b), by bringing a motion in the instant action as opposed *to bringing a separate action against the non-party*, National Basketball Players Association ("NBPA"). *Id.* Judge Scheindlin correctly denied the Motion for Turnover Order, because the motion was procedurally defective as the Petitioner must bring a separate action against any third party other than the judgment debtor. *Id.* at 3.

Proceedings involving the execution of judgments are governed by Rule 69(a) of the Federal Rules of Civil Procedure, which states: "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located[.]" NYCPLR § 5225(b), which requires a special proceeding against a third-party, states as follows:

> **Property not in the possession of judgment debtor.** Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such

property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

"A special proceeding is a creature of New York practice that although brought as a distinct legal action, has more in common with motion practice than it does with a plenary action. The special proceeding referred to in NYCPLR § 5225(b) has no federal analogue. Nonetheless, a separate proceeding needs to be brought in order to acquire personal jurisdiction over any non-party garnishees." *Id.*

In *Runway Development Group v. Pentagen Technologies International Limited*, 396 F. Supp. 2d 471 (S.D.N.Y. Oct. 31, 2005), the court analyzed the different subsections of CPLR 5225 as follows:

Section 5225 sets forth the procedures for the return of property. Under section 5225(a), a judgment creditor can seek turnover of property held by the judgment debtor "[u]pon motion" in the original action. N.Y. C.P.L.R. 5225(a). However, when the property sought is in the possession of someone other than the judgment debtor, the judgment creditor must follow the procedure set forth in section 5225(b), which requires that the creditor "commence an action against the person in possession," Alliance Bond Fund, Inc., 190 F.3d at 21, instead of merely filing a motion in the original action, see N.Y. C.P.L.R. 5225(b); David D. Siegel, Practice Commentaries, N.Y. C.P.L.R. 5225, at 264–65 (McKinney 1997) (explaining that subsection (b) requires a special proceeding "bearing its own caption").

Applying the rules set forth above, the court concluded that because Rule 69(a) of the Federal Rules of Civil Procedure dictates that state procedures be

followed, and because section 5225(b) is applicable to this situation, Pentagen was required to commence a new action against the Government in order to attain the sought-after relief. In denying the Petitioner's motion Judge Scheindlin aptly noted that "the *Runaway Development* court clearly cited *Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo*, *S.A*, 190 F.3d 16 (2d. Cir. 1998) in support of its conclusion. *Alliance* clearly addressed the issue of whether a separate proceeding is required in federal court to obtain a turnover order against a third party garnishee:

> Property, on the other hand, can be reached in one of two ways. Under § 5225(a), a judgment creditor pursuing property in the possession of the judgment debtor must seek a court order requiring the judgment debtor to turn it over. Under § 5225(b), a judgment creditor pursuing property in the possession of someone other than the judgment debtor must commence an action against the person in possession. *See Wasserman* at 4.

Furthermore, it is clear from the Record that counsel for Universitas did not follow the strict procedure for Service of Process pursuant to CPLR 308 but merely emailed a copy of the summons to the attorneys involved in the previous case.

Rule 60(b) governs this motion because the District Court had already entered a final judgment against Defendant-Appellants. *See Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013) ("The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."); accord *Tuqui Tuqui Dominicana, S.R.L. v. Castillo*, No. 19 Civ. 108, 2020 WL

1689763, at *2 (S.D.N.Y. Apr. 7, 2020) (declining to apply Rule 55(c) and applying Rule 60(b) where a final default judgment had been entered against defendants).

Under Rule 60(b) an entry of judgment may be set aside for several reasons, including that "the judgment is void." Fed. R. Civ. P. 60(b)(4). "[A] judgment entered against [a defendant] should be vacated as void under Rule 60(b)(4) if service on [defendant] was defective." *Tuqui Tuqui Dominicana, S.R.L.*, 2020 WL 1689763, at *2; see also, *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005). "[W]hen a judgment entered against the defaulting party is void ... [the] judgment cannot be enforced." *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002); *Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc*., No. 17 CIV. 5553 (LGS), 2020 WL 7093592, at *3 (S.D.N.Y. Dec. 4, 2020).

A Defendant seeking to have a judgment vacated pursuant to Fed. R. Civ. P. 55 need not show a meritorious defense if the Defendant was not properly served with process. *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80 (1988). Failure of a Plaintiff to properly serve process and the entry of a judgment based upon such failure infringes upon a defendant's right to due process. *Id.*

Fed. R. Civ. P. 4(e) reads, in pertinent part:

Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:

1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

2) doing any of the following:

   (A) delivering a copy of the summons and of the complaint to the individual personally;

   (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

   (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process

Universitas did not: (a) deliver copy of the summons and of the complaint to the individual personally; (b) leave a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (c) deliver a copy of each to an agent authorized by appointment or by law to receive service of process. As such, service was not effective per Fed. R. Civ. P. 4(e)(2)

Pursuant to Federal Rule of Civil Procedure 4(e)(1), the adequacy of service in this action is evaluated under New York law. CPLR 308 governs personal service upon a natural person in New York. It reads, in pertinent part:

Personal service upon a natural person shall be made by any of the following methods:

1. by delivering the summons within the state to the person to be served; or

2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing; proof of service shall identify such person of suitable age and discretion and state the date, time and place of service, except in matrimonial actions where service hereunder may be made pursuant to an order made in accordance with the provisions of subdivision a of section two hundred thirty-two of the domestic relations law; or

3. by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318, except in matrimonial actions where service hereunder may be made pursuant to an order made in accordance with the provisions of subdivision a of section two hundred thirty-two of the domestic relations law;

4. where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either

such affixing or mailing, whichever is effected later; service shall be complete ten days after such filing, except in matrimonial actions where service hereunder may be made pursuant to an order made in accordance with the provisions of subdivision a of section two hundred thirty-two of the domestic relations law[.]

New York Civil Practice Law and Rules ("CPLR") § 308(2), in relevant part, provides:

Personal service upon a natural person shall be made by any of the following methods: ... (2) by delivering the summons within the state to a person of suitable age and discretion at the actual place of business.

CPLR § 308(6) defines "actual place of business" in § 308(2) as including "any location that the defendant, through regular solicitation or advertisement, has held out as its place of business." "New York courts have construed 'actual place of business' to include (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendant owns or operates, where there is a 'clear identification of the work performed by her with that place of business.'" *Velez v. Vassallo*, 203 F. Supp. 2d 312, 325 (S.D.N.Y. 2002); *Tuqui Tuqui Dominicana, S.R.L. v. Castillo*, No. 19 CIV. 108 (NRB), 2020 WL 1689763, at *3–4 (S.D.N.Y. Apr. 7, 2020)

In sum, the District Court plainly erred because it overlooked the rudimentary concept of personal jurisdiction created by proper service of process. Because Universitas insisted on a turnover order directing non-debtors Grist Mill Capital, LLC and Mr. Carpenter to pay money allegedly owed to it by a third-party debtor,

Universitas should have to brought a separate proceeding against them under CPLR 5225(b) and served them in Connecticut pursuant to CPLR 308 and FRCP 4(e)(1). Because Universitas did not do that, its motion for a turnover order was procedurally defective and therefore the District Court plainly erred in granting judgment. *See e.g.*, *Wasserman Media v. Bender.*

### C. The District Court erred in not Vacating its Turnover Order as the Clerk signed the Judgment rather than the District Judge as required by Rule 58(b)(2) Federal Rules of Civil Procedure.

The Judgment entered on August 12, 2014 (the "Clerk's Judgment") [Dkt 475]) was not approved by the District Judge as required Rule 58(b)(2). Because Rule 58(b)(2) mandates that the District Judge must sign an order dealing with more than simple awards or denial of all relief, the Clerk's Judgment is void and should have been vacated pursuant to Rule 60(b)(4).

Rule 58(b) sets forth the requirements for "Entering Judgment":

(1) Without the Court's Direction. Subject to Rule 54(b) and unless the court orders otherwise, the clerk must, without awaiting the court's direction, promptly prepare, sign, and enter the judgment when:
    (A) the jury returns a general verdict;
    (B) the court awards only costs or a sum certain; or
    (C) the court denies all relief.
(2) *Court's Approval Required.* Subject to Rule 54(b), the *court must promptly approve* the form of the judgment, which the clerk must promptly enter, when:
    (A) the jury returns a special verdict or a general verdict with answers to written questions; or
    (B) the court grants other relief not described in this subdivision (b).

FED. R. CIV. P. 58 (emphasis added).

The Turnover Judgment was not signed by the District Judge in this case, and thus was not approved by the Court. [Dkt. 475] Additionally, the Turnover Judgment contained more than an award of costs and a sum certain, as the Turnover Judgment: (1) denied the request for permanent injunction, (2) denied the request for equitable relief, (3) terminated the temporary injunction; and (4) denied the request to modify the temporary injunction. [Dkt. 475] As a result, and as discussed in greater detail below, the Turnover Judgment is void and relief is justified, so that the Turnover Judgment must be vacated.

The Rule 58 requirements sought to relieve the kind of uncertainty "where the opinion or memorandum has not contained all the elements of a judgment, or where the judge has later signed a formal judgment," and "it has become a matter of doubt whether the purported entry of a judgment was effective, starting the time running for post-verdict motions and for the purpose of appeal." *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384-85, 98 (1978). "The reason for adhering to the formalism of the separate document requirement is to avoid confusion as to when the clock starts for the purpose of an appeal." Cooper at 33.

The August 12, 2014 Clerk's Judgment did not meet the requirements of Federal Rule of Civil Procedure 58(b)(2). *See* Fed. R. Civ. P. 58(a). The question is whether a "self-executing order can, without the subsequent entry of a Rule 58 final

judgment, and by the passage of time alone, deprive a would-be appellant of its opportunity to seek review. As the Supreme Court made clear….it cannot." *In re Litas Inter'l, Inc.*, 316 F.3d 113, 118 (2d Cir. 2003) (citing *Mallis* and *United States v. Indrelunas*, 411 U.S. 216 (1973)). The Rule 58 requirement has never been waived. *See Cooper v. Town of East Hampton*, 83 F.3d 31, 33-34 (2d Cir. 1996). As the Second Circuit stated in *Litas*:

> In the case before us, whatever uncertainty was created by the bankruptcy court's conditional order could easily have been eliminated. Thus, when docketing the supplemental order, the clerk of the court could have entered a "tickler" marking as crucial the date on which the conditions were to have been fulfilled. And if Appellant did not comply with the conditions on that date, the clerk could then have entered a judgment pursuant to Rule 58 without any further direction from the court. In addition, PNL, for whom finality of the decision was perhaps of greatest importance, could easily have asked the court on August 17, 2000, to enter a final (Rule 58) judgment. *See Otis*, 29 F.3d at 1167("Victorious litigants wishing to write finis to the case would do well to ensure that the district court adheres to Rule 58.").

*Litas* at 119.

Therefore, since this Court lacked subject matter jurisdiction in this case pursuant to *Peacock*, *Beecher*, and *Epperson* and lacked personal jurisdiction over Petitioner, and because the Turnover Judgment was not signed by a District Court Judge but merely the Clerk, and because the Defendants were not properly served in the State of Connecticut by the time of the Clerk's Judgment on August 12, 2014, the Turnover Order [Dkt. 475] was void and should have been be vacated by this Court pursuant to Rule 60(b)(4) or, in the alternative, Rule 60(b)(6).

Under Rule 58, if a judgment is outside the scope of subsection (1), then the Court must approve and sign the judgment as described in subsection (2). FED. R. CIV. P. 58(b); *American Interinsurance Exchange v. Occidental Fire & Casualty Co.*, 835 F.2d 157, 160 (7th Cir. 1987).

