# 21-2690(L)

# 21-2691(C)

## United States Court of Appeals
## for the
## Second Circuit

UNIVERSITAS EDUCATION, LLC

*Petitioner-Appellee.*

*v.*

DANIEL E. CARPENTER & GRIST MILL CAPITAL, LLC.

*Respondent-Appellants,*

NOVA GROUP, INC, as Trustee, Sponsor and Named Fiduciary of The Charter Oak Trust Welfare Benefit Plan, GRIST MILL TRUST WELFARE BENEFIT PLAN, AVON CAPITAL LLC, CHARTER OAK TRUST WELFARE BENEFIT PLAN, PHOENIX CAPITAL MANAGEMENT, LLC, HANOVER TRUST COMPANY, CARPENTER FINANCIAL GROUP, INC.,

*Respondents,*

DANIEL E. CARPENTER,

*Movant-Appellant*

On Appeal from the United States District Court for the
Southern District of New York

**PRINCIPAL BRIEF FOR PETITIONER-APPELLEE**

Joseph L. Manson III
LAW OFFICES OF JOSEPH L.
MANSON III
600 Cameron St., 4th Floor,
Alexandria, VA 22314
(202) 674-1450

Patrick D. Bonner Jr.
MENZ BONNER KOMAR
& KOENIGSBERG LLP
1 N Lexington Ave #1550
White Plains, New York 10601
(914) 949-0222

*Counsel for Petitioner-Appellee*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Appellee Universitas Education, LLC hereby states that it has no parent corporation and no publicly- held corporation owns 10% or more of its stock or units.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

JURISDICTIONAL STATEMENT ................................................................ 7

STATEMENT OF THE ISSUES ..................................................................... 8

STATEMENT OF THE CASE ........................................................................ 9

**I.**    **The Underlying Arbitration Award and Confirmation.** .......................... 9

**II.**   **The Turnover Proceedings** ................................................................. 11

**III.**  **The Respondents Failed to Appeal the Turnover Judgment.** ............. 14

**IV.**   **Criminal Prosecution Concerning the Stolen Insurance Proceeds.** ... 15

**V.**    **The Motions to Vacate in the District Court.** .................................... 15

SUMMARY OF ARGUMENT ...................................................................... 16

STANDARD OF REVIEW ............................................................................ 22

ARGUMENT ................................................................................................ 25

**I.**    **The District Court did Not Err in Denying the Motions to Vacate**
**alleging that the Turnover Judgment was Void for Lack of Personal**
**Jurisdiction because Mr. Carpenter and GMC Waived their Personal**
**Jurisdiction Defenses, and Alternatively, the District Court Properly**
**Exercised Personal Jurisdiction over GMC and Mr. Carpenter.** ................. 25

   a.    The Appellants Waived their Personal Jurisdiction Defenses by Either
   Affirmatively Waiving the Defense or by Forfeiting it by Failing to Plead the
   Defense. ......................................................................................................... 26

      1.    *Mr. Carpenter Knowingly and Affirmatively Waived his Personal*
      *Jurisdiction Defenses.* ................................................................................ 27

      2.    *GMC Forfeited its Personal Jurisdiction Defenses by Declining to*
      *Affirmatively Plead those Defenses.* ........................................................ 29

   b.    Alternatively, the District Court Correctly found that the Appellants Had
   Sufficient Minimum Contacts to Support the Constitutional Exercise of the
   District Court's Jurisdiction under New York's Long-Arm Statute. ............... 31

      1.    *The Caselaw Cited by GMC and Mr. Carpenter Does Not Render the*
      *District Court's Exercise of Personal Jurisdiction Improper.* ..................... 34

*2.    The District Court did Not Err when it Found that it Possessed Personal Jurisdiction Over GMC and Mr. Carpenter and Denied their Motions to Vacate.* ...................................................................................... 36

c.    The District Court Correctly Found that Both Mr. Carpenter and GMC Waived the Requirements of Service of Process. ............................................. 37

*1.    Mr. Carpenter and GMC Waived Service of Process in the Underlying Proceeding, and therefore it is not a Grounds for Finding a Lack of Personal Jurisdiction.* .................................................................................................. 38

**II.    The District Court did Not Err in Denying the Motions to Vacate alleging that the Turnover Judgment was Void for Lack of Subject Matter Jurisdiction because the District Court Correctly Found that it had Subject Matter Jurisdiction.** ....................................................................................... 42

a.    The District Court had at Least an Arguable Independent Basis for Subject Matter Jurisdiction, and Thus did Not Require Ancillary Jurisdiction as Well. ...... 44

b.    The District Court had at Least an Arguable Independent Basis for Ancillary Jurisdiction. ...................................................................................... 47

**III.    The District Court did Not Err in Denying the Motions to Vacate on the Grounds that the Turnover Judgment was Void under Rule 58.** ........... 47

a.    The District Court Properly Denied the Motion to Vacate the Turnover Judgments under Rule 60(b)(4) because Rule 60(b)(4) is Not Applicable to Failures to Comply with Rule 58. .................................................................... 49

b.    The District Court did Not Err in Denying the Motion to Vacate the Turnover Judgment when it Found that the District Court Complied with the Requirements of Rule 58, and that it was Not a Basis for Relief. .................... 50

**CONCLUSION** .................................................................................... 52

# TABLE OF AUTHORITIES

*A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993)..........................32

*Burda Media, Inc. v. Viertel*, 417 F.3d 292 (2d Cir. 2005)................................21, 37

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)..........................................32

*Burnley v. City of San Antonio*, 470 F.3d 189 (5th Cir. 2006)................................49

*Calder v. Jones*, 465 U.S. 783 (1984)....................................................................32

*Central Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186 (2d Cir. 2003)...................24

*C.F. Tr., Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126 (4th Cir. 2002)..................45

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011)..................................................................................17, 18, 26, 27

*Cooper v. Town of E. Hampton*, 83 F.3d 31 (2d Cir. 1996)................................48, 51

*CSX Transp., Inc v. Island Rail Terminal, Inc.*, 879 F.3d 462 (2d Cir. 2018)..................................................................................20, 41, 46

*CSX Transp., Inc. v. Filco Carting Corp.*, No. 10-CV-1055 (NGG) (JMA), 2011 U.S. Dist. LEXIS 74625 (E.D.N.Y. July 7, 2011)....................................................45

*Daimler AG v. Bauman*, 571 U.S. 117 (2014)............................................19, 31, 42

*Dancause v. Mount Morris Cent. Sch. Dist.*, 590 F. App'x 27 (2d Cir. 2014).........48

*Daniel Carpenter and Grist Mill Capital LLC v. Allen et al.*, No. 3:14-cv-00741-SRU (D. Conn. 2014).......................................................................................15-16

*Daniel Carpenter and Grist Mill Capital, LLC v. Shulman et al.*, No. 18-2152 (2d Cir. 2018).................................................................................................................16

*Daniel Carpenter and Grist Mill Capital LLC v. Shulman et al.*, No. 3:13-cv-563-SRU (D. Conn. 2013).............................................................................................16

*DeCurtis v. Ferrandina*, 529 F. App'x 85 (2d Cir. 2013)..................................23, 50

*Deprins v. Clark*, 566 F. App'x 608 (9th Cir. 2014)..................................................51

*Eliav v. Millennium Prods. Grp. LLC*, 857 F. App'x 699 (2d Cir. 2021)...........23, 44

*Epperson v. Entertainment Express, Inc.* 242 F.3d 100 (2d Cir. 2001).............44, 47

*FTC v. Cotelli*, 854 F. App'x 837 (9th Cir. 2021).................................................38, 40

*Gater Assets Ltd. v. Moldovagaz*, 2 F.4th 42 (2d Cir. 2021)...........................24, 31

*Grace v. Bank Leumi Trust Co.*, 443 F.3d 180 (2d Cir. 2006)...............................23

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014).....................................34

*Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48 (2d Cir. 2000)........42

*Harris v. United States*, 367 F.3d 74 (2d Cir. 2004).................................................23

*In re Akbari-Shahmirzadi*, 2016 Bankr. LEXIS 3957 (Bankr. N.M. Nov. 14, 2016)...................................................................................................................33, 36

*In re Litas Int'l, Inc.*, 316 F.3d 113 (2d Cir. 2003).................................................51

*In re Texlon Corp. v. Mfrs. Hanover Commercial Corp.*, 596 F.2d 1092 (2d Cir. 1979)....................................................................................................................49

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)..............................................................................................................26

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)...........................................31-32

*Irvin v. Harris*, 944 F.3d 63 (2d Cir. 2019)...........................................................24

*ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98 (2d Cir. 2012)................17

*Jackson v. Pfau*, No. 9:10-CV-1484 (GTS/DEP), 2012 U.S. Dist. LEXIS 193460 (N.D.N.Y. Jan. 10, 2012)..................................................................................47-48

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).........................................32

*Kim v. Yoo*, 776 F. App'x 16 (2d Cir. 2019)............................................................44

*Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6 (2d Cir. 1987)..................................24

*Leonhard v. United States*, 633 F.2d 599 (2d Cir. 1980)...........................................48

*Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986).....................................................23

*Orr v. Plumb*, 884 F.3d 923 (9th Cir. 2018).....................................................48, 50

*Peacock v. Thomas*, 516 U.S. 349 (1996)........................................12, 13, 22, 43, 45

*Perpetual Sec., Inc. v. Tang*, 290 F.3d 132 (2d Cir. 2002).......................................42

*"R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115 (2d Cir. 2008).....22, 26, 27, 28, 37

*Riggs v. Johnson Cty.*, 73 U.S. 166 (1868).............................................................43

*Salamone v. Douglas Marine Corp.*, No. 1:19-cv-01213 (MAD/DJS), 2022 U.S. Dist. LEXIS 6327 (N.D.N.Y. Jan. 12, 2022)......................................................26

*Sanchez v. MTV Networks*, 525 F. App'x 4 (2d Cir. 2013).......................................24

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014)........19

*SEC v. Romeril*, 15 F.4th 166, 171 (2d Cir. 2021)............................................23, 26

*Shaw v. AAA Eng'g & Drafting Inc.*, 138 F. App'x. 62 (10th Cir. 2005)................45

*Sunrise Indus. Joint Venture v. Ditric Optics, Inc.*, 873 F. Supp 765 (E.D.N.Y. 1995)..................................................................................................................33

*Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124 (2d Cir. 2020).......................................42

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724 (2d Cir. 1998).....26, 30

*United States Mine Workers v. Gibbs*, 383 U.S. 715 (1966)....................................43

*United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020)................................1, 15, 47

*United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. Jun. 6, 2016)......................................................................................................*passim*

*United States v. Carpenter*, 781 F.3d 599 (1st Cir. 2015)....................................1, 15

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010)...............17, 22, 23