> When, as in our case, the judgment entails [relief beyond the scope of relief described in subsection (1)], it is important -- and it is mandatory under Rule 58(b)(2) -- that the district judge participate in the formulation and entry of the judgment. Rule 58 cannot achieve its purpose unless district courts are conscious of the need for simple, self-contained, complete (and hence final) judgments describing the relief to which the prevailing party is entitled.

*American Interinsurance Exchange*, 835 F.2d at 160.

"The more complicated judgments described in clause (2) must be approved by the court before they are entered." Notes of Advisory Committee on 1963 amendments, FED. R. CIV. P. 58. In an unreported decision, the Ninth Circuit held that the clerk's entry of a judgment dismissing the case was error and vacated the dismissal:

> Rule 60(b) provides that the court may relieve a party from final judgment for mistake, inadvertence, or any other reason that justifies relief. Fed. R. Civ. P. 60(b). We have explained that, "[a] Rule 60(b) motion may be granted where, inter alia, the party seeking relief demonstrates that the court made a 'mistake,' ... [and] a district court's erroneous reading of the law is a 'mistake' sufficient to require reconsideration of an order." *Yniques v. Cabral*, 985 F.2d 1031, 1034 (9th Cir.1993)

> The dismissal was not authorized under Rule 58(b) because a clerk may enter judgment without the court's direction only when: "(A) the jury returns a general verdict; (B) the court awards only costs or a sum

certain; or (C) the court denies all relief." FED. R. CIV. P. 58(b)(1).
Otherwise, the court must approve the form of judgment. FED. R. CIV.
P. 58(b)(2). Here, no judge approved the form of judgment.

* * *

We vacate the July 29, 2011 dismissal of the action, vacate the denial
of the motion to correct, and remand. Vacatur of an order creates a legal
status the same as if the order never existed. *See Camreta v. Greene*,
131 S. Ct. 2020, 2025, 179 L. Ed. 2d 1118 (U.S. 2011).

*DePrins v. Clark*, 566 Fed. Appx. 608, 611 (9th Cir. 2014). Similarly, the Sixth

Circuit remanded a case because the judgment was not approved by the district

judge. *Communications Workers of America v. United Tel. Co.*, 491 F.2d 207, 208

(6th Cir. 1974); *accord*, *Columbus Coated Fabrics v. Industrial Com. of Ohio*, 498

F.2d 408, 408-09 (6th Cir. 1974) (remanding because no judgment approved by the

district judge was entered).

The Clerk's Judgment in this case, in relevant part, grants a portion of the

relief requested by Appellee, and denies Appellee's requests for injunctive relief and

equitable relief and terminates the preliminary injunction. [Dkt 475]) Because the

Clerk's Judgment falls outside the scope of Rule 58(b)(1), approval by the District

Judge was required. *See* FED. R. CIV. P. 58(b)(2). The Order points to *Burnley v. City*

*of San Antonio*, 470 F.3d 189, 197 (5th Cir. 2006) and *Harmston v. City & Cty. of*

*San Francisco*, 627 F.3d 1273, 1280 (9th Cir. 2010) for support for the Order's

ruling that the failure to comply with Rule 58 should be ignored. While these

opinions from the Fifth Circuit and Ninth Circuit address the deadline to file an

appeal and invoke the jurisdiction of the Court of Appeals, the timeliness of the filing of a notice of appeal is not the issue here.

Additionally, Rule 58(b)(2) must be given meaning and enforced as written. If the requirement that a District Judge approve/sign a final judgment found in Rule 58(b)(2) is given no weight, then there is no reason for the language in Rule 58(b)(2) to be included in the Rule. As a result, the Clerk's Judgment lacking the District Judge's signature must be vacated. *See DePrins*, 566 Fed. Appx. 608; *Communications Workers of America*, 491 F.2d at 208.

**D. The District Court erred in not Vacating its Turnover Order in that it did not have Subject Matter Jurisdiction pursuant to the Supreme Court's decision in Peacock v Thomas 516 U.S. 349, 351 (1996).**

This quote from *Peacock* is also dispositive of this case:

We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment. Indeed, we rejected an attempt to do so in *H. C. Cook Co. v. Beecher*, 217 U.S. 497, 54 L. Ed. 855, 30 S. Ct. 601 (1910). In *Beecher*, the plaintiff obtained a judgment in federal court against a corporation that had infringed its patent. When the plaintiff could not collect on the judgment, it sued the individual directors of the defendant corporation, alleging that, during the pendency of the original suit, they had authorized continuing sales of the infringing product and knowingly permitted the corporation to become insolvent. We agreed with the Circuit Court's characterization of the suit as an attempt to make the defendants answerable for the judgment already obtained and affirmed the court's decision that the suit was not "ancillary to the judgment in the former suit. *Id*., at 498-499. *Beecher* governs this case and persuades us that Thomas' attempt to make Peacock answerable for the ERISA judgment is not ancillary to that judgment. *Peacock v. Thomas*, 516 U.S. 349, 359 (1996)

## CONCLUSION

For the reasons discussed above and based on the jurisdictional requirements established under *Daimler* and *Walden v. Fiore*, this Court should vacate the Turnover Judgments under its powers pursuant to 28 USC 2106 and Rule 60(b)(4).

Respectfully submitted,

Dated: April 7, 2022

s/ Jonathan J. Einhorn

By: JONATHAN J. EINHORN
LAW OFFICE OF JONATHAN J. EINHORN
129 Whitney Avenue, Suite 1
New Haven, Connecticut 06510
(203) 777-3777

*Attorneys for Respondent-Appellant*
*Grist Mill Capital, LLC and Movant-*
*Appellant Daniel E. Carpenter*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32.1(a)(4) because this brief contains 8,545 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with 14 characters per inch and Times New Roman.


s/ Jonathan J. Einhorn
JONATHAN J. EINHORN
LAW OFFICE OF JONATHAN J. EINHORN
129 Whitney Avenue, Suite 1
New Haven, Connecticut 06510
(203) 777-3777

*Attorneys for Respondent-Appellant*
  *Grist Mill Capital, LLC and*
  *Movant-Appellant Daniel E. Carpenter*

# SPECIAL APPENDIX

**i**

# TABLE OF CONTENTS

**Page**

Memorandum Order of the Honorable Laura Taylor Swain, Confirming Arbitration, dated June 5, 2012 (1:11cv8726)..................................... SPA-1

Memorandum Order of the Honorable Laura Taylor Swain, Confirming Arbitration, dated June 5, 2012 (1:11cv1590)................................... SPA-7

Judgment, dated June 7, 2012 (1:11cv1590) ............. SPA-13

Judgment, dated June 7, 2012 (1:11cv8726) ............. SPA-15

Order of the Honorable Laura Taylor Swain, dated June 18, 2014 (1:11cv1590).................................. SPA-17

Judgment, dated August 12, 2014 (1:11cv1590) ....... SPA-19

Memorandum Order of the Honorable Laura Taylor Swain, Denying Motions to Vacate, dated September 28, 2021, Appealed From .................... SPA-22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNIVERSITAS EDUCATION, LLC,

        Petitioner,

   -v-                                No.  11 Civ. 1590 (LTS)(HBP)

NOVA GROUP, INC.,

        Respondent.

------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 0 5 2012

### MEMORANDUM ORDER

        Universitas Education, LLC ("Petitioner" or "Universitas") petitions the Court,

pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, to confirm a January 24, 2011,

Phase I arbitration award ("Award") against Respondent Nova Group, Inc. ("Respondent" or

"Nova") that was rendered in connection with a dispute arising from Petitioner's claim to certain

life insurance policy death benefits.  Respondent has cross-moved to vacate the award pursuant to

the FAA, 9 U.S.C. § 10.  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1332

and 1331.  The Court has reviewed thoroughly all of the parties' submissions in this action.  For the

following reasons, Petitioner's motion to confirm the Award is granted and Respondent's cross-

motion to vacate the Award is denied.

### BACKGROUND

        Respondent Nova is the trustee, sponsor and fiduciary of the Charter Oak Trust

Welfare Benefit Plan (the "Plan").  At an unspecified time, Holdings Capital Group, the employer

of Sash A. Spencer ("Spencer"), became a participating employer in the Plan and placed two

insurance policies on Spencer's life, totaling $30 million, into the Plan.  Spencer named Petitioner

Universitas as the sole, irrevocable beneficiary of the proceeds as Plan benefits.  (Pet. to Confirm ¶¶ 5-6.)  In May 2009, after Spencer's death, the life insurance carrier paid out $30 million in insurance proceeds to the Plan.  (Id. ¶ 7.)  Respondent, however, denied Petitioner's claim to the Plan death benefit, asserting, among other things, that Petitioner had failed to submit a timely claim and that Petitioner had entered an impermissible agreement to share the benefits with third parties.

The parties submitted their dispute to binding arbitration.  The arbitration proceeding was bifurcated with the parties' consent.  Phase I addressed whether Petitioner was entitled to the death benefits.  In the event that Nova failed to satisfy a monetary award, Petitioner would be entitled to initiate Phase II of the arbitration in order to seek to hold certain individuals and entities liable for the Phase I award.  On January 24, 2011, upon completion of Phase I proceedings, the arbitrator issued the Award, finding Respondent liable to Petitioner in the amount of $26,558,308.  Nova did not pay over the insurance proceeds, and Petitioner initiated Phase II proceedings.

Respondent commenced an action in the District of Connecticut to vacate the Award.  Separately, Petitioner commenced an action to confirm the Award in New York state court.  Respondent removed the New York action to this Court on March 8, 2011, and, on November 16, 2011, the Connecticut action was transferred to this district and consolidated under this case caption.

## DISCUSSION

A.    Jurisdiction

Respondent argues that the Phase I Award is an "interim" Award and that courts only have jurisdiction to confirm or vacate final awards.  This argument is meritless.  An award is

deemed "final" where it "'finally and conclusively dispose[s] of a separate and independent claim'

and therefore 'may be confirmed although [it does] not dispose of all the claims that were

submitted to arbitration.'" Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007) (quoting

Metallgesellschaft A.G. v. M/V Capitan Constante, 790 F.2d 280, 283 (2d Cir. 1986)).  The Phase

I proceedings conclusively resolved Petitioner's rights and Nova's liabilities as to the Plan

benefits.  Moreover, conclusive awards as to fewer than all claims rendered pursuant to voluntary

bifurcation agreements are final for purposes of enforcement.  See, e.g., Employers' Surplus Lines

Ins. Co. v. Global Reinsurance Corp.-U.S. Branch, 07 Civ. 2521(HB), 2008 WL 337317, at *5

(S.D.N.Y. Feb. 6, 2008) (citing cases).  Accordingly, the Court finds that the Phase I Award is final

and may be reviewed under the FAA.

B.      Motions to Vacate/Confirm the Award

            Under the FAA, "a court must confirm an arbitration award unless it is vacated,

modified or corrected as prescribed in [9 U.S.C.] §§ 10 and 11."  Hall St. Assocs., L.L.C. v.

Mattel, Inc., 552 U.S. 576, 582 (2008).  Grounds for vacatur are listed in 9 U.S.C. § 10(a) and

include "corruption, fraud, or undue means in procurement of the award, evident partiality or

corruption in the arbitrators, specified misconduct on the arbitrators' part, or 'where the arbitrators

exceeded their powers.'"  Wall Street Assocs., L.P. v. Becker Paribas Inc., 27 F.3d 845, 848 (2d

Cir. 1994) (quoting 9 U.S.C. § 10(a)).