*Universitas Educ., LLC v. Avon Capital, LLC,* No. 14-FJ-0005-HE, 2021 U.S. Dist. LEXIS 26388 (W.D. Okla. Feb. 11, 2021).........................................................9, 21

*Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-05-HE, 2020 U.S. Dist. LEXIS 251679 (W.D. Okla. Oct. 20, 2020)............................................................21

*Universitas Educ., LLC v. Benistar*, No. 3:20-cv-00738 (JAM), 2021 U.S. Dist. LEXIS 47804 (D. Conn. Mar. 15, 2021)...................................................................21

*Universitas Educ., LLC v. Nova Grp., Inc.*, 513 F. App'x 62 (2d Cir. 2013)............45

*Universitas Educ., LLC v. Nova Grp., Inc.*, 2016 U.S. Dist. LEXIS 64138 (S.D.N.Y. May 16, 2016)..........................................................................................................4

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590- LTS-HBP, 2016 U.S. Dist. LEXIS 72268 (S.D.N.Y. Mar. 31, 2016)..........................................................3

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 37988 (S.D.N.Y. Mar. 23, 2016)..........................................................2

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 143667 (S.D.N.Y. Oct. 8, 2014).......................................................2, 4

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014).......................................9, 10, 14, 51

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 3983 (S.D.N.Y. Jan. 13, 2014)...................................................3, 9, 10

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 165803 (S.D.N.Y. Nov. 20, 2013)......................................................11

*Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 142479 (S.D.N.Y. Sep. 30, 2013).............................................................................................2

*Universitas Educ., LLC v. Nova Grp., Inc.,* No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 99957 (S.D.N.Y. July 11, 2013)..........................................................3

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 142902 (S.D.N.Y. May 21, 2013)................................................2, 3, 4

*Universitas Educ. v Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2012 U.S. Dist. LEXIS 166554 (S.D.N.Y. Nov. 21, 2012)...............................................................2

*US Bank N.A. v. Budnick*, 626 F. App'x 438 (5th Cir. 2015)............................38, 39

*Walden v. Fiore*, 571 U.S. 277 (2014)..............................19, 31, 32, 33, 34

*Waldman v. Palestinian Liberation Organization*, 835 F.3d 317 (2d Cir. 2016).....35

*Warren Hill, LLC v. Neptune Inv'rs, LLC*, 2020 U.S. Dist. LEXIS 78685 (E.D. Pa. May 5, 2020)................................................................................................33

*Wasserman Media Grp., LLC v. Bender*, No. 10 CIV. 8783 SAS, 2012 WL 1506181 (S.D.N.Y. Apr. 26, 2012)................................................................................14, 41

*Wells v. N.Y.C. Transit Auth.*, 2013 U.S. Dist. LEXIS 172995 (S.D.N.Y. Dec. 9, 2013)..........................................................................................................25

*Zherka v. Ryan*, 52 F. Supp. 3d 571 (S.D.N.Y. 2014).......................................20, 38

**Statutes**

28 U.S.C. § 1331 (2018)...........................................................................7

28 U.S.C. §1332 (2018)..............................................................7, 42, 46

28 U.S.C. § 1367 (2018)...........................................................7, 43, 46

28 U.S.C. § 1441 (2018)...........................................................................7

28 U.S.C. § 1291(a) (2018)......................................................................7

N.Y. C.P.L.R. Section 301.......................................................................32

N.Y. C.P.L.R. Section 302...............................................................32, 36

N.Y. C.P.L.R. Section 302(a)................................................................33

N.Y. C.P.L.R. Section 5225....................................................................41

## Rules

Fed. R. Civ. P. 4..................................................................................41

Fed. R. Civ. P. 12 (h)(1)(B)............................................18, 27, 30, 38, 40

Fed. R. Civ. P. 58..........................................................................*passim*

Fed. R. Civ. P. 58(b)....................................................................47, 48

Fed. R. Civ. P. 58(c)....................................................................48, 51

Fed. R. Civ. P. 58 Advisory Committee Notes (2002 amendments).................48, 50

Fed. R. Civ. P. 60(a)....................................................................52

Fed. R. Civ. P. 60(b)(4)...............................................................*passim*

Fed. R. Civ. P. 60(b)(6)...............................................................*passim*

Fed. R. Civ. P. 60(c)(1)...............................................................25

Fed. R. Civ. P. 69(a) ...................................................................41

SDNY Local Rule 5.2....................................................................20, 3

## Treatises

5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (1990) ...................................................................................27

## PRELIMINARY STATEMENT

Appellant, convicted felon, Daniel E. Carpenter ("Carpenter") operated a criminal conspiracy to, *inter alia*, defalcate and launder $30 million of insurance proceeds that rightfully belonged to Appellee Universitas Education, LLC ("Universitas"). This resulted in fifty-seven (57) felony convictions for Carpenter,[1] but Carpenter only served fourteen (14) months for stealing $30 million.[2]

As a result of this theft, Universitas obtained an arbitration award and subsequent judgments against Carpenter and certain shell companies under his control, including Grist Mill Capital, LLC ("GMC"). Less than $6 million of the $30 million in stolen funds have been recovered, all the while Mr. Carpenter maintains $26 million in face value of life insurance policies on his life, as well as an extravagant beach home purchased with the stolen funds, among other things. As a result, Carpenter is continuing his long running practice of filing frivolous motions in an effort to keep his ill-gotten gains. The extent of Carpenter's frivolous motion practices is astounding – the underlying proceeding was initiated ten years ago as an action to confirm an arbitration award and "should have been an ordinary and

---

[1] *See United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. Jun. 6, 2016), *aff'd sub nom. United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020).

[2] Carpenter served only fourteen months despite prior convictions on nineteen (19) felony counts regarding his misappropriation of client escrow funds. *See United States v. Carpenter*, 781 F.3d 599 (1st Cir. 2015), *cert. den.* 577 U.S. 871 (2015).

straightforward action to confirm and collect upon an arbitration award."[3] That proceeding has devolved into a series of ongoing protracted legal disputes in numerous courts – there are currently five separate collection actions in four federal district courts (and two appeals therefrom), all concerning the enforcement of Universitas' judgment. The **entirety** of this litigation has been "necessitated by [Carpenter's] relentless efforts … to prevent Universitas from realizing the benefit of its arbitration victory."[4]

Carpenter continues to improperly prevent Universitas from recovering its judgment through numerous methods. For instance, Carpenter conceals the location of the stolen funds by, *inter alia*, providing the District Court with false information intended to misdirect post-judgment discovery, intimidating witnesses, repeatedly lying under oath, and refusing to produce court ordered discovery.[5] Carpenter further

---

[3] *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 142902, at *35 (S.D.N.Y. May 21, 2013), *adopted* 2013 U.S. Dist. LEXIS 142479 (S.D.N.Y. Sep. 30, 2013).

[4] *Universitas Educ., LLC v. Nova Grp., Inc.* No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 143667, at *6 (S.D.N.Y. Oct. 8, 2014).

[5] *Universitas Educ., LLC v. Nova Grp., Inc.* No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 142901, at *25 (S.D.N.Y. May 21, 2013), *adopted by* 2013 U.S. Dist. LEXIS 142479 (S.D.N.Y. Sep. 30, 2013) ("In addition, [Carpenter's] claim that the insurance trustee of Charter Oak Trust was M&T Bank … appears to be similarly calculated to mislead. M&T Bank is not the insurance trustee…."); *Universitas Educ., v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2012 U.S. Dist. LEXIS 166554 (S.D.N.Y. Nov. 21, 2012) (*sua sponte* suggesting that Carpenter should be investigated by the FBI for obstruction of justice and witness tampering); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 37988, at *14 (S.D.N.Y. Mar. 23, 2016) ("After Judge Swain's

frustrates Universitas' collection efforts through continued fraud that renders judgment debtors insolvent.[6] Carpenter also fabricated evidence with an intent to deprive Universitas of its property.[7] However, Carpenter's primary tool for frustrating Universitas' collection efforts is frivolous motions practice intended to (1) delay collection of the judgment and (2) needlessly increase Universitas' legal fees so as to render collection efforts cost prohibitive. The District Court correctly found that (1) Carpenter employs a "litigation strategy of promoting delay through the filing of meritless and frivolous motions" and (2) his motions are "primarily aimed at avoiding or otherwise delaying Universitas' enforcement of the judgment."[8]

---

November 2013 finding that Carpenter had fabricated testimony regarding the location of the insurance proceeds, Carpenter testified again on these issues and Judge Swain again found that his testimony was not credible."); *Universitas Educ., LLC v. Nova Grp., Inc.,* No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 99957 (S.D.N.Y. July 11, 2013) (finding Carpenter in contempt of court for refusal to produce court ordered discovery).

[6] *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 3983, at *25 (S.D.N.Y. Jan. 13, 2014) ("Mr. Carpenter's entities have continued to seek to transfer assets from the judgment-debtor ... despite the Judgment and the service of restraining notices.").

[7] *See Carpenter*, 190 F. Supp. 3d at 293-94 (explaining that Daniel Carpenter unilaterally altered the Charter Oak Trust ("COT") Trust Document after Sash Spencer died to include a holdback provision to enable COT to wrongfully receive a portion of the Spencer insurance proceeds). Mr. Carpenter then submitted the altered Trust Document as evidence in the underlying arbitration, which could not be rebutted because he refused to identify the insurance trustee.

[8] *Universitas Educ.*, 2013 U.S. Dist. LEXIS 142902 at *35; *see also Universitas Educ., LLC v. Nova Grp., Inc.* , No. 11CV1590- LTS-HBP, 2016 U.S. Dist. LEXIS 72268, at *7-*18 (S.D.N.Y. Mar. 31, 2016) (explaining that Mr. Carpenter's actions in post-judgment litigation constituted "a pattern of . . . abusive tactics . . . intended

Carpenter's motions are "so lacking in merit that the only reasonable inference is that they are filed for dilatory purposes."[9]

Carpenter's frivolous motions practice is so extensive that the District Court likened his motions to a "protracted and uncompensable war of attrition."[10] Prior to the vacatur motions at issue on appeal, the District Court found eleven (11) post-judgment motions filed by Carpenter and/or his shell companies to be sanctionable. Carpenter and his entities engage in serial re-argument of meritless motions and arguments through different procedural vehicles.[11] The sanctions imposed by the District Court included attorneys' fees payable to Universitas, a monetary sanction payable to the court, and an anti-filing injunction. These sanctions were inconsequential to him. Carpenter and/or his entities have not paid a cent of the attorneys' fees, and Carpenter circumvented the monetary sanction by fraudulently rendering the sanctioned entity insolvent. Carpenter likewise circumvented the injunctive sanction by simply continuing to file frivolous motions through entities outside the scope of the anti-filing injunction.

---

to injure Universitas' rights to collect the judgment"), *adopted* 2016 U.S. Dist. LEXIS 64138 (S.D.N.Y. May 16, 2016).