            Rather than rely on any of the grounds enumerated in 9 U.S.C. § 10(a), Respondent

argues that the Award should be vacated because the arbitrator exhibited a "manifest disregard for

the law."  Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 (2d Cir. 2011) (recognizing "manifest

disregard for the law" as a "judicially-created ground" for vacatur).  Under the three-part test

applied in the Second Circuit, manifest disregard may only be found where "the arbitrator knew of

the relevant principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 217 (2d Cir. 2002). An arbitrator's refusal or neglect to apply a governing legal principle "'clearly means more than error or misunderstanding with respect to the law.'" Hoeft v. MVL Group, Inc., 343 F.3d 57, 69 (2d Cir. 2003) (quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986)). It is not enough that a party disagrees, however vehemently, with the arbitrator's determination. A federal court cannot vacate an arbitral award merely because it is convinced that the arbitrator made the wrong call on the law. On the contrary, the award "should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." Banco de Seguros del Estado v. Mutual Marine Office, Inc., 344 F.3d 255, 260 (2d Cir. 2003) (citation and quotation marks omitted).

Respondent has failed to sustain its heavy burden of establishing manifest disregard for the law. Respondent first argues that the arbitrator ignored the provisions of the Plan requiring that Petitioner's claim be denied for failure to file in a timely manner. However, the arbitrator made findings of fact that (1) Petitioner timely notified Respondent of its claim, (2) Respondent failed to fulfill its duty to supply the claim form in a timely manner, and (3) once Respondent supplied the claim form, Petitioner promptly filled it out. (Award at 5, attached as Ex. 14 to Mot. to Confirm.) The arbitrator's factual findings and legal conclusions have clear support in the record.

Respondent next argues that the arbitrator manifestly disregarded the law by permitting Petitioner to assert state law claims in violation of the preemption provision of the Employee Retirement Income Security Act ("ERISA"). This argument, too, is meritless. The

arbitrator explicitly acknowledged the contention that ERISA governs the claims at issue, finding

that Respondents' conduct violated both ERISA and common law fiduciary standards.  (Award at

2-3 ("[w]hether analyzed under the common law or under ERISA principles, based on the evidence

presented, I determine that the PHASE I Respondents violated their fiduciary duties by denying the

claim for benefits under the [Charter Oak Trust.]").)

   Respondent further argues that the arbitrator manifestly disregarded the law by

failing to apply the most deferential ERISA standard of review – the arbitrary and capricious

standard – in reviewing Respondent's decision to deny death benefits to Petitioner.  However, the

Supreme Court has held that a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) "is to

be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  "[T]he administrator's burden to

demonstrate insulation from de novo review requires either language stating that the award of

benefits is within the discretion of the plan administrator or language that is plainly the functional

equivalent of such wording."  Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 252

(2d Cir. 1999).  Section 10.03 of the Plan provides that "[e]xcept as otherwise provided herein: the

Trustee and the Insurance Trustee shall have no discretionary powers," and Respondent did not

carry its burden of showing that any other plan language granted it discretion sufficient to warrant

arbitrary and capricious review.  Accordingly, Respondent has failed to demonstrate that the

arbitrator manifestly disregarded the law.

   Respondent further argues that it rightfully denied Petitioner's claim on the grounds

that Petitioner had planned on sharing the benefits with third parties in violation of 29 U.S.C.

§ 1106(a)(1)(D).[1] Respondent asserts that the arbitrator disregarded that provision in issuing the

Award.  However, the arbitrator made a finding of fact that any agreement to share the benefits had

been terminated and, accordingly, would not constitute grounds to deny Petitioner's application for

benefits.  (Award at 5.)  That finding does not remotely approach a manifest disregard for the law.

Finally, Respondent asserts that Petitioner's failure to pay filing fees in a timely

manner renders the Award a nullity.  Respondents do not cite any authority for the proposition that

failure to pay filing fees qualifies as a grounds for vacatur, and the Court's research has disclosed

none.

CONCLUSION

For the foregoing reasons the petition for confirmation of the Award is granted.

Respondent's cross-motion for vacatur of the Award is denied.  This Memorandum Order resolves

docket entry no. 32.  The Clerk of Court is respectfully requested to enter judgment confirming the

January 24, 2011, Phase I Arbitration Award, awarding Petitioner $26,558,308.36, plus interest

thereon from January 24, 2011, at the rate of 10% per annum ($3,623,571.94), for a total judgment

of $30,181,880.30, and close this case as well as the member case, No. 11 Civ. 8726.

SO ORDERED.

Dated:  New York, New York
        June 5, 2012

LAURA TAYLOR SWAIN
United States District Judge

---

[1]    That section provides that a fiduciary of an employee welfare benefit plan, such as
       Nova, "shall not cause the plan to engage in a transaction, if he knows or should
       know that such transaction constitutes a direct or indirect . . . transfer to, or use by or
       for the benefit of a party in interest, of any assets of the plan."  29 U.S.C.A.
       § 1106(a)(1)(D) (West 2011).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

UNIVERSITAS EDUCATION, LLC,

        Petitioner,

   -v-

NOVA GROUP, INC.,

        Respondent.

---------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 0 5 2012

No. 11 Civ. 1590 (LTS)(HBP)

MEMORANDUM ORDER

      Universitas Education, LLC ("Petitioner" or "Universitas") petitions the Court,

pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, to confirm a January 24, 2011,

Phase I arbitration award ("Award") against Respondent Nova Group, Inc. ("Respondent" or

"Nova") that was rendered in connection with a dispute arising from Petitioner's claim to certain

life insurance policy death benefits. Respondent has cross-moved to vacate the award pursuant to

the FAA, 9 U.S.C. § 10. The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1332

and 1331. The Court has reviewed thoroughly all of the parties' submissions in this action. For the

following reasons, Petitioner's motion to confirm the Award is granted and Respondent's cross-

motion to vacate the Award is denied.

BACKGROUND

      Respondent Nova is the trustee, sponsor and fiduciary of the Charter Oak Trust

Welfare Benefit Plan (the "Plan"). At an unspecified time, Holdings Capital Group, the employer

of Sash A. Spencer ("Spencer"), became a participating employer in the Plan and placed two

insurance policies on Spencer's life, totaling $30 million, into the Plan. Spencer named Petitioner

Universitas as the sole, irrevocable beneficiary of the proceeds as Plan benefits. (Pet. to Confirm ¶¶ 5-6.) In May 2009, after Spencer's death, the life insurance carrier paid out $30 million in insurance proceeds to the Plan. (Id. ¶ 7.) Respondent, however, denied Petitioner's claim to the Plan death benefit, asserting, among other things, that Petitioner had failed to submit a timely claim and that Petitioner had entered an impermissible agreement to share the benefits with third parties.

The parties submitted their dispute to binding arbitration. The arbitration proceeding was bifurcated with the parties' consent. Phase I addressed whether Petitioner was entitled to the death benefits. In the event that Nova failed to satisfy a monetary award, Petitioner would be entitled to initiate Phase II of the arbitration in order to seek to hold certain individuals and entities liable for the Phase I award. On January 24, 2011, upon completion of Phase I proceedings, the arbitrator issued the Award, finding Respondent liable to Petitioner in the amount of $26,558,308. Nova did not pay over the insurance proceeds, and Petitioner initiated Phase II proceedings.

Respondent commenced an action in the District of Connecticut to vacate the Award. Separately, Petitioner commenced an action to confirm the Award in New York state court. Respondent removed the New York action to this Court on March 8, 2011, and, on November 16, 2011, the Connecticut action was transferred to this district and consolidated under this case caption.

## DISCUSSION

A.     Jurisdiction

Respondent argues that the Phase I Award is an "interim" Award and that courts only have jurisdiction to confirm or vacate final awards. This argument is meritless. An award is

deemed "final" where it "'finally and conclusively dispose[s] of a separate and independent claim'

and therefore 'may be confirmed although [it does] not dispose of all the claims that were

submitted to arbitration.'" Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007) (quoting

Metallgesellschaft A.G. v. M/V Capitan Constante, 790 F.2d 280, 283 (2d Cir. 1986)).  The Phase

I proceedings conclusively resolved Petitioner's rights and Nova's liabilities as to the Plan

benefits.  Moreover, conclusive awards as to fewer than all claims rendered pursuant to voluntary

bifurcation agreements are final for purposes of enforcement.  See, e.g., Employers' Surplus Lines

Ins. Co. v. Global Reinsurance Corp.-U.S. Branch, 07 Civ. 2521(HB), 2008 WL 337317, at *5

(S.D.N.Y. Feb. 6, 2008) (citing cases).  Accordingly, the Court finds that the Phase I Award is final

and may be reviewed under the FAA.

B.    Motions to Vacate/Confirm the Award

              Under the FAA, "a court must confirm an arbitration award unless it is vacated,

modified or corrected as prescribed in [9 U.S.C.] §§ 10 and 11." Hall St. Assocs., L.L.C. v.

Mattel, Inc., 552 U.S. 576, 582 (2008).  Grounds for vacatur are listed in 9 U.S.C. § 10(a) and

include "corruption, fraud, or undue means in procurement of the award, evident partiality or

corruption in the arbitrators, specified misconduct on the arbitrators' part, or 'where the arbitrators

exceeded their powers.'" Wall Street Assocs., L.P. v. Becker Paribas Inc., 27 F.3d 845, 848 (2d

Cir. 1994) (quoting 9 U.S.C. § 10(a)).

              Rather than rely on any of the grounds enumerated in 9 U.S.C. § 10(a), Respondent

argues that the Award should be vacated because the arbitrator exhibited a "manifest disregard for

the law." Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 (2d Cir. 2011) (recognizing "manifest

disregard for the law" as a "judicially-created ground" for vacatur).  Under the three-part test

applied in the Second Circuit, manifest disregard may only be found where "the arbitrator knew of

the relevant principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 217 (2d Cir. 2002). An arbitrator's refusal or neglect to apply a governing legal principle "'clearly means more than error or misunderstanding with respect to the law.'" Hoeft v. MVL Group, Inc., 343 F.3d 57, 69 (2d Cir. 2003) (quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986)). It is not enough that a party disagrees, however vehemently, with the arbitrator's determination. A federal court cannot vacate an arbitral award merely because it is convinced that the arbitrator made the wrong call on the law. On the contrary, the award "should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." Banco de Seguros del Estado v. Mutual Marine Office. Inc., 344 F.3d 255, 260 (2d Cir. 2003) (citation and quotation marks omitted).

Respondent has failed to sustain its heavy burden of establishing manifest disregard for the law. Respondent first argues that the arbitrator ignored the provisions of the Plan requiring that Petitioner's claim be denied for failure to file in a timely manner. However, the arbitrator made findings of fact that (1) Petitioner timely notified Respondent of its claim, (2) Respondent failed to fulfill its duty to supply the claim form in a timely manner, and (3) once Respondent supplied the claim form, Petitioner promptly filled it out. (Award at 5, attached as Ex. 14 to Mot. to Confirm.) The arbitrator's factual findings and legal conclusions have clear support in the record.

Respondent next argues that the arbitrator manifestly disregarded the law by permitting Petitioner to assert state law claims in violation of the preemption provision of the Employee Retirement Income Security Act ("ERISA"). This argument, too, is meritless. The

arbitrator explicitly acknowledged the contention that ERISA governs the claims at issue, finding

that Respondents' conduct violated both ERISA and common law fiduciary standards. (Award at

2-3 ("[w]hether analyzed under the common law or under ERISA principles, based on the evidence

presented, I determine that the PHASE I Respondents violated their fiduciary duties by denying the

claim for benefits under the [Charter Oak Trust.]").)

      Respondent further argues that the arbitrator manifestly disregarded the law by

failing to apply the most deferential ERISA standard of review – the arbitrary and capricious

standard – in reviewing Respondent's decision to deny death benefits to Petitioner. However, the

Supreme Court has held that a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) "is to

be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary

discretionary authority to determine eligibility for benefits or to construe the terms of the plan."