[9] *Universitas Educ*, 2013 U.S. Dist. LEXIS 142902, at *31.

[10] *Universitas Educ.*, 2014 U.S. Dist. LEXIS 143667, at *6.

[11] *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *31-*32 (finding Carpenter's "attempt[s] to relitigate the same issues by invoking a different procedural vehicle" to be indicative of bad faith and intended solely to promote delay).

This appeal is simply another proceeding in the long line of frivolous and meritless actions filed by Carpenter and his myriad of disposable shell companies, such as GMC and Nova Group, Inc. ("Nova") in an attempt to conceal the stolen insurance proceeds and prevent Universitas from realizing its arbitration and litigation victories. The Appellants argue that the Court should vacate a judgment entered in 2014 because (1) the District Court lacked personal jurisdiction over them, (2) they were not served with process, (3) the District Court lacked subject matter jurisdiction over the underlying proceedings, and (4) Hon. Judge Swain did not personally sign the judgment. As demonstrated, *infra*, this appeal is meritless and frivolous. The Appellants contest the District Court's jurisdiction using demonstrably false factual claims, dated and inapplicable legal authority, and bad faith arguments in a transparent attempt to further Mr. Carpenter's litigation strategy of promoting delay through the filing of meritless and frivolous motions.

Moreover, the District Court already imposed injunctive sanctions against Carpenter in response to his vacatur motion. The Appellants now bring many of these same arguments before the Court on appeal.[12] In sanctioning Mr. Carpenter for this motion, the District Court noted Mr. Carpenter's "at least twenty-year history of raising questionable arguments, including some bearing similarity to certain of those

---

[12] The District Court stayed ruling on a motion for sanctions against GMC's counsel for GMC's vacatur motion pending this appeal.

in his motion to vacate, before this Court and others." (Special Appendix-44, hereinafter "SPA".)

The District Court found Carpenter's motion for vacatur sanctionable, *inter alia*, because many of his arguments were "considered and rejected by this Court on prior occasions." (SPA-42.) The Appellants' arguments concerning personal jurisdiction, service of process, and subject matter jurisdiction are nothing more than an attempt to relitigate arguments that have already been repeatedly rejected by the Hon. Judge Swain in the underlying proceeding. The District Court correctly found the argument concerning Hon. Judge Swain's signature to be sanctionable because there is "no existing case law supporting [the] argument that a separate judgment signed by the Clerk of Court be declared void." (SPA-43.) The instant appeal provides no persuasive justification to revisit these decisions or to overturn the District Court's orders. The District Court's Orders must be affirmed.

## JURISDICTIONAL STATEMENT

The District Court's jurisdiction was based on 28 U.S.C. §§ 1331, 1332, 1367, and 1441 (2018). This Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1291(a) (2018).

# STATEMENT OF THE ISSUES

1.      Whether the District Court erred in finding that it possessed personal jurisdiction over Mr. Carpenter and GMC when Mr. Carpenter, an attorney, knowingly waived any personal jurisdiction defenses in open court and when GMC failed to argue that the District Court lacked personal jurisdiction over it in its first defensive move.

2.      Whether the District Court erred in finding that Mr. Carpenter and GMC waived service of process.

3.      Whether the District Court erred in finding that Rule 58 of the Federal Rules of Civil Procedure did not void the judgments against Mr. Carpenter and GMC acquired as a result of the Turnover Motion.

4.      Whether the District Court erred in finding that it possessed subject matter jurisdiction over the Turnover Motion and related proceedings.

## STATEMENT OF THE CASE

Appellant GMC is a shell company that Daniel Carpenter used to hide assets from Universitas and other creditors. *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 109077, at *7 (S.D.N.Y. Aug. 7, 2014). Carpenter controls <u>hundreds</u> of similar shell entities. *Id*. Multiple courts have found that these entities are highly-interconnected and are often used interchangeably to hide Carpenter's personal assets from his creditors. *See Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-0005-HE, 2021 U.S. Dist. LEXIS 26388, at * 3 (W.D. Okla. Feb. 11, 2021); *Universitas Educ., LLC*, 2014 U.S. Dist. LEXIS 3983, at *13 ("The evidence received by this Court concerning the actions of Mr. Carpenter and his affiliates demonstrates an absence of respect for distinctions among his business entities . . . ."); *see also Carpenter*, 190 F. Supp. 3d at 273 ("[T]he evidence shows that the formal corporate structure of the various Benistar Entities had little meaning for the people involved.").

## I.  <u>The Underlying Arbitration Award and Confirmation.</u>

Carpenter operated many of these shell companies as part of a criminal conspiracy to, *inter alia*, steal and launder $30 million that rightfully belonged to Universitas. This conspiracy involved the Charter Oak Trust Welfare Benefit Plan ("COT"), a corrupted welfare benefit plan that Carpenter used to induce stranger

oriented life insurance ("STOLI") fraud,[13] and Nova Group, Inc. ("Nova"), the corporate trustee of COT. Carpenter controlled both Nova and COT.

Universitas Education, LLC "(Universitas") was the sole and irrevocable beneficiary of two life-insurance policies taken out on the life of Sash Spencer and placed in the COT. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077 at *6; (Universitas Supplemental Appendix-1, hereinafter "USA"). The face value of these policies totaled $30 million. When Mr. Spencer died, Nova, at Carpenter's direction, wrongfully denied Universitas' claim to the insurance proceeds and directed that the funds be fraudulently conveyed through shell entities under his control. Universitas demanded arbitration against Nova following the wrongful denial of its claim to the Spencer insurance proceeds, which was required take place in New York. Daniel Carpenter was the architect and financier of Nova's claims and defenses throughout the arbitration. *Universitas Educ., LLC*, 2014 U.S. Dist. LEXIS 3983, at *21 ("Mr. Carpenter was actively involved in, and controlled, Nova's litigation efforts in the Arbitration."). A binding arbitration award was entered against Nova and in favor of Universitas in January of 2011.

Nova refused to pay the arbitration award although it had submitted sworn affidavits that it possessed the assets to satisfy the award, (USA-2-8), and thus Universitas filed an action seeking to enforce the award in the District Court, which

---

[13] *See Carpenter*, 190 F. Supp. 3d 260 (D. Conn. Jun. 6, 2016).

was consolidated with a separate action Nova brought to vacate the arbitration award. The District Court confirmed the arbitration award and entered judgment against Nova in the amount of $30,181,880.30. (SPA-13-15.) The District Court found that GMC was the primary conduit through which Carpenter defalcated the stolen insurance proceeds. *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2013 U.S. Dist. LEXIS 165803, at *15 (S.D.N.Y. Nov. 20, 2013).

## II.    The Turnover Proceedings

Post-judgment discovery then revealed that Carpenter stole the insurance proceeds, laundered them through shell companies, and used the stolen funds to purchase an extravagant beachfront vacation property and a $30 million portfolio of insurance policies. Universitas filed two turnover motions to recover the stolen proceeds from recipients of these funds. (*See* Doc. No. 219, 308, Appendix-46, 61, hereinafter "A.") Carpenter was a named party in the first turnover application, and was represented by counsel throughout the turnover proceedings. (*See* Doc. No. 225, A-48.) The remaining Turnover Respondents were a series of sham companies that Carpenter operated as part of the criminal conspiracy to steal and launder Universitas' money—Carpenter controlled all of the Turnover Respondents.[14]

---

[14] The Appellants claim that Wayne Bursey and Jack Robinson were the principals of GMC. (Appellant's Opening Brief 18). This claim is false. Mr. Carpenter has testified that he was GMC's principal. (USA-177 ("At all relevant times I have been,

Carpenter's counsel filed an appearance in October of 2012. Universitas filed the first turnover motion in March of 2013. Carpenter's counsel received both turnover motions through the SDNY ECF filing system.

The District Court held a bench trial on May 9, 2013 regarding the first turnover motion. Counsel for both GMC and Carpenter were present, and Carpenter testified at the bench trial. Counsel for other Turnover Respondents, confirmed at the bench trial that all of the named respondents, including Carpenter, himself an attorney, waived any objections to personal jurisdiction. (USA-37:10-18) ("[T]he named respondents are not raising any personal jurisdiction issues. We've conferred with our clients on that. Legally there might be an issue, but we're consciously waving it.").

Universitas filed the second turnover motion in October of 2013. Counsel for GMC and Carpenter all agreed to accept service of the second turnover motion by email. (*See* USA-191-250.) Carpenter filed an opposition brief to this motion on October 25, 2013. Carpenter's opposition brief argued, *inter alia*, that the District Court lacked subject matter jurisdiction over the proceedings pursuant to *Peacock v. Thomas*, 516 U.S. 349 (1996). GMC responded to the second turnover motion on November 20, 2013 through an opposition brief filed jointly with numerous other

---

and continue to be, the Chairman of the Managing Member of Grist Mill Capital, LLC . . .")).

Turnover Respondents (USA-153-175.) The joint filing argued that the District Court lacked personal jurisdiction over numerous Turnover Respondents, but did not specifically claim that the District Court lacked personal jurisdiction over GMC. (USA-161-163.)[15]

The District Court subsequently held an evidentiary hearing on November 22, 2013. Counsel for both GMC and Carpenter were again present, and Carpenter again testified at the hearing. The District Court then scheduled oral argument on the second turnover motion, and specifically directed the parties to prepare for discussion of (1) *Peacock*'s effect on the court's authority in the turnover proceedings and (2) "whether personal jurisdiction must be established with respect to each third-party respondent against which relief is sought." (USA 189-90.) Carpenter's counsel was present at oral argument. (*See* USA-252, 284.)

On June 14, 2014 numerous Turnover Respondents filed a supplemental brief opposing the second turnover motion, which argued that the Turnover Respondents were not served with process and that the District Court lacked personal jurisdiction over the Turnover Respondents.[16] The Turnover Respondents cited extensively to

---

[15] The opposition argued that the District Court lacked personal jurisdiction over only some of the respondents—specifically Grist Mill Holdings, LLC, Hanover Trust Company, Carpenter Financial Group, and Phoenix Capital Management. Carpenter controlled all of these entities.

[16] The parties to the supplemental brief were Hanover Trust Company, Carpenter Financial Group, Phoenix Capital Management, LLC, and Avon Capital, LLC. Carpenter controlled all of these entities. Moreover, Avon Capital's prior attorney

*Wasserman Media Grp., LLC v. Bender*, No. 10 CIV. 8783 SAS, 2012 WL 1506181 (S.D.N.Y. Apr. 26, 2012) in support of the latter argument.

The District Court then entered judgment regarding the second turnover motion on August 7, 2014. See *Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077, at *7. Numerous Turnover Respondents moved for reconsideration of the judgment on September 9, 2014, and claimed that judgment was improper because the Turnover Respondents were not served with process and the District Court lacked personal jurisdiction over the Turnover Respondents pursuant to *Wasserman Media Grp., LLC v. Bender*. (Doc. Nos. 481, 482, A-96.) The District Court denied the reconsideration motion on November 5, 2014. (Doc No. 492, A-98.)