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "[T]he administrator's burden to

demonstrate insulation from de novo review requires either language stating that the award of

benefits is within the discretion of the plan administrator or language that is plainly the functional

equivalent of such wording." Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 252

(2d Cir. 1999). Section 10.03 of the Plan provides that "[e]xcept as otherwise provided herein: the

Trustee and the Insurance Trustee shall have no discretionary powers," and Respondent did not

carry its burden of showing that any other plan language granted it discretion sufficient to warrant

arbitrary and capricious review. Accordingly, Respondent has failed to demonstrate that the

arbitrator manifestly disregarded the law.

      Respondent further argues that it rightfully denied Petitioner's claim on the grounds

that Petitioner had planned on sharing the benefits with third parties in violation of 29 U.S.C.

§ 1106(a)(1)(D).[1] Respondent asserts that the arbitrator disregarded that provision in issuing the Award. However, the arbitrator made a finding of fact that any agreement to share the benefits had been terminated and, accordingly, would not constitute grounds to deny Petitioner's application for benefits. (Award at 5.) That finding does not remotely approach a manifest disregard for the law.

Finally, Respondent asserts that Petitioner's failure to pay filing fees in a timely manner renders the Award a nullity. Respondents do not cite any authority for the proposition that failure to pay filing fees qualifies as a grounds for vacatur, and the Court's research has disclosed none.

<u>CONCLUSION</u>

For the foregoing reasons the petition for confirmation of the Award is granted. Respondent's cross-motion for vacatur of the Award is denied. This Memorandum Order resolves docket entry no. 32. The Clerk of Court is respectfully requested to enter judgment confirming the January 24, 2011, Phase I Arbitration Award, awarding Petitioner $26,558,308.36, plus interest thereon from January 24, 2011, at the rate of 10% per annum ($3,623,571.94), for a total judgment of $30,181,880.30, and close this case as well as the member case, No. 11 Civ. 8726.

SO ORDERED.

Dated: New York, New York
June 5, 2012

LAURA TAYLOR SWAIN
United States District Judge

---

[1] That section provides that a fiduciary of an employee welfare benefit plan, such as Nova, "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C.A. § 1106(a)(1)(D) (West 2011).

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _6/7/12_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

UNIVERSITAS EDUCATION, LLC,

Petitioner,

-against-

NOVA GROUP, INC.,

Respondent.
-------------------------------------------------------------X

11 **CIVIL** 1590 (LTS)(HBP)

**JUDGMENT**

# 12, 1003

Petitioner Universitas Education, LLC having moved to confirm a January 24, 2011 Phase I arbitration award against Respondent Nova Group, Inc.; Respondent having cross-moved to vacate the award, and the matter having been brought before the Honorable Laura T. Swain, United States District Judge, and the Court, on June 5, 2012, having issued its Memorandum Order granting the petition for confirmation of the Award, denying Respondent's cross-motion for vacatur of the Award is denied, and directing the Clerk of Court to enter judgment confirming the January 24, 2011, Phase I Arbitration Award, awarding Petitioner $26,558,308.36, plus interest thereon from January 24, 2011, at the rate of 10% per annum ($3,623,571.94), for a total judgment of $30,181,880.30, and closing this case as well as the member case, No. 11 Civ. 8726, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Order dated June 5, 2012, the petition for confirmation of the award is granted; Respondent's cross-motion for vacatur of the Award is denied; and judgment is entered confirming the January 24, 2011, Phase I Arbitration Award, awarding Petitioner $26,558,308.36, plus interest thereon from January 24, 2011, at the rate of 10% per annum ($3,623,571.94), for a total judgment of $30,181,880.30; accordingly, this case is closed as well as the member case, No. 11 Civ. 8726.