### III.    The Respondents Failed to Appeal the Turnover Judgment.

Throughout the proceedings GMC paid counsel representing various other respondents in the proceeding, including Grist Mill Trust. (USA-13-21) (noting checks from GMC signed by Mr. Carpenter paying for counsel for other entities). Mr. Carpenter was asked why GMC paid counsel representing other entities, including Halloran and Sage, LLP, which represented multiple turnover respondents; he exercised his Fifth Amendment right in response to such questions. (USA-11.). None of the respondents, all controlled by Carpenter, appealed.

---

simultaneously accepted service of the second turnover motion on behalf of Avon Capital and GMC.

## IV.    Criminal Prosecution Concerning the Stolen Insurance Proceeds.

The United States District Court for the District of Connecticut later convicted Mr. Carpenter on fifty-seven (57) felony counts, including ten counts of money laundering, thirteen counts of illegal monetary transactions, and conspiracy to commit money laundering directly related to the defalcation of insurance proceeds underlying Universitas' judgment. *See United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. Jun. 6, 2016), *aff'd sub nom. United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020). The Connecticut court explained that Mr. Carpenter engaged in criminal activity through his shell companies and found GMC to be among the "most significant" entities within the money laundering conspiracy. See *id.* at 273. The court further found that many other judgment debtors (such as Avon Capital, LLC and Grist Mill Trust) participated in the same criminal conspiracy.

## V.    The Motions to Vacate in the District Court.

Mr. Carpenter filed his motion to vacate the Turnover Judgment in October of 2020 (A-329-379), and GMC filed its motion to vacate the Turnover Judgment in February of 2021 (A-380-406), over six years after the entry of judgment. Neither Mr. Carpenter nor GMC appealed the Turnover Judgment.[17] Both filed their motions

---

[17] Both Mr. Carpenter and GMC suggested that they could not appeal it because Mr. Carpenter was incarcerated and GMC lacked counsel. However, both GMC and Mr. Carpenter continued to litigate other matters in various courts throughout 2014 and for the duration of Mr. Carpenter's incarceration. *United States v. Carpenter*, No. 14-1641 (1st Cir. 2014); *Daniel Carpenter and Grist Mill Capital LLC v. Allen et*

pursuant to Rules 60(b)(4) and 60(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Both motions advanced several arguments in support of vacating the Turnover Judgment. At issue in the present appeal are GMC's and Mr. Carpenter's arguments that: (1) the District Court lacked personal jurisdiction over them in the Turnover Judgment; (2) Mr. Carpenter and GMC were not served with adequate process; (3) the Court lacked subject matter and ancillary jurisdiction; and (4) the judgment was void pursuant to FRCP 58. As explained *infra*, these arguments are both meritless and sanctionable, have been rejected by the District Court multiple times, and the Court should affirm the District Court's findings.

## SUMMARY OF ARGUMENT

The District Court properly denied GMC's and Mr. Carpenter's Motions to Vacate, and found the arguments asserted therein sanctionable. The District Court properly found that Mr. Carpenter and GMC waived their personal jurisdiction defenses, and that it nevertheless possessed (1) personal jurisdiction over both GMC and Mr. Carpenter and (2) subject matter jurisdiction over the turnover proceeding. The District Court also properly found that both GMC and Mr. Carpenter had waived service of process. Finally, the District Court properly found that the requirements

---

*al.*, No. 3:14-cv-00741-SRU (D. Conn. 2014); *Daniel Carpenter and Grist Mill Capital LLC v. Shulman et al.*, No. 3:13-cv-563-SRU (D. Conn. 2013); *Daniel Carpenter and Grist Mill Capital, LLC v. Shulman et al.*, No. 18-2152 (2d Cir. 2018). Neither Mr. Carpenter nor GMC are advancing this argument on appeal.

under Rule 58 do not void the Turnover Judgment. While GMC and Mr. Carpenter made other arguments in their motions, they have abandoned these arguments on appeal.[18]

A judgment is void under Rule 60(b)(4) only "if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of the law." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010). Relief from judgment under Rule 60(b)(6) is available only for any reason that justifies relief and is not encompassed by the other subparts of Rule 60(b), and should only be granted in extraordinary circumstances. *E.g. ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 108 (2d Cir. 2012). The arguments advanced by Mr. Carpenter and GMC in support of their efforts to vacate the Turnover Judgment—either under Rule 60(b)(4) or 60(b)(6)—are hopelessly flawed for numerous reasons.

*First*, both Mr. Carpenter and GMC waived their defenses of personal jurisdiction in the underlying proceeding. Unlike subject matter jurisdiction, a party can purposefully waive or inadvertently forfeit their personal jurisdiction defenses. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011);

---

[18] Universitas also notes, at the outset, that each of the arguments presented by GMC and Mr. Carpenter have already been determined on multiple occasions by the District Court and are precluded by *res judicata.* Notwithstanding the clear bar to these arguments, and because this Court conducts a *de novo* review of jurisdictional issues, Universitas addresses these arguments substantively in the current brief.

*see also* Fed. R. Civ. P. 12(h)(1)(b) (a party must raise the defense of personal jurisdiction in a "responsive pleading"). In considering all the "relevant facts and circumstances," it is clear that both GMC and Mr. Carpenter intentionally forfeited their personal jurisdiction defenses. *See Mickalis Pawn Shop*, 645 F.3d at 134. Mr. Carpenter knowingly and purposefully waived any personal jurisdiction defenses in open court. Carpenter further forfeited those arguments by continuing to litigate against Universitas in the District Court for years without objecting to the District Court's exercise of personal jurisdiction over him, erstwhile he directed other Turnover Respondents under his control to repeatedly dispute personal jurisdiction. GMC similarly forfeited any defenses to the District Court's exercise of personal jurisdiction over it in relation to the Turnover Motion. It failed to raise any personal jurisdiction objections in its first defensive move in the case—an opposition brief disputing the District Court's personal jurisdiction over numerous Turnover Respondents. GMC further failed to subsequently object despite the fact that its counsel was aware that such defenses were available and being asserted by other parties, and GMC was paying attorneys asserting this defense on behalf of other Turnover Respondents.

*Second*, even if Mr. Carpenter and GMC did not waive and/or forfeit their personal jurisdiction defenses, which they did, both had sufficient minimum contacts to support the District Court's exercise of specific jurisdiction over them. Mr.

Carpenter and GMC hang their hats on the holdings in *Walden v. Fiore*, 571 U.S. 277 (2014) and *Daimler AG v. Bauman*, 571 U.S. 117 (2014), and allege that *Walden* and *Daimler* bar the District Court's exercise of jurisdiction over them. Mr. Carpenter and GMC are mistaken. Neither *Walden* nor *Daimler* disturb the established test for determining whether an individual or corporation is subject to personal jurisdiction in a forum. To exercise personal jurisdiction over a nonresident, the Court must determine whether the nonresident is "subject to jurisdiction under the law of the forum state" and, if so, whether the exercise of jurisdiction nonetheless is consistent with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). Mr. Carpenter and GMC were subject to the District Court's exercise of personal jurisdiction because they purposefully availed themselves of New York jurisdiction through their conduct directed at frustrating Universitas's ability to collect a New York judgment that they prospectively knew would be rendered in an arbitration in New York through the use of fraudulent monetary transfers. While GMC and Mr. Carpenter extensively detail the relevant standard and caselaw for personal jurisdiction determinations, the entirety of their argument and analysis is: "based on the Supreme Court's decision in *Walden* and this Court's decisions in *Gucci* and *Waldman,* Appellants respectfully submit that this Court [sic] did not have personal jurisdiction over Mr. Carpenter." Neither Mr. Carpenter nor GMC contest

the District Court's reasonableness analysis in determining whether the District Court had specific jurisdiction over them, and failed to do so below.

*Third*, Mr. Carpenter's and GMC's arguments that the Turnover Judgment is void for improper service of process is completely meritless. GMC and Mr. Carpenter argue in this appeal that the turnover needed to be brought in a separate action, which necessitated formal service of process under New York and federal law. GMC conceded below that Second Circuit precedent authorizes the enforcement of a judgment through turnover proceedings by filing a motion before a district court. *See CSX Transp., Inc v. Island Rail Terminal, Inc.*, 879 F.3d 462,468–70 (2d Cir. 2018). As such, they cannot now argue that it was improper for Universitas to enforce its judgment in a turnover proceeding by a motion. To the extent that Mr. Carpenter and GMC then contend that they were not served, their arguments are not persuasive. Carpenter's counsel entered an appearance prior to the turnover proceedings and was served with process for both motions through the SDNY ECF system. *See* SDNY Local Rule 5.2 (providing that ECF service satisfies formal service of process). Moreover, both GMC and Mr. Carpenter explicitly agreed to accept, and accepted, service of process of the motion by email and thus waived formal service of process. *See e.g.*, *Zherka v. Ryan*, 52 F. Supp. 3d 571, 577 (S.D.N.Y. 2014) (providing that a party may waive its defense of insufficient service of process). The Appellants bear the burden of demonstrating that they were not

served, that service was not authorized, or that service was not waived—they cannot do so and thus there is no reason to vacate the Turnover Judgment. *See, e.g.*, *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005).

*Fourth*, Mr. Carpenter's argument that the Turnover Judgment is void under FRCP 58 because it is a "Clerk's Judgment" is meritless for multiple reasons.[19] Mr. Carpenter's argument is predicated on the pre-2002 version of Rule 58. The 2002 amendments to the rule render his argument meritless. Moreover, failure to comply with Rule 58(b) is not a ground for vacating a judgment pursuant to 60(b)(4), and even if it was, the Turnover Judgment was not improperly entered and nonetheless became effective 150 days after it was entered pursuant to the rule.

*Finally*, Mr. Carpenter's argument that the District Court lacked subject matter and ancillary jurisdiction is meritless. The Appellants know this argument is frivolous—not only was it repeatedly rejected by the District Court, but Carpenter has made this argument in numerous other proceedings. Every court rejected the argument as meritless.[20] The District Court had subject matter jurisdiction over the

---

[19] Carpenter made this argument in District Court largely by referring to the judgment as a "Clerk's Order." Carpenter does not use this terminology on appeal. The phrase "Clerk's Order" did not appear anywhere on the docket and/or in any previous filings in this proceeding—Carpenter simply invented this phrase.