**Dated:**  New York, New York
June 7, 2012

RUBY J. KRAJICK

_____
**Clerk of Court**

BY: _____
**Deputy Clerk**

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____

```
┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:                       │
│ DATE FILED:  6/7/12          │
└─────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

UNIVERSITAS EDUCATION, LLC,

                             Petitioner,                    **11 CIVIL** 1590 (LTS)(HBP)

            -against-                                        **JUDGMENT**

NOVA GROUP, INC.,                                            # 12, 1003
                             Respondent.
-----------------------------------------------------------X

Petitioner Universitas Education, LLC having moved to confirm a January 24, 2011 Phase

I arbitration award against Respondent Nova Group, Inc.; Respondent having cross-moved to vacate

the award, and the matter having been brought before the Honorable Laura T. Swain, United States

District Judge, and the Court, on June 5, 2012, having issued its Memorandum Order granting the

petition for confirmation of the Award, denying Respondent's cross-motion for vacatur of the Award

is denied, and directing the Clerk of Court to enter judgment confirming the January 24, 2011, Phase

I Arbitration Award, awarding Petitioner $26,558,308.36, plus interest thereon from January 24,

2011, at the rate of 10% per annum ($3,623,571.94), for a total judgment of $30,181,880.30, and

closing this case as well as the member case, No. 11 Civ. 8726, it is,

        **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Memorandum Order dated June 5, 2012, the petition for confirmation of the award

is granted; Respondent's cross-motion for vacatur of the Award is denied; and judgment is entered

confirming the January 24, 2011, Phase I Arbitration Award, awarding Petitioner $26,558,308.36,

plus interest thereon from January 24, 2011, at the rate of 10% per annum ($3,623,571.94), for a

total judgment of $30,181,880.30; accordingly, this case is closed as well as the member case, No.

11 Civ. 8726.

**Dated:** New York, New York
June 7, 2012

RUBY J. KRAJICK

_____
**Clerk of Court**

BY: _____

**Deputy Clerk**

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNIVERSITAS EDUCATION, LLC,

        Petitioner,

    -v-                                No. 11 Civ. 1590 (LTS)(HBP)

NOVA GROUP, INC.,

        Respondent.

--------------------------------------------------------x

NOVA GROUP, INC.,

        Petitioner,

    -v-                                No. 11 Civ. 8726 (LTS)(HBP)

UNIVERSITAS EDUCATION, LLC,

        Respondent.

--------------------------------------------------------x

<u>ORDER</u>

        The parties are directed to be prepared to discuss the scope of the Court's authority under Federal Rule of Civil Procedure 69 and N.Y. C.P.L.R. 5225(b), particularly with respect to third parties who are no longer in possession of assets transferred from a judgment debtor; the parties will be expected to address this in connection with the holdings in <u>Peacock v. Thomas</u>, 516 U.S. 349, 357 (1996); <u>Epperson v. Entm't Express, Inc.</u>, 242 F.3d 100, (2d Cir. 2001); <u>Estate of Ungar v. Orascom Telecom Holding S.A.E.</u>, 578 F. Supp. 2d 536, 547 (S.D.N.Y. 2008); and <u>Alliance Bond Fund, Inc. v. Grupo Mexicano De Desarrollo</u>, 190 F.3d 16, 21 (2d Cir. 1998).

        The parties are directed to be prepared to discuss whether personal jurisdiction must be established with respect to each third-party respondent against whom or which relief is sought,

and the method(s) by which such respondents were served.

SO ORDERED.

Dated: New York, New York
June 18, 2014

   /S/ Laura Taylor Swain   
LAURA TAYLOR SWAIN
United States District Judge

SPA-19

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

UNIVERSITAS EDUCATION, LLC,

                         Petitioner,

         -against-

NOVA GROUP, INC.,

                     Respondent.

-----------------------------------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED 08/12/2014 |

11 **CIVIL** 1590 (LTS) (HBP)
11 **CIVIL** 8726 (LTS) (HBP)

## JUDGMENT

        Whereas following entry of judgment in its favor in the above captioned-actions, Universitas

Education, LLC ("Petitioner") having moved seeking, pursuant to New York Civil Practice Law and

Rules ("C.P.L.R.") section 5225(b) and Federal Rules of Civil Procedure 69, the turnover of assets

by respondent Daniel E. Carpenter and his affiliated entities Grist Mill Capital, LLC, Grist Mill

Holdings, LLC, the Grist Mill Trust Welfare Benefit Plan, Avon Capital, LLC, Hanover Trust

Company, Carpenter Financial Group and Phoenix Capital Management, LLC (with Carpenter, the

"Turnover Respondents"), as well as permanent injunctive relief barring the transfer by the Turnover

Respondents of money and assets, including certain specified insurance policies, until Petitioner's

judgment against Nova Group, Inc., has been satisfied (Docket entry no. 308 in case number 11 Civ.

1590); Mr. Carpenter and certain third parties having moved to modify the temporary injunction to

allow transactions between themselves and certain of the Turnover Respondents (See docket entry

nos. 409, 412, and 448 in 11 Civ. 1590), and the matter having come before the Honorable Laura

Taylor Swain, United States District Judge, and the Court, on August 7, 2014, having rendered its

Memorandum Opinion and Order granting Petitioner's turnover motion, granting Petitioner money

judgments as follows: against Daniel E. Carpenter in the amount of $30,600,000.00; against Grist

Mill Capital, LLC, in the amount of $30,600,000.00; against Grist Mill Holdings, LLC, in the

amount of $21,000,000.00; against Carpenter Financial Group, in the amount of $ 11,140,000.00;

against Avon Capital, LLC, in the amount of $6,710,065.92; against Phoenix Capital Management, LLC, in the amount of $5,000,000.00; against Grist Mill Trust Welfare Benefit Plan, and any trustees and plan sponsors thereto insofar as they hold Grist Mill Trust assets, in the amount of $4,487,007.81; and against Hanover Trust Company, in the amount of $1,200,000.00; directing the Clerk of the Court to enter judgment against the Turnover Respondents accordingly; Liability under the judgment is joint and severally; denying as moot Petitioner's request for permanent injunctive relief; denying each of the third-party motions to modify the preliminary injunction, docket entry numbers 409, 412, and 448 in 11 Civ. 1590, as the primary injunction is hereby terminated pursuant to the provisions of the January Order, because Petitioner's motion for turnover has been resolved, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Memorandum Opinion and Order dated August 7, 2014, Petitioner's turnover motion is granted; Petitioner is hereby granted money judgments against the Turnover Respondents as follows: against Daniel E. Carpenter in the amount of $30,600,000.00; against Grist Mill Capital, LLC, in the amount of $30,600,000.00; against Grist Mill Holdings, LLC, in the amount of $21,000,000.00; against Carpenter Financial Group, in the amount of $11,140,000.00; against Avon Capital, LLC, in the amount of $6,710,065.92; against Phoenix Capital Management, LLC, in the amount of $5,000,000.00; against Grist Mill Trust Welfare Benefit Plan, and any trustees and plan sponsors thereto insofar as they hold Grist Mill Trust assets, in the amount of $4,487,007.81; and against Hanover Trust Company, in the amount of $1,200,000.00; liability under the judgments is jointly and severally; Petitioner's request for permanent injunctive and other equitable relief are denied; each of the third-party motions to modify the preliminary injunction, docket numbers 409, 412, and 448 in 11 Civ. 1590 are denied as moot, as the preliminary injunction is hereby terminated pursuant

to the provisions of the January Order, because Petitioner's motion for turnover has been resolved.

**Dated:** New York, New York
August 12, 2014

**RUBY J. KRAJICK**

_____

**Clerk of Court**

BY:    _K. Mango_

_____

**Deputy Clerk**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNIVERSITAS EDUCATION, LLC,

        Petitioner,

    -v-                       No.  11-CV-1590-LTS

NOVA GROUP, INC.,

        Respondent.
-------------------------------------------------------x

NOVA GROUP, INC.,

        Petitioner,

    -v-                       No.  11-CV-8726-LTS

UNIVERSITAS EDUCATION, LLC,,

        Respondent.
-------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Judgment confirming a $30 million arbitration award against Nova Group Inc.

("Nova") was entered in these cases in 2012.  (<u>See</u> docket entry no. 41.[1])  Extensive post-

judgment discovery and turnover proceedings ensued.  In August 2014, the Court entered

judgment against Nova's former principal Daniel E. Carpenter and several affiliates he

controlled, including Grist Mill Capital, LLC ("Grist Mill"), in respect of funds fraudulently

conveyed to those affiliates, at Mr. Carpenter's direction, in a scheme to prospectively render the

arbitration award and the judgment issued against Nova in these actions unrecoverable.  (<u>See</u>

docket entry nos. 474 ("Turnover Opinion"), 475 ("Turnover Judgment").)

---

[1]      Docket entry numbers in this Memorandum Opinion and Order refer to those in case
number 11-CV-1590, unless otherwise noted.

Now before the Court are motions to vacate the Turnover Judgment, filed by Mr.
Carpenter (docket entry no. 665) and Grist Mill (docket entry no. 696), pursuant to Federal Rules
of Civil Procedure 60(b)(4) and 60(b)(6).  Both motions argue principally that the Court lacked
personal jurisdiction over Mr. Carpenter and Grist Mill at the time of the Turnover Judgment.
Also pending before the Court are Mr. Carpenter's "letter motion for the Court to take judicial
notice" of certain facts related to Mr. Carpenter's motion to vacate (docket entry no. 675), and
the motion of Petitioner Universitas Education, LLC ("Universitas" or "Petitioner") (docket
entry no. 676), pursuant to Federal Rule of Civil Procedure 11, seeking sanctions against Mr.
Carpenter for having filed his motion to vacate.[2]

The Court has considered all of the submissions and arguments of the parties
carefully.  For the following reasons, the motions to vacate filed by Mr. Carpenter and Grist Mill
are denied in their entirety, Mr. Carpenter's request that the Court take judicial notice is granted
in part and denied in part, and Petitioner's motion for sanctions against Mr. Carpenter is granted
in part and denied in part, as set forth below.

BACKGROUND

The factual and procedural history of these actions is detailed at length in the
Court's prior decisions, familiarity with which is assumed.  (See generally docket entry nos. 341,
366, 474.)  As the Court has previously explained:

> This case is part of a lengthy and ongoing dispute over the disposition of
> the $30 million in proceeds of two life insurance policies obtained by the
> late Sash A. Spencer, who was the Chief Executive Officer of Holding
> Capital Group, Inc.  Mr. Spencer placed the two life insurance policies
> into the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust")

---

[2]     Also pending in these actions is Universitas's motion for sanctions against the attorneys
who filed Grist Mill's motion to vacate.  (Docket entry no. 707.)  This Memorandum
Opinion and Order does not resolve that motion, which remains under advisement.

which was "established to provide for the acquisition of and investment in various types of insurance policies to provide a welfare benefit fund or estate planning benefits," pursuant to a Funding Obligation Agreement and Power of Attorney.  [ ].  Mr. Spencer named Petitioner the sole, irrevocable beneficiary of a Charter Oak Trust death benefit comprising the proceeds payable under two life insurance policies, whose face values totaled $30 million (the "Life Insurance Proceeds").  [ ].  Mr. Spencer died in June 2008, and Petitioner made a valid and timely claim to the Life Insurance Proceeds.  (Ex. 18 at 3-4.)

Nova Group, Inc. ("Nova") and the Charter Oak Trust Welfare Benefit Plan ("Charter Oak Trust") are two of the hundreds of business entities organized and controlled, directly or indirectly, by respondent Mr. Carpenter.  [ ].  Nova is the corporate trustee of the Charter Oak Trust.  [ ]. After Petitioner made its death beneficiary claim, [the president of Nova] sought payment from the insurer, acknowledging in writing that Nova had "a fiduciary responsibility and legal obligation to carry out Mr. Spencer's wishes as he intended in a timely fashion to pay those death proceeds to a charity that he established prior to his death."  [ ].  The insurer paid Charter Oak Trust $30.67 million in Life Insurance Proceeds[.] . . . In May 2009, after receiving payment of the Life Insurance Proceeds, Nova denied Petitioner's death benefit claim.  Petitioner challenged the denial through a demand for arbitration filed on June 17, 2010; a binding arbitration award against Nova . . . was issued on January 24, 2011 in the amount of $26,525,535.98. . . .

(Docket entry no. 341 at 2-3.)

After Nova failed to pay the arbitration award, Petitioner filed an action seeking

to enforce it; that action was removed to this Court and consolidated with a separate action Nova

had brought to vacate the award in the District of Connecticut, which had been transferred to this

Court pursuant to 28 U.S.C. section 1404(a).  On June 7, 2012, judgment was entered in favor of

Petitioner upon the arbitration award in the amount of $30,181,880.30, comprising the

$26,525,535.98 arbitration award and prejudgment interest.  (Docket entry no. 41.)

Petitioner employed a variety of mechanisms in an effort to collect on that

judgment, leading to, among other things, the three decisions of this Court which are the most

relevant to the pending motions.

SPA-25