[20] *Universitas Educ., LLC v. Benistar*, No. 3:20-cv-00738 (JAM), 2021 U.S. Dist. LEXIS 47804 (D. Conn. Mar. 15, 2021); *Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-FJ-05-HE, 2020 U.S. Dist. LEXIS 251679 (W.D. Okla. Oct. 20, 2020), *adopted by* 2021 U.S. Dist. LEXIS 26388.

underlying turnover motion and proceeding based on federal question and diversity jurisdiction. GMC and Mr. Carpenter fail to even analyze the purported lack of jurisdiction in their Opening Brief, instead opting to quote a passage from *Peacock v. Thomas*, 516 U.S. 349 (1996). They provide no basis for disturbing the District Court's ruling that it had subject matter jurisdiction in the underlying case and turnover proceeding. Moreover, this argument is completely undermined by the Appellants' personal jurisdiction argument—the Appellants claim they have no connection to New York, which in turn provides that the District Court has diversity jurisdiction. Mr. Carpenter's and GMC's[21] "argument" that the District Court lacked subject matter jurisdiction amounts to nothing more than a block quote from the Supreme Court's decision in *Peacock*, 516 U.S. at 359.

## STANDARD OF REVIEW

Pursuant to Rule 60(b), a party may move for relief from a final judgment on "motion and just terms." Fed. R. Civ. P. 60(b). Under Rule 60(b)(4), a district court may relieve a party from final judgment if the judgment is void.[22] *"R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 122 (2d Cir. 2008). A judgment is only considered

---

[21] GMC abandoned this argument in the District Court when Universitas informed its counsel that the argument was sanctionable. GMC now joins in Mr. Carpenter's argument despite abandoning it below.

[22] Importantly, a judgment is not rendered void simply because it may have been erroneous, and a motion under Rule 60(b)(4) is not a substitute for timely appeal. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010)

void in limited instances—"only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties or if it acted in a manner inconsistent with due process of the law."[23] *Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 194 (2d Cir. 2006). A judgment may be declared void for want of jurisdiction "only when the court plainly usurped jurisdiction, or, put somewhat differently, when there is a total lack of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction." *Eliav v. Millennium Prods. Grp. LLC*, 857 F. App'x 699, 701 (2d Cir. 2021) (finding that the Second Circuit did not "need to ***rule*** on the question of whether the district court in fact had subject matter jurisdiction" because reasonable minds had disagreed on the measure of shared operative facts to establish supplemental jurisdiction and there was an "arguable basis to exercise jurisdiction") (emphasis in original) (internal citations omitted); *see also Nemaizer v. Baker*, 793 F.2d 58, 65-66 (2d Cir. 1986) (finding that a judgment was not void when it was entered by a court as a result of perhaps an erroneous exercise of federal jurisdiction). A proper case for Rule 60(b)(6) relief is "only one of extraordinary circumstances, or extreme hardship." *DeCurtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013) (quoting *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004)).

---

[23] The list of "infirmities" warranting the vacatur of a judgment due to the judgment being void remains "exceedingly short" because "otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule." *SEC v. Romeril*, 15 F.4th 166, 171 (2d Cir. 2021) (quoting *Espinosa*, 559 U.S. 260 at 270).

Generally, a court of appeals reviews a district court's ruling on a Rule 60(b) motion for abuse of discretion, but when the court of appeals considers a motion brought pursuant to Rule 60(b)(4), a "deferential standard of review is not appropriate because if the underlying judgment is void, it is a *per se* abuse of discretion to deny a movant's motion to vacate the judgment . . . ." *Irvin v. Harris*, 944 F.3d 63, 68 (2d Cir. 2019) (quoting *Central Vt. Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 189 (2d Cir. 2003)). To the extent that a court denies a motion brought under Rule 60(b)(4) based on findings of fact, the court of appeals reviews those findings for clear error. *Sanchez v. MTV Networks*, 525 F. App'x 4, 6 (2d Cir. 2013).

A party moving for relief under Rule 60(b) must "present highly convincing evidence in support of vacatur and show good cause for the failure to act sooner and that no undue hardship be imposed on the other parties." *Gater Assets Ltd. v. Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021) (internal citations and quotations omitted). A movant generally bears the burden in Rule 60(b) motions to demonstrate a basis for vacatur. *Id.* (citing *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987)).

# ARGUMENT

The Appellants' litigation strategy in this dispute is a matter of record—they are filing frivolous motions solely to increase Universitas' attorneys' fees so as to render Universitas' collection efforts cost prohibitive. The Court has already found **twelve (12)** motions filed on behalf of Mr. Carpenter and/or his entities to be frivolous, in bad faith, and sanctionable, and further sanctioned multiple attorneys for filing these motions. Some of these same arguments are now being made on appeal.

The Appellants' arguments under Rule 60(b)(6) should be time-barred because they waited over six years after judgment was entered to seek relief *See* FED. R. CIV. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a reasonable time ...."); *Wells v. N.Y.C. Transit Auth.*, 2013 U.S. Dist. LEXIS 172995 (S.D.N.Y. Dec. 9, 2013) ("The Second Circuit has interpreted a "reasonable time" as eighteen months, unless the movant shows good cause for the delay or mitigating circumstances."). Appellants' arguments under Rule 60(b)(4) should also be viewed with extreme skepticism in light of the delay. Appellants have failed to demonstrate any reason for their delay in seeking relief, and have not addressed the significant hardship that Universitas would face if the judgment was vacated. Thus, their arguments must fail. *Gater Assets*, 2 F.4th at 53.

I.    <u>The District Court Did Not Err in Denying the Motions to Vacate alleging that the Turnover Judgment was Void for Lack of Personal</u>

**Jurisdiction because Mr. Carpenter and GMC Waived their Personal Jurisdiction Defenses, and Alternatively, the District Court Properly Exercised Personal Jurisdiction over GMC and Mr. Carpenter.**

a. The Appellants Waived their Personal Jurisdiction Defenses by Either Affirmatively Waiving the Defense or by Forfeiting it by Failing to Plead the Defense.

"It is well settled that the defense of lack of personal jurisdiction can be waived." *DiSapio*, 540 F.3d at 123 (citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-05 (1982)); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) ("Personal jurisdiction, unlike subject matter jurisdiction, can . . . be purposefully waived or inadvertently forfeited."); *Romeril*, 15 F.4th at 171-72 ("In the course of resolving legal proceedings, parties can, of course, waive their rights . . . .") (finding that a court possessed personal jurisdiction where a party was served with a complaint and admitted the court's jurisdiction over the party); *Salamone v. Douglas Marine Corp.*, No. 1:19-cv-01213 (MAD/DJS), 2022 U.S. Dist. LEXIS 6327, at *15 (N.D.N.Y. Jan. 12, 2022) (finding that defendant waived personal jurisdiction defenses "due to its extensive participation in [the] litigation). Generally, a party must diligently pursue its personal jurisdiction defenses, and its failure to do so in its first significant defensive move is considered a waiver of the defense. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir. 1998) ("Rule 12(h)(1) 'advises a litigant to exercise great diligence in challenging personal jurisdiction . . . or service

of process. If he wishes to raise [either] of these defenses he must do so at the time he makes his first significant defensive move[.]'" (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (1990)); *see also* Fed. R. Civ. P. 12(h)(1)(b) (a party must raise the defense of personal jurisdiction in a "responsive pleading").

A court must consider all the "relevant facts and circumstances" in determining whether a party has waived its personal jurisdiction defenses. *See Mickalis Pawn Shop*, 645 F.3d at 134. In a collateral challenge to personal jurisdiction under Rule 60(b)(4), the "burden of establishing lack of personal jurisdiction is properly placed on a defendant who had notice of the original lawsuit." *DiSapio*, 540 F.3d at 126.

1. *Mr. Carpenter Knowingly and Affirmatively Waived his Personal Jurisdiction Defenses.*

The District Court did not err when it found that Mr. Carpenter waived his personal jurisdiction defenses. Waiver is necessarily a fact-intensive determination, and Mr. Carpenter's waiver must be examined under all the relevant facts and circumstances. *Mickalis Pawn Shop*, 645 F.3d at 134. This Court reviews the District Court's findings of fact underlying its holding that Mr. Carpenter waived his personal jurisdiction defense for clear error. Mr. Carpenter, who clearly had knowledge of the underlying Turnover Proceedings and vigorously opposed the

relief sought bears the burden of establishing lack of personal jurisdiction. *DiSapio*, 540 F.3d at 126. He has failed to carry that burden.

The relevant facts and circumstances make clear that Mr. Carpenter knowingly and intentionally waived his personal jurisdiction defense in the Turnover Proceedings. Mr. Carpenter's counsel stated on the record, in open court, that Mr. Carpenter "[is] not raising any personal jurisdiction issues. We've conferred with [Mr. Carpenter] on that. Legally there might be an issue, but we're consciously waiving it." (USA-37:12-18.) In addition to this conscious waiver, Mr. Carpenter participated in the litigation of the Turnover Motions and "vigorously litigat[ed] against [Universitas's] various collation-related motions without objection on the basis of personal jurisdiction over a period of more than one year." (SPA-31.) During this same time, Carpenter directed numerous other Turnover Respondents to contest personal jurisdiction. Mr. Carpenter failed to plead the defense of lack of personal jurisdiction in his own response to the Second Turnover Motion, even when other turnover respondents under his control did so. (*See* USA-163.) Thus, Mr. Carpenter clearly knew that personal jurisdiction could be an issue, but consciously decided not to challenge the Court's exercise of jurisdiction over him until six years after the judgment was entered against him.

Mr. Carpenter fails to provide even a scintilla of evidence or support to demonstrate that the District Court made a "clear error" in these factual findings.

Absent such a demonstration, the District Court's findings of fact must prevail. Because Mr. Carpenter fails to meaningfully challenge any of these findings, which overwhelmingly support the finding that Mr. Carpenter waived his personal jurisdiction defenses, and later forfeited those defenses by failing to plead them in connection with the turnover proceedings, he fails to meet his heavy burden in demonstrating that the District Court lacked personal jurisdiction over him. In light of these facts, the District Court did not err when it found that it possessed personal jurisdiction over Mr. Carpenter through waiver.

2. *GMC Forfeited its Personal Jurisdiction Defenses by Declining to Affirmatively Plead those Defenses.*

The District Court correctly found that GMC forfeited its personal jurisdiction defenses. GMC was present through counsel at the hearing in May of 2013, wherein counsel witnessed the named respondents waive their personal jurisdiction defenses. As such, GMC was certainly aware that, according to Mr. Carpenter's counsel, "[l]egally there might be [personal jurisdiction] issue." GMC subsequently filed a joint opposition brief wherein numerous Turnover Respondents argued that the District Court lacked personal jurisdiction over them, and GMC did not join that argument. (USA-163.) ("[In the present case, the court lacks personal jurisdiction over non-party transferees [Grist Mill] Holdings, Hanover [Trust], [Carpenter Financial Group], and Phoenix Capital]"). GMC is conspicuously absent from that list, despite the fact that it joined the opposition. Moreover, GMC paid the attorneys

who made personal jurisdiction arguments on behalf of other entities, and thus was clearly aware that it could dispute personal jurisdiction. (*See* USA-9-11.)