First, on November 20, 2013, the Court granted Petitioner's request for an order directing the United Services Automobile Association ("USAA") to turn over to Petitioner the USAA insurance proceeds claimed in connection with property owned by Mr. Carpenter, among others. (Docket entry no. 341, the "Nov. 20 Op. & Ord.") In that Opinion and Order, the Court found, as relevant here, that Mr. Carpenter controlled both Respondent Nova and "hundreds" of other companies, including Grist Mill, and that "a large portion of the Life Insurance Proceeds" at issue in this case were fraudulently conveyed "from the Charter Oak Trust through Grist Mill and to other entities that Mr. Carpenter controls, and that some of those proceeds were ultimately applied to purchase and insure a vacation property" for the benefit of Mr. Carpenter and his wife. (Id. at 2-7.) The November 20 Opinion and Order followed a bench trial which took place on May 9, 2013. At that bench trial, Grist Mill—which was not a respondent to the turnover application—was present through attorney Carole R. Bernstein. (Docket entry no. 249 at 1, 3, 14.) Mr. Carpenter—who was a named respondent to the application—also appeared through counsel, and testified. Before he did so, counsel for certain of Mr. Carpenter's co-respondents confirmed that all of the named respondents waived any objections they might have had to this Court's exercise of personal jurisdiction over them. (Id. at 16:7-18 ("[T]he named respondents are not raising any personal jurisdiction issues. We've conferred with our clients on that. Legally there might be an issue by we're consciously waiving it.").)

Second, on January 13, 2014, the Court granted Petitioner's motion for a preliminary injunction prohibiting "Mr. Carpenter, his and his entities' officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with them" from "directly or indirectly causing, making, permitting or suffering any sale, assignment or transfer of, or any interference with, any asset or property of Mr. Carpenter, and any asset or

property of any company, corporation or other entity (including any trusts) in which Mr.

Carpenter has a direct or indirect interest or control," pending the Court's resolution of a

turnover motion (discussed in more detail below) that Petitioner had filed in October 2013.

(Docket entry no. 366, the "Preliminary Injunction Op. & Ord.")  That decision was based, in

part, on the Court's findings that "Mr. Carpenter's entities have continued to seek to transfer

assets from the judgment-debtor to Grist Mill, despite the Judgment and the service of restraining

notices."  (Id. at 14.)  The Preliminary Injunction Opinion and Order followed an evidentiary

hearing at which Mr. Carpenter testified and at which he did not argue that the Court lacked

personal jurisdiction over him.  (See docket entry no. 357.)[3]  Although Grist Mill was not a

respondent to Petitioner's preliminary injunction application, attorney Bernstein again attended

on Grist Mill's behalf.

       Third, on August 7, 2014, the Court issued the Turnover Opinion.  That decision

resulted from a motion filed by Petitioner on October 21, 2013, seeking an order directing that

Mr. Carpenter, Grist Mill, and other affiliated entities (together, the "Turnover Respondents")

turn over specified amounts of "money and/or assets that were improperly transferred to them,

directly or indirectly," from Nova as trustee of the Charter Oak Trust.  (Docket entry no. 308, the

"Turnover Motion.")  As relevant here, attorney Bernstein filed a notice of appearance on behalf

of Grist Mill (docket entry no. 335) and signed on to a joint opposition to the Turnover Motion

---

[3]    The Court found much of Mr. Carpenter's testimony at the hearing not credible.  It also
found that "Mr. Carpenter's testimony, to the extent that it is credible, demonstrates that
he frequently engages, directly or indirectly, in inter-company transfers between entities
that he creates and controls," that "[d]ocumentation of the transfers, and the business
justifications if any therefor, is more often than not nonexistent," and that "[t]he evidence
received by this Court concerning the actions of Mr. Carpenter and his affiliates
demonstrates an absence of respect for distinctions among his business entities, for his
obligations to creditors, and for the orders of this Court."  (Id. at 7.)

SPA-27

filed on November 20, 2013.  (Docket entry no. 339, the "Joint Turnover Opp.")  The Joint

Turnover Opposition opposed the Turnover Motion on various grounds, including that the Court

"lack[ed] personal jurisdiction over non-party transferees [Grist Mill Holdings, LLC], Hanover

[Trust Company], [Carpenter Financial Group], and Phoenix [Capital Management]."  (Id. at 11,

13.)  The opposition made quite clear the Turnover Respondents' position that that the Court

lacked personal jurisdiction over only "some of the Respondents-non-party transferees."  (Id. at

10 (emphasis added).)  It did not argue that the Court lacked personal jurisdiction over Grist

Mill.  Similarly, Mr. Carpenter did not argue that the Court lacked personal jurisdiction over

him.  (See Turnover Opinion at 10.)

On May 23, 2014, the Court issued an order (docket entry no. 441) scheduling

oral argument on the Turnover Motion for June 4, 2014.  Two days later, attorney Bernstein filed

a letter regarding her representation of Grist Mill (and co-respondent Avon Capital, LLC):

> I write to advise the Court of certain developments in connection
> with my representation of Grist Mill Capital, LLC ("GMC") and
> Avon Capital, LLC ("Avon") in the referenced action.  By letter
> dated March 31, 2014, we were discharged from representing
> GMC and Avon.  I have been advised that Michael Taylor, Esq.,
> current counsel for Carpenter Financial Group, will be representing
> GMC and Avon.
>
> In any event, I will be out of the country on a long-standing
> planned vacation beginning Monday May 26, 2014 and returning
> June 6, 2014.

(Docket entry no. 442.)  Ms. Bernstein did not file an application to withdraw pursuant to Local

Civil Rule 1.4 (or any application to substitute attorney Taylor) and therefore remained counsel

of record for Grist Mill.

On June 18, 2014—after an adjournment of oral argument—the Court issued an

order directing the parties to be prepared, at oral argument, to discuss the Court's authority to

grant the Turnover Motion consistent with the holdings in <u>Peacock v. Thomas</u>, 516 U.S. 349, 357

(1996) and <u>Epperson v. Entm't Express, Inc.</u>, 242 F.3d 100 (2d Cir. 2001)—in which the Second

Circuit confirmed that district courts may exercise ancillary enforcement jurisdiction over a

judgment creditor's fraudulent conveyance claims against fraudulent transferees who were not

parties to an underlying action, <u>id.</u> at 103-107—as well as the issue of "whether personal

jurisdiction must be established with respect to each third-party respondent against whom or

which relief is sought[.]"  (Docket entry no. 464.)  The Court then held oral argument, at which

Mr. Carpenter's counsel was present.  (Docket entry no. 471.)  Neither attorney Bernstein nor

any other attorney appeared on behalf of Grist Mill.  (<u>Id.</u>)

On August 7, 2014, the Court issued the Turnover Opinion.  The Court found that

it had subject matter jurisdiction of the Turnover Motion (<u>see</u> Turnover Opinion at 2) and that it

could exercise personal jurisdiction over the Turnover Respondents—though they were not New

York domiciliaries—consistent with New York law and the Due Process Clause, because the

Turnover Respondents participated in intentional fraudulent conveyances designed to render the

New York arbitration award and New York judgment unrecoverable:

> [T]he situs of the injury is New York, because the fraudulent conveyances
> impeded Petitioner's ability to enforce its New York judgment.  During
> the time period in which the conveyances at issue occurred, Mr. Carpenter
> both controlled the Turnover Respondents and acted as their principal or
> agent in accomplishing the transfers.  As the Court found in the November
> Order, the conveyances were accomplished at a time when Mr. Carpenter
> knew that Petitioner was asserting a right to the proceeds of the insurance
> policies and was considering litigation.  [ ].  Mr. Carpenter was also aware
> that Petitioner would be required to arbitrate any claims arising from a
> dispute over the Insurance Proceeds in New York, and that any confirmed
> award would result in a New York judgment.  The conveyances were thus
> actions taken on behalf of the Turnover Respondents by Mr. Carpenter and
> designed fraudulently to render the prospective New York judgment
> unrecoverable, despite the fact that the actions may have been performed
> in Connecticut.  Therefore, the Turnover Respondents should reasonably
> have expected their actions to create an injury in New York.

SPA-29

(Turnover Opinion at 11-12; <u>see also</u> <u>id.</u> at 12 ("The conduct of tortious activity targeted at a New York entity and a New York judgment suffices to demonstrate that the Turnover Respondents should reasonably have anticipated being haled into court here.").)

Having found that the Court had jurisdiction and that all of the other prerequisites to a Turnover Judgment were met, the Court granted Petitioner's application and directed the Clerk of Court to enter money judgments in specified amounts ("representing the amount of Insurance Proceeds that was fraudulently conveyed, directly or indirectly, to each") against Mr. Carpenter, Grist Mill, and the other Turnover Respondents.  (Turnover Opinion at 23-24.)  On August 12, 2014, as directed by the Court, the Clerk of Court entered the associated judgment in a separate document.  (Turnover Judgment.)

Neither Grist Mill nor Mr. Carpenter—who reported to federal prison on or about June 20, 2014, to serve a three-year sentence for mail and wire fraud, <u>see</u> <u>United States v. Carpenter</u>, No. 1:04-CR-10029-GAO (D. Mass.)—appealed the Turnover Judgment.  However, both continued to litigate matters in other courts throughout the remainder of 2014 and beyond. <u>See</u>, <u>e.g.</u>, <u>United States v. Carpenter</u>, No. 14-1641 (1st Cir. 2014); <u>Daniel Carpenter and Grist Mill Capital LLC v. Allen et al.</u>, No. 3:14-cv-00741-SRU (D. Conn. 2014); <u>Daniel Carpenter and Grist Mill Capital LLC v. Shulman et al.</u>, No. 3:13-cv-563-SRU (D. Conn. 2013); <u>Daniel Carpenter and Grist Mill Capital, LLC v. Shuman et al.</u>, No. 18-2152 (2d Cir. 2018).[4]

---

[4]     Separate criminal proceedings against Mr. Carpenter also continued while Mr. Carpenter was in custody.  On June 6, 2016, following a bench trial, Mr. Carpenter was found guilty of money laundering, conspiracy to commit money laundering, and conspiracy to defraud life insurance companies, arising in part out of Mr. Carpenter's illegal monetary transactions involving the Sash Spencer life insurance proceeds through, among other entities, Grist Mill.  <u>See</u> <u>United States v. Carpenter</u>, 190 F. Supp. 3d 260, 274 (D. Conn. 2016) ("The evidence also shows that corporate entities were created and discarded at

<u>D</u><small>ISCUSSION</small>

<u>Motions to Vacate</u>

"On motion and just terms, the court may relieve a party or its legal representative

from a final judgment, order, or proceeding" if "the judgment is void," Fed. R. Civ. P. 60(b)(4),

or if there exists "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).

Under Rule 60(b)(4), a judgment is void "'only if the court that rendered it lacked

jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due

process of law.'"  <u>Grace v. Bank Leumi Tr. Co. of NY</u>, 443 F.3d 180, 193 (2d Cir. 2006)

(quoting <u>Texlon Corp. v. Mfrs. Hanover Commercial Corp.</u>, 596 F.2d 1092, 1099 (2d Cir.

1979)).  "Federal courts considering Rule 60(b)(4) motions that assert a judgment is void

because of a jurisdictional defect generally have reserved relief only for the exceptional case in

which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction."  <u>United

Student Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260, 271 (2010) (citations omitted).  In a collateral

challenge to the Court's exercise of personal jurisdiction over a party under Rule 60(b)(4), "the

burden of establishing lack of personal jurisdiction is properly placed on a defendant who had

notice of the original lawsuit."  <u>"R" Best Produce, Inc. v. DiSapio</u>, 540 F.3d 115, 126 (2d Cir.

2008); <u>accord Gater Assets Ltd. v. AO Moldovagaz</u>, 2 F.4th 42, 53 (2d Cir. 2021).

Rule 60(b)(6), which authorizes a court to relieve a party from a final judgment

for "any other reason that justifies relief," may be properly invoked only if "Rules 60(b)(1)

through (5) do not apply, and if extraordinary circumstances are present or the failure to grant

---

Mr. Carpenter's direction when it suited his purposes."), <u>aff'd sub nom.</u> <u>United States v.
Bursey</u>, 801 F. App'x 1 (2d Cir. 2020).

relief would work an extreme hardship on the movant." <u>ISC Holding AG v. Nobel Biocare Fin.</u> <u>AG</u>, 688 F.3d 98, 108 (2d Cir. 2012).

Motions to vacate pursuant to Rule 60(b) must be "made within a reasonable time." Fed. R. Civ. P. 60(c)(1).

<u>Personal Jurisdiction: Waiver and Forfeiture</u>

Mr. Carpenter and Grist Mill first argue that the Turnover Judgment should be vacated because the Court lacked personal jurisdiction over them. The Court disagrees.

As an initial matter, both Mr. Carpenter and Grist Mill forfeited any personal jurisdiction defense they may have had. "Personal jurisdiction, unlike subject-matter jurisdiction, can . . . be purposely waived or inadvertently forfeited." <u>City of New York v.</u> <u>Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 133 (2d Cir. 2011). The defense may be waived if a party fails to raise the defense by motion or by inclusion in a "responsive pleading," <u>see</u> Fed. R. Civ. P. 12(h)(1)(b), or forfeited where "[t]he actions of the defendant [during the litigation] . . . amount to a legal submission to the jurisdiction of the court, whether voluntary or not." <u>Mickalis</u> <u>Pawn Shop, LLC</u>, 645 F.3d at 134 (citations omitted). "[I]n determining whether waiver or forfeiture of objections to personal jurisdiction has occurred," the Court considers "'all of the relevant circumstances.'" <u>Id.</u> at 133 (citations omitted).

Mr. Carpenter waived any personal jurisdiction defense he might have had explicitly, in open court. (Docket entry no. 249 at 16:7-18.) He also forfeited the defense by vigorously litigating against Petitioner's various collation-related motions without objection on the basis of personal jurisdiction over a period of more than one year. (<u>See</u> Turnover Opinion at 10.) Considering "all of the relevant circumstances," the Court concludes that those circumstances weigh overwhelmingly in favor of a conclusion that Mr. Carpenter waived any

objections he might have had to this Court's exercise of personal jurisdiction over him.  See

Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 62 (2d Cir. 1999) ("These circumstances establish a