Counsel for GMC was also present at an evidentiary hearing on November 23, 2013, (SPA-32), wherein GMC failed to address any arguments regarding personal jurisdiction or indicate that it had any objection to the Court's exercise of personal jurisdiction over it. Judgment was not entered against GMC until August of 2014, and GMC failed to lodge any objection or present any belated personal jurisdiction defense in that time. As the District Court found, GMC "proceeded to sit on its hands for . . . several months . . ." and never argued that the District Court lacked personal jurisdiction over it. (SPA-33.)

Pursuant to Rule 12(h), a party waives its personal jurisdiction defense if it fails to raise it in a responsive pleading or motion. Courts have more broadly read this to also include the failure to present the defense of lack of personal jurisdiction in a party's "first significant defensive move," *see Transaero*, 162 F.3d at 730, which in this case was GMC's Joint Turnover Opposition. GMC failed to raise its personal jurisdiction defense at that time, and never again addressed the issue until more than six years later. The District Court's findings of fact regarding these circumstances must only be set aside if they are clearly erroneous, and GMC has not presented any evidence to contradict the veracity of these factual findings. Taken together, these facts clearly demonstrate that GMC forfeited its personal jurisdiction defenses, and

GMC fails to meet its burden in demonstrating that the District Court lacked jurisdiction over it, when it clearly had notice of the proceedings and an opportunity to participate. Thus, the District Court did not err in finding that GMC waived its personal jurisdiction defense.

> b. <u>Alternatively, the District Court Correctly found that the Appellants Had Sufficient Minimum Contacts to Support the Constitutional Exercise of the District Court's Jurisdiction under New York's Long-Arm Statute.</u>

Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons" because a federal district court's authority to assert personal jurisdiction is linked to service of process on a defendant who is subject to the jurisdiction of a court of general jurisdiction within the state where the district court sits. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).

Thus, in order to determine whether a district court properly exercised jurisdiction over a party, a court must determine whether that exercise "comports with the limits imposed by federal due process" on the forum state. *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (finding that a Nevada court lacked personal jurisdiction over a Georgia-based DEA agent defendant who improperly seized plaintiff's money in Atlanta because DEA agent's actions were not targeted at Nevada and were only attenuated contacts with residents of the state). Due process "protects a party from being subject to personal jurisdiction in a forum with which it has no connections." *Gater Assets*, 2 F. 4th at 53 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316

(1945)). For nonresidents, due process simply requires "certain minimum contacts" with the forum, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden*, 51 U.S. at 283.

Whether a state may assert specific jurisdiction over a nonresident "focuses on the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). The minimum contacts must arise out of contacts that a defendant himself creates; must be with the forum state itself (instead of to persons that reside in the forum state); and cannot simply be "random, fortuitous or attenuated." *Walden*, 571 U.S. 284-85 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Supreme Court has found that intentional tortious conduct calculated at causing harm in a forum state is sufficient to support the exercise of personal jurisdiction against the tortfeasor. *Calder v. Jones*, 465 U.S. 783 (1984).

New York courts undertake a two-part analysis to determine whether the exercise of personal jurisdiction is proper: (1) whether the state's long-arm statutes, N.Y. C.P.L.R. sections 301 or 302 provide a basis for personal jurisdiction, and (2) if so, whether the exercise of jurisdiction would comport with the due process requirements of *International Shoe* and its progeny. *See A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 82 (2d Cir. 1993). Pursuant to N.Y. C.P.L.R. Section 302, a New York court may "exercise personal jurisdiction over any non-domiciliary"

who in person or through an agent . . . commits a tortious act within the state . . . or commits a tortious act without the state causing injury to person or property within the state . . . if he expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from [interstate commerce]." N.Y. C.P.LR. Section 302(a)(2)-(3)(ii).

Courts have routinely found that they can properly exercise jurisdiction over nonresident transferees who knowingly participated in fraudulent transfer schemes designed to frustrate a party's collection efforts on a judgment within the forum. *See Warren Hill, LLC v. Neptune Inv'rs, LLC*, 2020 U.S. Dist. LEXIS 78685, at * 8-9 (E.D. Pa. May 5, 2020) (finding that unlike in *Walden* where the defendant lacked contacts with Nevada, the defendants had "a substantial connection with [the forum state] through their efforts to interfere with a judgment" entered by a court in the forum); *In re Akbari-Shahmirzadi*, 2016 Bankr. LEXIS 3957, at *7 (Bankr. N.M. Nov. 14, 2016) ("Courts have held with near uniformity that they have personal jurisdiction to hear fraudulent transfer cases . . .even when the transfer is the only contact between the debtor and the foreign transferee."); *Sunrise Indus. Joint Venture v. Ditric Optics, Inc.*, 873 F. Supp 765, 771 (E.D.N.Y. 1995) (finding jurisdiction under Section 302(a) where a defendant sold a debtor's assets and transferred those proceeds to the defendant, which impacted the ability of the plaintiff to recover debts in New York).

1. *The Caselaw Cited by GMC and Mr. Carpenter Does Not Render the District Court's Exercise of Personal Jurisdiction Improper.*

Even if this Court finds that GMC and Mr. Carpenter did not waive their personal jurisdiction defenses, which they did, the District Court's exercise of personal jurisdiction was still proper. As explained *supra*, Mr. Carpenter and GMC carry the burden of demonstrating that the District Court lacked personal jurisdiction over them, and must demonstrate that the District Court lacked even an arguable basis for exercising jurisdiction. GMC and Mr. Carpenter fail to meet that burden.

The Appellants provide no articulable basis as to why their cited cases necessitate a different result than that reached by the District Court. *Walden* is inapposite to the circumstances at bar because the DEA Agent in *Walden* had no connection to Nevada except for his interaction with the Plaintiffs. As the District Court explicitly stated, on multiple occasions, Mr. Carpenter and GMC knew that a judgment would be entered in New York and then fraudulently transferred funds in order to render the prospective New York judgment uncollectable. Those contacts were with New York itself, not merely with Universitas, and thus *Walden* does not demand a finding that the District Court lacked personal jurisdiction over Mr. Carpenter and GMC.

In *Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014), this Court simply found that a district court could not assert general jurisdiction over a foreign bank. However, this Court remanded to determine whether the district court could exercise

specific jurisdiction over the bank. The District Court never attempted to exercise general jurisdiction over Mr. Carpenter or GMC, and thus the holdings in *Gucci* also do not warrant a different result below.

*Waldman v. Palestinian Liberation Organization*, 835 F.3d 317 (2d Cir. 2016) does not demand a different result than that decided by the District Court. In *Waldman*, the Court found that a district court lacked specific jurisdiction over the Palestinian Liberation Organization because: "the defendants were liable for tortious activities that occurred *outside the United States* and affected United States citizens only because they were victims of indiscriminate violence *that occurred abroad."* *Id.* at 337 (emphasis added). The case at bar is distinguishable precisely because the tortious activities conducted by Mr. Carpenter and GMC aimed their conduct at the Southern District of New York by "fraudulently conveying tens of millions of dollars in a scheme designed to prospectively render unrecoverable an arbitration award and related judgment they knew would be issued in New York." (SPA-35.) In *Waldman*, all the tortious activity took place outside the forum and was not directed at the forum. The only connection the defendants had to the forum was the plaintiffs, who had been injured abroad. Therefore, an analysis of the three cases Mr. Carpenter and GMC suggest demand a finding that the District Court lacked personal jurisdiction over them makes clear that no such conclusion is warranted, and the Appellants

failed to demonstrate that the District Court lacked even an arguable basis for personal jurisdiction.

2. *The District Court Did Not Err when it Found that it Possessed Personal Jurisdiction Over GMC and Mr. Carpenter and Denied their Motions to Vacate.*

Turning to the merits, the District Court correctly exercised personal jurisdiction over GMC and Mr. Carpenter. Mr. Carpenter and GMC do not contest the fact that under New York law, there was a long-arm statute that provided a basis for the District Court to exercise personal jurisdiction—N.Y. C.P.L.R. Section 302. They only contest whether there they possessed sufficient minimum contacts with the forum to comport with due process. The District Court correctly found that they did.

Courts have routinely held that they have "personal jurisdiction to hear fraudulent transfer cases . . . even when the transfer is the only contact between the debtor and the foreign transferee." *In re Akbari-Shahmirzadi*, 2016 Bankr. LEXIS 3957, at *7. Here, Mr. Carpenter's and GMC's contacts were not fortuitous, random, or created exclusively by Universitas. Mr. Carpenter and GMC fraudulently conveyed $30 million in "a scheme designed to prospectively render unrecoverable an arbitration award and related judgment they knew would be issued in New York." (SPA-35.) Moreover, Mr. Carpenter and GMC fraudulently conveyed these funds at a time when they knew that Universitas was asserting its claim to the Spencer

Insurance Proceeds and was contemplating litigation, and further knew that Universitas was required to arbitrate in New York, and that any confirmed award would result in a New York judgment. *Universitas Educ.*, 2014 U.S. Dist. LEXIS at \*18-\*21. Mr. Carpenter and GMC do not contest the District Court's finding of fact, nor do they offer any evidence to suggest that these findings are incorrect. They engaged in tortious activity intended to prevent a New York entity from collecting a New York judgment, and thus knew that they could reasonably be expected to defend those actions in a New York Court. These contacts are sufficient to at least find that the District Court had an arguable basis to exercise jurisdiction over them.[24] The District Court correctly denied GMC's and Mr. Carpenter's Motions to Vacate for lack of personal jurisdiction.

    c.  <u>The District Court Correctly Found that Both Mr. Carpenter and GMC Waived the Requirements of Service of Process.</u>

While a Court can consider the merits of a defendant's claim of insufficient service of process under Rule 60(b)(4), even where that defendant had actual notice of the action, here the claims fail. *DiSapio*, 540 F.3d at 123; *see also Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298-99 (2d Cir. 2005). The constitution does not "require any particular means of service of process, only that the method selected be

---

[24] Mr. Carpenter and GMC do not contest the District Court's reasonableness analysis in determining whether the District Court had specific jurisdiction over them, and failed to do so below.

reasonably calculated to provide notice and an opportunity to respond." *FTC v. Cotelli*, 854 F. App'x 837, 839 (9th Cir. 2021) (finding that pre-approved service of process by email comported with due process requirements). Moreover, the defense of service of process may be waived or forfeited by a party. *E.g. US Bank N.A. v. Budnick*, 626 F. App'x 438, 439 (5th Cir. 2015) (finding that request for extension by defendant in exchange for accepting email service constituted waiver) (internal citations omitted); *Zherka v. Ryan*, 52 F. Supp. 3d 571, 577 (S.D.N.Y. 2014) ("A party waives the defense [of service of process] by failing to assert it promptly by motion or in the responsive pleading, or by participating in the litigation without questioning personal jurisdiction."); *see also* Fed. R. Civ. P. 12(h)(1)(B) (a party must raise the defense of service of process in its responsive pleading). Moreover, Carpenter clearly was served with service of process through the SDNY ECF system. *See* SDNY Local Rule 5.2.