forfeiture.").

        While Grist Mill's circumstances present a closer question, the Court concludes

on the specific facts of this case that it, too, forfeited any objection it had to the Court's exercise

of specific personal jurisdiction over it in connection with the Turnover Motion.  First, though

Grist Mill appeared and joined the other Turnover Respondents' Joint Turnover Opposition,

Grist Mill notably failed to argue that the Court lacked jurisdiction over it in that brief—Grist

Mill's first significant defensive move—even though other of the Turnover Respondents raised

that defense in the same brief.  See Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724,

730 (2d Cir. 1998) ("Rule 12(h)(1) 'advises a litigant to exercise great diligence in challenging

personal jurisdiction . . . or service of process.  If he wishes to raise [either] of these defenses he

must do so at the time he makes his first significant defensive move[.]'" (quoting 5A Charles

Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (1990)).

        Second, even assuming that Grist Mill's "first significant defense move" (an

opposition brief) did not constitute a "responsive pleading" sufficient without more to waive its

personal jurisdiction defense under Rule 12(h)(1)(B), Grist Mill's peculiar conduct in this case

amounted to a forfeiture of that defense.  While Grist Mill's formal activity in these actions was

relatively limited, its counsel—who had appeared in court for the bench trial conducted on May

9, 2013 (docket entry no. 249), at which she witnessed several respondents waive any personal

jurisdiction defense they had, and for the evidentiary hearing conducted on November 22, 2013

(docket entry no. 357)—was nonetheless quite familiar with the facts of this case and the

personal jurisdiction issues it might present.  She also knew that other Turnover Respondents

were challenging this Court's exercise of personal jurisdiction over them (see docket entry no.

339), but nonetheless failed to raise that objection in the very same brief, or to otherwise alert

Petitioner or the Court that Grist Mill wished to lodge such an objection.  Grist Mill then

proceeded to sit on its hands for the following several months—even before attorney Bernstein

alerted the Court that she had been discharged—while it knew the Turnover Motion was under

consideration.  Based on all of the circumstances, on the unique facts of this case, this conduct

amounted to a forfeiture of any personal jurisdiction objection Grist Mill might have had.

Personal Jurisdiction: Merits

Even if Mr. Carpenter and Grist Mill had not waived and forfeited their personal

jurisdiction defenses, the Court would conclude that they have each failed to meet their burden to

show that the Court lacked specific personal jurisdiction over them so as to warrant relief under

Rule 60(b)(4).  See DiSapio, 540 F.3d at 126 ("[T]he burden of establishing lack of personal

jurisdiction is properly placed on a defendant who had notice of the original lawsuit.").

As set forth in the Turnover Opinion (at 10-14), when considering whether the

Court may exercise personal jurisdiction over a nonresident, the Court must first determine

whether that nonresident is "subject to jurisdiction under the law of the forum state" and, if he or

she is, "whether the exercise of personal jurisdiction over the defendant comports with the Due

Process Clause of the United States Constitution."  State Farm Fire & Cas. Co. v. Swizz Style,

Inc., 246 F. Supp. 3d 880, 886 (S.D.N.Y. 2017) (quoting Sonera Holding B.V. v. Cukurova

Holding A.S., 750 F.3d 221, 224 (2d Cir. 2014)).  "Although a nonresident's physical presence

within the territorial jurisdiction of the court is not required, the nonresident generally must have

certain minimum contacts . . . such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice."  Walden v. Fiore, 571 U.S. 277, 283 (2014) (citation

and internal quotation marks omitted).  The minimum contacts inquiry focuses on "the relationship among the defendant, the forum, and the litigation."  Id. (quoting <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 775 (1984)).

Mr. Carpenter and Grist Mill seek to vacate the Turnover Judgment on the ground that the Court lacked minimum contacts over each of them pursuant to the Supreme Court's decision in <u>Walden v. Fiore</u>, 571 U.S. 277 (2014).  (See docket entry no. 665 at 5-6, 10-16; docket entry no. 697 at 13-16.)[5]  The Court disagrees.

The Supreme Court in <u>Walden</u> held that a federal court in Nevada lacked personal jurisdiction over an agent of the Drug Enforcement Administration in Atlanta, Georgia, who had seized the cash of two airline passengers who had passed through the Atlanta airport for a layover before taking a connecting flight to Las Vegas, Nevada.  The agent's contacts with Nevada—essentially, the fact that the seizure of plaintiffs' cash in Atlanta ultimately injured the plaintiffs in Nevada—were "random" and "fortuitous," and arose exclusively out of plaintiffs' contacts with that State, and were therefore insufficient to satisfy the minimum contacts standard set forth in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945), and its progeny.  In so holding, <u>Walden</u> explained that "[t]he proper focus of the minimum contacts inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation," and "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."  Id. at 291 (internal citation and quotation marks omitted).

---

[5]     The federal specific jurisdiction inquiry has two prongs: "minimum contacts" and "reasonableness."  <u>Chloe v. Queen Bee of Beverly Hills, LLC</u>, 616 F.3d 158, 164 (2d Cir. 2010).  Mr. Carpenter and Grist Mill do not appear to challenge the Turnover Opinion's reasonableness analysis.  (See Turnover Opinion at 13-14.)  To the extent they do, they have identified no defect in that analysis warranting vacatur.

Walden does not compel a conclusion that Mr. Carpenter or Grist Mill lacked the constitutionally-requisite minimum contacts with New York State in these cases.  Their contacts with New York were not random, fortuitous, or created only by Petitioner: instead, the Court found that Mr. Carpenter and Grist Mill fraudulently conveyed tens of millions of dollars in a scheme designed to prospectively render unrecoverable an arbitration award and related judgment they knew would be issued in New York.  (Turnover Opinion at 10; id. at 12 ("The conduct of tortious activity targeted at a New York entity and a New York judgment suffices to demonstrate that the Turnover Respondents should reasonably have anticipated being haled into court here.") (emphasis added).)[6]  Given that Mr. Carpenter and Grist Mill "aimed [their] conduct at the forum," Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 87 (2d Cir. 2018), the Court permissibly exercised personal jurisdiction over them.[7]

Mr. Carpenter's and Grist Mill's motions to vacate, to the extent they seek vacatur based on the Court's purported lack of personal jurisdiction over them, are therefore denied.

---

[6]     Mr. Carpenter and Grist Mill each failed to appeal the Court's factual findings underlying the Court's personal jurisdiction conclusion, and have proffered no basis for the Court to reconsider those findings on these motions.

[7]     Indeed, several courts since Walden have found that they could properly exercise personal jurisdiction over nonresident transferees where, as here, those transferees knowingly participated in fraudulent transfers designed to frustrate a party's ability to collect on an in-state judgment.  See, e.g., Seward v. Richards, No. 2020-0259, 2021 WL 4075940, at *5 (N.H. Sept. 8, 2021) (collecting cases); Warren Hill, LLC v. Neptune Invs., LLC, No. 20-CV-0452-HB, 2020 WL 2126798, at *3 (E.D. Pa. May 5, 2020) (collecting cases); Ocean Garden Prod. Inc. v. Blessings Inc., No. 18-CV-00322-TUC-RM, 2019 WL 4736928, at *5 (D. Ariz. Sept. 27, 2019); AKH Co., Inc. v. Universal Underwriters Ins. Co., No. 13-2003-JAR-KGG, 2018 WL 4111717, at *8 (D. Kan. Aug. 29, 2018); In re Akbari–Shahmirzadi, No. 11-15351-T11, 2016 WL 6783245, at *3 (Bankr. D.N.M. Nov. 14, 2016) (collecting cases).

Service of Process

Mr. Carpenter and Grist Mill each further argue that the Turnover Judgment is void because "Universitas should have served GMC [and Mr. Carpenter] with formal service of process[.]"  (Docket entry no. 697 at 5-6; docket entry no. 665 at 17-18.)  The Court previously rejected the same argument as meritless, because "each of the Turnover Respondents agreed to accept, and accepted, service by e-mail."  (Turnover Opinion at 5, 14; see also docket entry no. 492 at 1-2); Zherka v. Ryan, 52 F. Supp. 3d 571, 577 (S.D.N.Y. 2014) ("The defense of insufficient service of process may be waived.").[8]  Mr. Carpenter and Grist Mill have failed to carry their burden to show that such service did not occur, was not authorized, or was not waived.  Burda Media, Inc. v. Viertel, 417 F.3d 292, 299 (2d Cir. 2005) ("[O]n a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur.").  Their motions, to the extent they seek vacatur based on inadequate service of process, are therefore denied.

Subject Matter Jurisdiction

Mr. Carpenter argues that the Turnover Judgment should be vacated under Rule 60(b)(4) for lack of subject matter jurisdiction under Peacock and Epperson.  The Court has previously considered and rejected this argument (made by Mr. Carpenter and/or entities under his control) in these actions (see docket entry nos. 161, 319, 464, 471, 474; see also docket entry no. 545 at 4-5), and Mr. Carpenter has proffered no basis for the Court to revisit those

---

[8]     In Mr. Carpenter's case, he was also served with the Turnover Motion (and the Turnover Opinion and Turnover Judgment) via ECF notification to his counsel.

SPA-37

determinations on this motion.  Mr. Carpenter's motion to vacate, to the extent it seeks vacatur

based on the Court's purported lack of subject matter jurisdiction, is therefore denied.

> Due Process (Grist Mill)

Grist Mill also moves to vacate on the theory that, because attorney Bernstein

alerted the Court on the eve of the Turnover Judgment that Grist Mill had discharged her, but

failed to file a motion to withdraw pursuant to Local Civil Rule 1.4, Grist Mill's due process

rights to participate in the turnover proceedings and to appeal the Turnover Judgment were

violated.  (See docket entry no. 697 at 10 ("It denied GMC the opportunity ever to raise an

argument based on lack of personal jurisdiction."); at 12 ("[A]fter Ms. Bernstein told the Court

she no longer represented GMC, the Court took no steps to ensure GMC retained new counsel.");

at 16-17 ("GMC had no one to file an appeal[.]").)

While Rule 60(b)(4) may provide relief "where a judgment is premised" on "a

violation of due process that deprives a party of notice or the opportunity to be heard," Espinosa,

559 U.S. at 271, the record does not support a conclusion that Grist Mill was deprived due

process in connection with the Turnover Judgment.  Instead, Grist Mill both received notice of

Petitioner's Turnover Motion and had an opportunity to be heard in response, as evidenced by its

joinder of the Joint Turnover Opposition.  That was all due process required.

No due process violation resulted from Grist Mill's later decision to discharge its

counsel after the Turnover Motion had been pending for several months.  Grist Mill's argument

that it was "silenced by the departure of its counsel and its principal's incarceration" (docket

entry no. 697 at 12) is belied by Mr. Carpenter's and Grist Mill's continued litigation efforts in

other matters, in other fora, during the same time period.  See Daniel Carpenter and Grist Mill

Capital LLC v. Allen et al., No. 3:14-cv-00741-SRU (D. Conn.), ECF Nos. 9, 11, 15; Daniel

SPA-38

Carpenter and Grist Mill Capital LLC v. Shulman et al., No. 3:13-cv-563-SRU (D. Conn.), ECF Nos. 33, 34, 43, 45, 46, 51.  Moreover, several other nonresident transferees also controlled by Mr. Carpenter participated in the supplemental briefing and oral argument as to the Turnover Motion.[9]  In sum, Grist Mill's decision to discharge its counsel shortly before the Court's Turnover Judgment does not entitle Grist Mill to relief under Rule 60(b)(4).  See Mickalis Pawn Shop, 645 F.3d at 139 ("The defendants overlook the critical distinction between defendants who 'appear' in court . . . and those who do not.").

Finally, Grist Mill is not entitled to relief under any provision of Rule 60(b) based on the fact that attorney Bernstein did not formally withdraw as its counsel in compliance with Local Civil Rule 1.4.  Initially, the Court notes that attorney Bernstein's letter dated May 25, 2014, suggests that she understood that her letter (without more) did not relieve her of her obligations as counsel; otherwise, there would have been no need to inform the Court of her upcoming vacation schedule.  (Docket entry no. 442.)  Even assuming attorney Bernstein intended to file a formal motion to withdraw before the Court's adjudication of the Turnover Motion, and failed to do so as a result of her own error, that attorney error would not entitle Grist Mill to relief from a judgment it had sufficient notice of, an opportunity to respond to, and a say in opposing, six years later.  Cyan Contracting Corp. v. Nat'l Grange Mut. Ins. Co., 257 F.R.D. 626, 628 (S.D.N.Y. 2009) ("Attorney error rarely is a ground for relief under Rule 60(b)(1) and

---

[9]     Several of those entities sought reconsideration of the Turnover Opinion (see docket entry no. 481), despite Mr. Carpenter having reported to prison.  Considering this fact alongside Mr. Carpenter's and Grist Mill's continued active litigation in other fora in the second half of 2014, the Court also rejects Grist Mill's argument that it "never got a chance to appeal" and should be relieved from the Turnover Judgment pursuant to Rule 60(b)(6)—an application which is, in any event, untimely.  Marshak v. Sheppard, 381 F. Supp. 3d 261, 264 (S.D.N.Y. 2019) ("[F]ive years is not a reasonable time to wait to bring a Rule 60(b)(6) motion."), aff'd, 803 F. App'x 555 (2d Cir. 2020).

is a ground under Rule 60(b)(6) only where the attorney's conduct is grossly negligent and

extraordinary circumstances are present."); Marshak, 381 F. Supp. 3d at 264 ("[F]ive years is not

a reasonable time to wait to bring a Rule 60(b)(6) motion.").