1. *Mr. Carpenter and GMC Waived Service of Process in the Underlying Proceeding, and therefore it is not a Grounds for Finding a Lack of Personal Jurisdiction.*

At the outset, Universitas reiterates that Mr. Carpenter voluntarily waived *all* of his personal jurisdiction defenses, knowingly and in open court, which necessarily includes a waiver of service of process requirements. *See Zherka*, 52 F. Supp 3d at 577 ("A party waives the defense of [service of process] . . . by participating in the litigation without questioning personal jurisdiction."). Moreover, because GMC

waived its personal jurisdiction defenses through its participation in the litigation, as explained in detail *supra*, it too waived any arguments relating to insufficient service of process.

Both Mr. Carpenter and GMC affirmatively waived service of process as well. Counsel for Universitas emailed counsel for both Mr. Carpenter and GMC in October of 2013, and asked whether Mr. Carpenter and GMC would accept service of process by email. (USA-191-97, 202-05.) Counsel for both GMC and Mr. Carpenter agreed to do so, and counsel for Universitas negotiated an extended briefing deadline with the Turnover Respondents, at their request. (USA-225, 243-50.)The *Budnick* court addressed this exact situation, and found that the acceptance of service by email in exchange for extensions on the briefing schedule constituted a waiver by the defendant in that case. *Budnick*, 626 F. App'x at 439. The circumstances at bar are nearly identical, and similarly warrant a finding of waiver of service of process. Universitas submitted evidence of all the email correspondence demonstrating the waiver of service of process to the District Court. (USA-191-250.) Neither GMC nor Mr. Carpenter ever challenged the veracity of the emails. Nor did they ever offer even a scintilla of evidence that such email service did not occur, was not authorized, or was not waived. Nor could they, given that GMC's counsel explicitly confirmed service of the turnover motion upon GMC. In fact, the uncontroverted record and District Court's factual findings demonstrate that they did

waive service of process, and neither GMC nor Mr. Carpenter have pointed to any clear error in those factual findings.

Additionally, Mr. Carpenter and GMC failed to argue insufficient service of process in their first significant defensive move and first responsive pleading. Their failure to make that argument at the time also indicates a waiver of the argument. Fed. R. Civ. P. 12(h)(1)(B). Nor can they now argue that service of process was improper because they lacked notice and an opportunity to be heard. The Constitution does not possess stringent service requirements, and only requires service by a method "reasonably calculated to provide notice and an opportunity to respond." *Cotelli*, 854 F. App'x at 839. GMC and Mr. Carpenter both clearly had notice of the Turnover Motion and uncontrovertibly had an opportunity to respond to that motion on the merits.

To the extent that GMC and Mr. Carpenter's argue that service of process was insufficient because the Turnover required a separate proceeding and service of process under New York law, this argument also fails and is clearly made in bad faith. GMC conceded below that a separate proceeding for Turnover is not necessary, (A-392 n.5), and have now reneged on that position in order to support Mr. Carpenter's incorrect assertion that separate proceedings were required—an argument for which he was sanctioned. This departure from its arguments below is inexplicable, particularly in light of the fact that GMC *itself* cited this Court's own

precedent, which explicitly held that a turnover under New York law may be brought by motion in a district court in this Circuit. *CX Transp., Inc. v. Island Rail Terminal*, 879 F.3d 462, 470 (2d Cir. 2018) ("Accordingly we now hold that CSX was not required to institute a separate [turnover] proceeding [under C.P.L.R. Section 5225] . . . and could proceed by motion under Rule 69(a), so long as the district court otherwise had personal jurisdiction . . . .").[25] As Mr. Carpenter's co-Appellant clearly had knowledge of this precedent, Mr. Carpenter's failure to cite or acknowledge it and instead argue for the need for a separate proceeding is also clearly in bad faith. The *CSX Transport* Court found that as long as service of process was proper under Rule 4 of the FRCP, which in this case was accomplished by waiver, then the district court can proceed on a turnover by a motion under Rule 69(a) of the FRCP. GMC and Mr. Carpenter have presented no evidence that service of process was not waived under the circumstances and that the District Court's factual findings underlying the finding of waiver were clearly erroneous. As such,

---

[25] Mr. Carpenter's and GMC's reliance on *Wasserman Media Group, LLC v. Bender*, No. 10 Civ. 8783 (SAS) , 2012 U.S. Dist. LEXIS 60844 (S.D.N.Y. Apr. 26, 2012), is misplaced. First, the circumstances in *Wasserman* are inapposite to the case at bar, because the *Wasserman* court had no personal jurisdiction over the garnishees, whereas the District Court in the Turnover Judgment had personal jurisdiction over all the respondents. Second, neither this Court nor the District Court were bound by the findings in *Wasserman.* Finally, to the extent that inconsistencies existed with the application of N.Y. C.P.L.R. Section 5225 in federal actions by the district courts in this Circuit, these were resolved in *CSX Transport*, where this Court explicitly held that a turnover proceeding may be brought by motion as long as personal jurisdiction exists over the respondents.

they have failed to carry their burden of demonstrating that the judgment was void for lack of service of process.

**II.** **The District Court did Not Err in Denying the Motions to Vacate alleging that the Turnover Judgment was Void for Lack of Subject Matter Jurisdiction because the District Court Correctly Found that it had Subject Matter Jurisdiction.**

Federal courts are courts of limited jurisdiction, and Congress has granted district courts jurisdiction to hear cases in which there is a federal question and/or cases in which there is a diversity of citizenship. *E.g. Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002). Under 28 U.S.C. § 1332 (2018), federal courts have jurisdiction to hear cases and controversies between diverse parties where the amount in controversy exceeds the value of $75,000. 28 U.S.C. § 1332(a). Diversity jurisdiction requires "complete diversity" meaning that that "all plaintiffs must be citizens of states diverse from those of all defendants." *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (internal citations omitted). Generally, an individual's citizenship is determined by her domicile, *Id.*; a corporation's citizenship is determined by its primary place of business or state of incorporation, *Daimler*, 571 U.S. at 119; and a limited liability company by the citizenship of its members, *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000).

A district court has supplemental jurisdiction to hear all related claims, with certain exceptions, that are so related to the claims in a case over which it possesses

original jurisdiction, such that "they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2018). To exercise supplemental jurisdiction over state law claims, the state and federal law claims must derive from a "common nucleus of operative fact." *United States Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

A court may also exercise ancillary jurisdiction "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (finding that a plaintiff could not use ancillary jurisdiction to collect a judgment for wrongdoing that occurred after the entry of the judgment where no independent basis for jurisdiction existed). Ancillary jurisdiction has traditionally been reserved to the exercise of a court's inherent power to enforce its judgments, as without such power, the "judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution."[26] *Peacock*, 516 U.S at 356 (quoting *Riggs v. Johnson Cty.*, 73 U.S. 166, 187 (1868)). While ancillary jurisdiction does not authorize a "subsequent lawsuit to impose an

---

[26] The Supreme Court has traditionally approved the exercise of ancillary jurisdiction over a in at least the following proceedings involving requiring third parties to assist in the "protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Peacock*, 516 U.S. at 356.

obligation to pay an existing federal judgment on a person not already liable for that judgment," this Court—and other Circuit Courts to consider the issue—have found that *Peacock* does permit judgment creditors to pursue, pursuant to ancillary jurisdiction, the theories of fraudulent conveyance to reach the assets of a judgment debtor "even though those assets are found in the hands of a third party." *Epperson v. Entertainment Express, Inc.* 242 F.3d 100, 106 (2d Cir. 2001); *see also Kim v. Yoo*, 776 F. App'x 16, 20 (2d Cir. 2019) ("An ancillary action to collect a judgment does not require an independent basis for jurisdiction, unless the suit seeks to impose liability for the underlying action on a third-party.").

a. <u>The District Court had at Least an Arguable Independent Basis for Subject Matter Jurisdiction, and Thus did Not Require Ancillary Jurisdiction as Well.</u>

While this Court must review the findings of the District Court *de novo*, it must only find the Turnover Judgment to be void "only when the court plainly usurped jurisdiction, or, put somewhat differently, when there is a total lack of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction." *Eliav v. Millennium Prods. Grp. LLC*, 857 F. App'x 699, 701 (2d Cir. 2021). This Court does not even need to determine whether the District Court did in fact have jurisdiction, *id.*, only that there was an "arguable basis" for jurisdiction.

The Appellants "argue" that the District Court lacked subject matter jurisdiction over the Turnover Proceedings. The only legal authority provided for

this argument is *Peacock v. Thomas*. However, *Peacock* only applies in cases in which there exists no independent basis for jurisdiction. In the present case, this is irrelevant because the District Court had subject matter jurisdiction and thus has an independent basis for jurisdiction. *See C.F. Tr., Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 133 (4th Cir. 2002) (relying on diversity as independent jurisdictional basis for purposes of *Peacock*); *Shaw v. AAA Eng'g & Drafting Inc.*, 138 F. App'x. 62, 68 (10th Cir. 2005) (providing that diversity jurisdiction is an independent jurisdictional basis); *see also CSX Transp., Inc. v. Filco Carting Corp.*, No. 10-CV-1055 (NGG) (JMA), 2011 U.S. Dist. LEXIS 74625, at *3-*5 (E.D.N.Y. July 7, 2011) (explaining that *Peacock* is inapplicable when plaintiff establishes federal subject matter jurisdiction by means of diversity jurisdiction).

The judgment at issue exceeds $30 million, well above the jurisdictional threshold. (SPA-19-20.) There is no dispute that Universitas is a New York citizen. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 513 F. App'x 62, 63 (2d Cir. 2013) ("Universitas is a citizen of New York"). The Appellants concede that they are not New York citizens (and predicate their personal jurisdiction argument upon this fact).[27] Thus, there is no dispute that the District Court had diversity jurisdiction over

---

[27] The District Court found that all of the Turnover Respondents were either Delaware or Connecticut entities with their headquarters in Connecticut. None of the Turnover Respondents challenged the District Court's findings regarding their citizenship.

the Turnover Proceedings. *See* 28 U.S.C.S. § 1332.[28] The District Court (as well as other courts) have explained this to the Appellants repeatedly, and the only explanation for their continued assertion of this argument is bad-faith.

Additionally, the District Court found that it had jurisdiction over the turnover proceedings based on 28 U.S.C. § 1367(a). The claims against all the turnover respondents shared a common nucleus of operative facts and "formed a part of the same case or controversy." The Turnover Motion involved New York state law claims, which this Court has found can properly be brought by Motion in a district court *CSX Transp.*, 879 F.3d at 470. These state claims all derived from the same factual circumstances as the underlying arbitration proceeding and confirmation award—the theft and concealment of the insurance proceeds for which Universitas was the beneficiary. Thus, the interrelated factual circumstances and the need for the District Court to dispose of these actions as part of the same case or controversy suggests that it had at least an arguable basis to exercise supplemental jurisdiction over the Turnover Motion. As such, the District Court did not err in finding that it had subject matter jurisdiction over the Turnover Motion and denying the Motions to Vacate on those grounds.