Grist Mill's motion to vacate, to the extent it seeks vacatur based on its alleged

"unrepresented and defaulting" status as of May 2014, is therefore denied.

Rule 58 (Mr. Carpenter)

Mr. Carpenter argues the Turnover Judgment is void because it is merely a

"Clerk's Order" signed by the Clerk and not by a district judge, as purportedly "required by Rule

58." (Docket entry no. 665 at 20-21.) Rule 58 (as amended in 2002) requires at most, and only

in certain circumstances, that the Court "approve the form" of a separately-entered judgment.

Fed. R. Civ. P. 58(b)(2). Here, the Turnover Judgment was entered as a separate document with

the approval of and at the direction of the Court. (See Turnover Opinion at 23-24.) See also 10

Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2652 (4th ed. 2021)

("[I]t has been held that a judgment need not be signed by the judge to be effective."). In any

event, even if the signature of a district judge had been required on the Turnover Judgment, such

a procedural defect would not render the judgment void, In re Texlon Corp., 596 F.2d at 1099

("[a] judgment is not void merely because it is erroneous" (citation omitted)), especially in light

of the 2002 amendments to Rule 58, which set a 150-day outside cap on a judgment becoming

"entered" and therefore appealable, even where the Court fails to comply with the "separate

document" requirement of that Rule. See Burnley v. City of San Antonio, 470 F.3d 189, 197

(5th Cir. 2006) (explaining the 2002 amendments to Rule 58 and finding the appellant's

argument "that the clerk's entry of a judgment on the verdict on February 2, 2004 was a nullity"

for lack of approval by the district judge "to be without merit"); Harmston v. City & Cty. of San

SPA-40

<u>Francisco</u>, 627 F.3d 1273, 1280 (9th Cir. 2010) ("Congress has decided that ensuring finality eventually becomes more important than strictly enforcing Rule 58's separate document requirement.").

<u>Remaining Arguments</u>

The Court has considered the various other arguments raised by Mr. Carpenter in his motion to vacate and reply in support of that motion.  For the reasons set forth in Petitioner's opposition brief (<u>see</u> docket entry no. 667 at 14-16), those arguments are each untimely, barred by the doctrines of claim or issue preclusion, and/or meritless, and they certainly do not meet Mr. Carpenter's burden to show an entitlement to vacatur of the Turnover Judgment under Rule 60(b).  <u>See</u> <u>Kotlicky v. U.S. Fid. & Guar. Co.</u>, 817 F.2d 6, 9 (2d Cir. 1987) ("Generally, courts require that the evidence in support of the motion to vacate a final judgment be 'highly convincing,' that a party show good cause for the failure to act sooner, and that no undue hardship be imposed on other parties." (internal citations omitted)).

<u>Motion to Take Judicial Notice</u>

Mr. Carpenter separately moves (docket entry no. 675) requesting that the Court take judicial notice of (1) "a letter from Attorney Manson on behalf of Universitas threatening a motion to strike that was delivered on my family's doorstep on Christmas Eve [2020]," and (2) the case <u>Universitas Educ., LLC v. T.D. Bank</u>, No. 15-CV-5643-SAS, 2015 WL 9304551 (S.D.N.Y. Dec. 21, 2015).  Mr. Carpenter also asks that the Court issue an injunction to stop two of Petitioner's attorneys in this matter from contacting him or his family, and grant him permission to "ignore discussing anything" with those attorneys.

Petitioner does not oppose Mr. Carpenter's request that the Court take judicial notice of Petitioner's threatened motion to strike, or of Judge Scheindlin's 2015 decision in <u>T.D.</u>

<u>Bank</u>.  The Court therefore grants that portion of Mr. Carpenter's request as unopposed and has considered those proffers in deciding the motions addressed in this Memorandum Opinion and Order.  To the extent Mr. Carpenter seeks an injunction prohibiting communications to him from Petitioner's attorneys—who not only may but in some circumstances must communicate with him, given his <u>pro se</u> status in these actions, in order to comply with this Court's Individual Practices—that request is denied.

Motion for Sanctions

Petitioner moves, under Federal Rule of Civil Procedure 11, for sanctions against Mr. Carpenter arising out of Mr. Carpenter's filing of his motion to vacate.  (Docket entry no. 676.)  Petitioner served Mr. Carpenter with its Rule 11 papers more than twenty-one days before filing its motion (docket entry no. 676-1), and upon filing those papers (docket entry no. 682).  Mr. Carpenter did not file any response.[10]

Rule 11 requires that motions and other papers presented to the Court not be "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," that "the claims, defenses, and other legal contentions" presented "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that the factual contentions in such motions and other papers "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(1), (b)(2), (b)(3).  The Court may sanction a party for violation of Rule 11 "after notice and a reasonable opportunity to respond."  Fed. R. Civ. P. 11(c)(1)-(2).  <u>Pro se</u>

---

[10]     Grist Mill filed a response (docket entry no. 686), opposing the motion to the extent it sought relief against Grist Mill.

SPA-42

Case 1:11-cv-08726-LTS-HBP   Document 436   Filed 09/28/21   Page 21 of 25

parties such as Mr. Carpenter are bound by the requirements of Rule 11.  Sorenson v. Wolfson,
170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016), aff'd, 683 F. App'x 33 (2d Cir. 2017).  Sanctions
should only be imposed, however, "if 'it is patently clear that a claim has absolutely no chance of
success,' and all doubts should be resolved in favor" of the filing party.  K.M.B. Warehouse
Distributors, Inc. v. Walker Mfg. Co., 61 F.3d 123, 131 (2d Cir. 1995) (citation omitted).  The
"main purpose of Rule 11 is to deter improper behavior, not to compensate the victims of it or
punish the offender."  Universitas Educ., LLC v. Nova Grp., Inc., 784 F.3d 99, 103 (2d Cir.
2015) (quoting 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure §
1336.3 (3d ed. 2004)).

 In considering whether to impose Rule 11 sanctions, the Court must determine
whether Mr. Carpenter has violated Rule 11, and, if so, what sanctions are appropriate.[11]

 Petitioner argues that each of Mr. Carpenter's "ten reasons for vacating the
judgment" is sanctionable under Rule 11.  However, while Mr. Carpenter's motion to vacate
does repeat a number of questionable arguments in passing, its principal bases are that the Court
lacked personal jurisdiction over Petitioner under Walden, that service of process was
insufficient, that the Court lacked subject matter jurisdiction, and that the Turnover Judgment did
not comply with Rule 58.  Mr. Carpenter's first argument—that the Turnover Judgment's
jurisdictional analysis was inconsistent with Walden—is without merit, but is not entirely

---

[11] In weighing "whether to impose a sanction or what sanctions would be appropriate in the
circumstances," the Court considers, among other factors, "[w]hether the improper
conduct was willful, or negligent; whether it was part of a pattern of activity, or an
isolated event; whether it infected the entire pleading, or only one particular count or
defense; whether the person has engaged in similar conduct in other litigation; whether it
was intended to injure; what effect it had on the litigation process in time or expense;
[and] whether the responsible person is trained in the law."  Fed. R. Civ. P. 11 advisory
committee note to the 1993 amendment.

UNIVERSITAS V NOVA - RULE 60(6) MOTS   VERSION SEPTEMBER 28, 2021   21

frivolous, and is not an argument that had been previously and explicitly rejected by the Court. However, Mr. Carpenter's arguments concerning service of process and subject matter jurisdiction are not only without merit, but have been considered and rejected by this Court on prior occasions.  (See Turnover Opinion at 2, 5, 14; docket entry no. 492 at 1-3.)  See also Adams v. New York State Educ. Dep't, 752 F. Supp. 2d 420, 457 n.43 (S.D.N.Y. 2010) ("Because this Court previously rejected Adams' and Cruz's argument that abolishing the three member panel violated due process. . . . [their counsel] is subject to Rule 11 sanctions for re-asserting the claim without new facts or legal arguments."), aff'd sub nom. Ebewo v. Fairman, 460 F. App'x 67 (2d Cir. 2012).  Moreover, this Court has located no existing case law supporting Mr. Carpenter's argument that a separate judgment signed by the Clerk of Court may be declared void, pursuant to Rule 60(b)(4) or (b)(6), several years after that judgment is issued, for lack of a district judge's signature, and Mr. Carpenter proffered no nonfrivolous argument to interpret the law in that fashion.  The Court therefore concludes that Mr. Carpenter's inclusion of those arguments in his motion to vacate warrants the imposition of sanctions under Rule 11.

As proposed sanctions, Petitioner requests that the Court (1) "[e]xpand the scope of the current Court order [see docket entry no. 295 at 10] requiring that [Nova] obtain permission from the Court before filing any motion to encompass" Mr. Carpenter, Grist Mill, and the other Turnover Respondents, (2) "[e]xpand the scope of the current judgment against Nova for Universitas' attorneys' fees and costs [see docket entry no. 491] to encompass" the same entities, and (3) "[s]tay any additional litigation in this matter, including an appeal for any denial of any Motion to Vacate, until the monetary sanction imposed upon Nova is paid." (Docket entry no. 676.)

On this record, the Court concludes that Mr. Carpenter's motion, which was filed on his own behalf rather than on behalf of any of the other Turnover Respondents, and which raised a combination of sanctionable and non-sanctionable arguments, does not warrant the extensive sanctions requested by Petitioner.  Instead, a narrower and more tailored sanction, requiring Mr. Carpenter to obtain permission from the Court before filing any further motion in these cases, is warranted for the reasons set forth below.[12]

First, Mr. Carpenter has at least a twenty-year history of raising questionable arguments, including some bearing similarity to certain of those in his motion to vacate, before this Court and others.[13]  Second, though Mr. Carpenter is pro se, he is trained in the law.  See Curcio v. Comm'r, 99 T.C.M. (CCH) 1478 (T.C. 2010), aff'd, 689 F.3d 217 (2d Cir. 2012) ("Carpenter is a lawyer with experience in tax and employee benefits law.").  Third, Mr.

---

[12]    Several factors are "to be considered in restricting a litigant's future access to courts: '(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.'" Iwachiw v. New York State Dep't of Motor Vehicles, 396 F.3d 525, 528 (2d Cir. 2005) (citation omitted).

[13]    See, e.g., Universitas Educ., LLC v. Benistar, No. 3:20-CV-00738-JAM, 2021 WL 965794, at *18 (D. Conn. Mar. 15, 2021) ("This second motion is based on essentially the same argument as the first motion to dismiss: that the Defendant Trusts' sole trustee [Mr. Carpenter] was not personally served, rendering service of process ineffective, and more than 90 days have passed since the complaint was filed.  I will deny the Defendant Trusts' second motion to dismiss for the same reasons that I am rejecting their failure to properly serve process argument [ ]."); United States v. Carpenter, No. 04-CR-10029-GAO, 2019 WL 722631, at *4 (D. Mass. Feb. 20, 2019) (rejecting argument made by Mr. Carpenter as frivolous); Carpenter v. Comm'r, Internal Revenue Serv., No. 3:13-CV-563-SRU, 2018 WL 1902583, at *14 n.38 (D. Conn. Apr. 20, 2018) (same) (subsequent history omitted); Israel v. Carpenter, No. 95-CV-2703-DAB-JCF, 2001 WL 1159631, at *1 (S.D.N.Y. Oct. 1, 2001) (denying Mr. Carpenter's motion pursuant to Rule 60(b)(1) as "entirely frivolous").

Carpenter's motive appears to have been at least in part to cause unnecessary expense on

Universitas and an undue burden on the Court, given that during the pendency of Mr.

Carpenter's motion to vacate, he filed a second motion to vacate pursuant to other subsections of

Rule 60 (docket entry no. 700), rather than incorporating all of his proffered bases for vacatur

into a single Rule 60 motion.[14]   Finally, Mr. Carpenter has so far not been deterred by financial

sanctions against the entities he controls in this actions.  (See, e.g., docket entry no. 491.)

Having considered these factors, as well as Mr. Carpenter's conduct (and the conduct of the

entities he controls) in these actions, the Court will require Mr. Carpenter to obtain permission

from the Court before filing any further motions in these actions, pursuant to Rule 11.

CONCLUSION

For the reasons set forth above, Mr. Carpenter's motion to vacate (docket entry

no. 665) is denied, Grist Mill's motion to vacate (docket entry no. 696) is denied, Mr.

Carpenter's motion for the Court to take judicial notice (docket entry no. 675) is granted in part

and denied in part, and Petitioner's motion for sanctions (docket entry no. 676) is granted in part

and denied in part.

Mr. Carpenter is hereby prohibited from filing any further motions in these cases

without prior permission from the Court.  Mr. Carpenter may seek such permission by way of

filing a letter-motion, not to exceed three pages, identifying the basis of the motion he seeks

---

[14]   Mr. Carpenter's second motion to vacate did not include a certification that Mr.
Carpenter had complied with this Court's Individual Practices requiring pre-motion
communications between the parties before a party makes a motion of any type, leading
to the Court denying it without prejudice to reinstatement.  (See docket entry no. 701.)

permission to file, and certifying, pursuant to this Court's Individual Practices, that Mr.

Carpenter has consulted with all opposing parties regarding the relief he proposes to seek.

This Memorandum Opinion and Order resolves docket entry nos. 665, 675, 676,

and 696 in case no. 11-CV-1590, and docket entry nos. 401, 406, and 419 in case no. 11-CV-

8726.

Chambers will mail a copy of this Memorandum Opinion and Order to Mr.

Carpenter.

SO ORDERED.

Dated: New York, New York
       September 28, 2021

                                                    /s/ Laura Taylor Swain
                                                  LAURA TAYLOR SWAIN
                                                  Chief United States District Judge

**Copy mailed to:**

Daniel E. Carpenter
18 Pond Side Lane
West Simsbury, CT 06092