---

[28] The Appellants concede that the Court has diversity jurisdiction in their Form C disclosure. (Case No. 21-2691, Doc. No. 39 at 1).

b. The District Court had at Least an Arguable Independent Basis for Ancillary Jurisdiction.

While the existence of independent jurisdiction obviates the need to examine the ancillary jurisdiction, Universitas notes that the District Court also arguably possessed ancillary jurisdiction over the Turnover Motion. *Epperson* explicitly left open the possibility that a district court could exercise its ancillary jurisdiction to reach the assets of a judgment debtor in the hands of third parties, which were moved to those parties by fraudulent conveyance. 242 F.3d 100, 106 (2d Cir. 2001). These were the precise circumstances underlying the Turnover Motion in the District Court—Universitas sought the turnover of funds that were sent from the COT to the turnover respondents through fraudulent conveyances.[29] While the District Court eventually entered judgments against those parties in light of its other independent jurisdictional bases, it at least arguably had ancillary jurisdiction to the extent it simply sought a turnover of assets acquired through fraudulent conveyance.

### III. The District Court did Not Err in Denying the Motions to Vacate on the Grounds that the Turnover Judgment was Void under Rule 58.

Rule 58(b) is not grounds for vacating a judgment under Rule 60(b)(4). *See Jackson v. Pfau*, No. 9:10-CV-1484 (GTS/DEP), 2012 U.S. Dist. LEXIS 193460, at

---

[29] The District Court for the District of Connecticut found that the conveyances were fraudulent and formed the basis of Mr. Carpenter's criminal conviction for charges of mail and wire fraud and illegal monetary transfers, which were upheld by this Court. *See United States v. Carpenter*, 190 F. Supp. 3d 260 (D. Conn. Jun. 6, 2016), *aff'd sub nom. United States v. Bursey*, 801 F. App'x 1 (2d Cir. 2020)

*10-*11 (N.D.N.Y. Jan. 10, 2012). The purpose of Rule 58 is to "pinpoint the commencement of time for filing a notice of appeal." *Id.* at *11 (citing *Leonhard v. United States*, 633 F.2d 599, 611 (2d Cir. 1980)). As amended in 2002, Rule 58 requires nothing more than the Court to "approve the form" of a judgment, which should be entered as a separate document. Fed. R. Civ. P. 58(b)(2). A judgment satisfies the separate document requirement of Rule 58 when it is: "(i) separate from any judicial memorandum or opinion, and (ii) labeled as a judgment." *Cooper v. Town of E. Hampton*, 83 F.3d 31, 34 (2d Cir. 1996). A judgment need not be signed by a district court judge if it is for a "sum certain." Fed. R. Civ. P. 58(b).

Moreover, the Advisory Committee notes on the 2002 amendment make clear that Rule 58(b) was changed from a rule concerning efficacy to a rule concerning timeliness by setting a 150-day time limit on a judgment becoming entered and appealable, even if a court fails to comply with the "simple requirement" that a judgment be set forth on a separate document. Fed. R. Civ. P. 58(c)(2)(B); Fed. R. Civ. P. 58 Advisory Committee Notes (2002 amendments); *see also Orr v. Plumb*, 884 F.3d 923, 928 (9th Cir. 2018) (finding that currently, "for purposes of appeal and post-decision motion deadlines, final judgments are entered the earlier of the date that the decision is set out in a separate document and 150 days after it is entered the docket"); *Dancause v. Mount Morris Cent. Sch. Dist.*, 590 F. App'x 27, 28 n. 1 (2d Cir. 2014) ("[T]he district court did not enter judgment in a separate document.

In the absence of a separate document, however, judgment is deemed entered 150 days after the order … is entered.") (internal citations omitted). Even if a judgment contains a procedural defect, that judgment is not necessarily considered void, *In re Texlon Corp. v. Mfrs. Hanover Commercial Corp.*, 596 F.2d 1092, 1099 (2d Cir. 1979), and the failure to completely abide by Rule 58's separate document requirements do not render a judgment void. *See, e.g.*, *Burnley v. City of San Antonio*, 470 F.3d 189, 197 (5th Cir. 2006) (finding that clerk's entry of judgment without formal approval and the passage of 150 days still rendered the judgment proper and arguments that the judgment was null were "without merit").

    a.  <u>The District Court Properly Denied the Motion to Vacate the Turnover Judgments under Rule 60(b)(4) because Rule 60(b)(4) is Not Applicable to Failures to Comply with Rule 58.</u>

At the outset, Universitas notes that failure to comply with Rule 58 of the FRCP does not fall into the narrow categories of fundamental infirmity—lack of subject matter jurisdiction, lack of personal jurisdiction, and lack of due process—necessary to void a judgment under Rule 60(b)(4). Thus, as an initial matter, GMC and Mr. Carpenter's argument that the judgment should be voided for failure to comply with Rule 58 is meritless.

**b.** <u>The District Court Did Not Err in Denying the Motion to Vacate the Turnover Judgment when it Found that the District Court Complied with the Requirements of Rule 58, and that it was Not a Basis for Relief.</u>

There is no rule requiring federal district judges to personally sign every entry of judgment in their cases. Moreover, failure to comply with Rule 58 cannot justify relief under Rule 60(b)(4), and thus this Court should examine this argument under Rule 60(b)(6) instead, which permits a court to vacate a judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Relief under Rule 60(b) should only be granted in "extraordinary circumstances, or extreme hardship." *DeCurtis v. Ferrandina*, 529 F. App'x 85, 86 (2d Cir. 2013). An appellate court reviews a district court's decision to deny a motion under Rule 60(b)(6) for abuse of discretion.

Here, GMC and Mr. Carpenter have failed to demonstrate the extraordinary circumstances and/or extreme hardship necessary to justify vacatur of the Turnover Judgment under Rule 60(b)(6) and support a finding that the District Court abused its discretion. Mr. Carpenter and GMC's argument that relief is necessary because the Turnover Judgment was defective fails for numerous reasons. First, Mr. Carpenter and GMC's rely upon on caselaw and advisory committee notes prior to 2002—this caselaw is outdated and irrelevant. As explained, *supra*, the 2002 amendments changed Rule 58 from a rule regarding efficacy to one regarding timing, and created a new provision which "constructively enter[s]" a judgment on the 150th day after it appears on the docket. *Orr*, 884 F.3d at 928. In this case, a

separate document was in fact entered on the docket, and that judgment was for a sum certain as to all the respondents. (A-95, SPA-19-21.) The District Court also approved the Turnover Judgment because Judge Swain directed the clerk to enter a judgment, and thus complied with the requirements under Rule 58(b). *Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077 at * 38 ("The Clerk of the Court is requested the enter judgment against the Turnover Respondents accordingly.").

Second, even if the separate document was defective, it became an effective judgment by operation of Rule 58(c)(2)(B) 150 days after August 12, 2014, which has long since passed.[30] Moreover, any defect in Judge Swain's signature being absent from the Turnover Judgment is merely clerical in nature, as her approval of the Turnover Judgment was manifest from her instruction to the clerk to enter that judgment. *Id.* A court may correct a clerical mistake in judgment, either on motion

---

[30] Mr. Carpenter relies predominantly on case law from before the 2002 amendments, which is inapplicable to the case at bar. Both *Cooper v. Town of E. Hampton*, 83 F.3d 31, 33 (2d Cir. 1996) and *In re Litas Int'l, Inc.*, 316 F.3d 113, 118-19 (2d Cir. 2003) stressed the importance of the separate document requirement for finding that a judgment was defective, but a separate judgment was entered in the present case. The 150-day cap in the 2002 amendments was not applicable in either of these cases, as the judgment was initially entered in *In re Litas* in 2000. 316 F.3d at 115-16. Mr. Carpenter's reliance on *Deprins v. Clark*, 566 F. App'x 608 (9th Cir. 2014) is similarly misplaced. *Deprins* concerned an erroneous summary judgment and case dismissal entered by a magistrate judge that was incorrectly labeled as a clerk's judgment absent approval from a district court judge. 566 F. App'x at 609-10. Thus, the circumstances in *Deprins* are also inapposite to those in the present case and do not suggest that the District Court should have found the Turnover Judgment to be defective for lack of a signature by Judge Swain.

or *sua sponte*, with or without notice. Fed. R. Civ. P. 60(a). Thus, any defects are easily cured and do not warrant relief.

Mr. Carpenter and GMC have not demonstrated the extraordinary circumstances and extreme hardship required for relief under Rule 60(b)(6). At most, they point to a mere clerical error on the Turnover Judgment, which otherwise complies with the separate document requirement. Even if that error exists, the judgment still became effective 150 days after it was entered by operation of Rule 58, which renders Mr. Carpenter's and GMC's argument self-defeating. In either instance, the judgment against them is effective and has been for over five years. Their outdated and inapplicable caselaw does not persuasively suggest a different result. As such, the District Court did not abuse its discretion by finding that the Turnover Judgment was properly entered and effective and denying the Motions to Vacate on that ground.

## CONCLUSION

Mr. Carpenter's and GMC's Motions to Vacate the Turnover Judgment amount to nothing more than a bad-faith attempt to re-litigate already rejected arguments using a new procedural vehicle, in a desperate attempt to continue Mr. Carpenter's efforts to hinder Universitas's ability to collect on the fruits of its arbitration and litigation victories. As demonstrated, *supra*, every single argument advanced by Mr. Carpenter and GMC is completely meritless and made in bad faith.

Mr. Carpenter must not be allowed to continue his relentless abuse of process and his dilatory tactics. For this, and all the aforementioned reasons, this Court should affirm the District Court's denial of the Motions to Vacate.

Dated: May 20, 2022

Respectfully submitted,

*/s/ Joseph L. Manson III*

Joseph L. Manson III
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron St,
Alexandria, VA 22314
Telephone: (703) 340-1693
jmanson@jmansonlaw.com

*Attorneys for Petitioner-Appellee*
*Universitas Education, LLC*

# **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Second Circuit Local Rule 32.1(a)(4) because this brief contains 12765 words, excluding the Table of Contents, Table of Authorities, Disclosure Statements, and Certifications.

This document complies with the typeface and style requirements of Fed. R. App. P. 32(a) because this document uses a proportionally spaced typeface in size 14 font (Times New Roman) prepared using Microsoft Word.

*/s/ Joseph L. Manson III*

Joseph L. Manson III
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron St,
Alexandria, VA 22314
Telephone: (703) 340-1693
jmanson@jmansonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and to all counsel of record.

/s/ Joseph L. Manson III