## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

### MOTION INFORMATION STATEMENT

Docket Number(s): 21-2690(L), 21-2691

Motion for: Reopening Appeal and Filing Motion for Sanctions

Caption [use short title]

Set forth below precise, complete statement of relief sought:

Universitas Education, LLC respectfully requests that this Court reopen the instant Appeal for the limited purpose of allowing Universitas to file a Motion for Sanctions against Appellants and their Counsel.

Universitas Education, LLC v. Grist Mill Capital

MOVING PARTY: Universitas Education, LLC

OPPOSING PARTY: Daniel Carpenter/Grist Mill Capital, LL

☐ Plaintiff  ☐ Defendant

☐ Appellant/Petitioner  ☑ Appellee/Respondent

MOVING ATTORNEY: Joseph L. Manson III

OPPOSING ATTORNEY: Jonathan Einhorn

[name of attorney, with firm, address, phone number and e-mail]

Law Offices of Joseph L. Manson III

Einhorn Law Offices

600 Cameron St., 4th Floor, Alexandria, VA 223

129 Whitney Ave, Suite 1, New Haven, CT 06510

202-674-1450, jmanson@jmansonlaw.com

203-777-3777, einhornlawoffice@gmail.com

Court- Judge/ Agency appealed from: United States District Court for the Southern District of New York

Please check appropriate boxes:

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain): _____

Opposing counsel's position on motion:
☐ Unopposed  ☑ Opposed  ☐ Don't Know
Does opposing counsel intend to file a response:
☑ Yes  ☐ No  ☐ Don't Know

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:
Has this request for relief been made below?  ☐ Yes ☐ No
Has this relief been previously sought in this court?  ☐ Yes ☐ No
Requested return date and explanation of emergency: _____

Is oral argument on motion requested?  ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☑ Yes ☐ No If yes, enter date: February 8, 2023

Signature of Moving Attorney:

s/Joseph L. Manson III    Date: June 20, 2023    Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

Form T-1080 (rev.12-13)

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

UNIVERSITAS EDUCATION, LLC

*Petitioner-Appellee,*

v.

GRIST MILL CAPITAL ET AL.

*Respondent-Appellant.*

Nos. 21-2690(L), 21-2691

## <u>MOTION TO REOPEN APPEAL TO FILE MOTION FOR FRIVOLOUS APPEAL</u>

Appellee Universitas Education, LLC ("Universitas") respectfully files its Motion to Reopen Appeal ("Motion") so that it can file a Motion for Frivolous Appeal and Sanctions against Appellants Grist Mill Capital, LLC ("Grist Mill") and Daniel Carpenter (collectively "Appellants"), as well as Jeffrey Sandberg and Jonathan Einhorn (and their respective law firms), who serve as counsel for the Appellants in the above-captioned case. In support of its Motion, Universitas states as follows:

## **INTRODUCTION**

This appeal concerns motions to vacate filed in the United States District Court for the Southern District of New York ("District Court") by the Appellants, which challenge judgments in excess of $30 million entered against them on patently frivolous grounds, over six years after the judgments were entered and should have been appealed.

This Court summarily rejected the arguments made by the Appellants, noting that nearly all of the arguments were baseless or outright frivolous. This Court further admonished counsel for Appellants in its Summary Order, noting that advancing clearly meritless arguments could be grounds for discipline.

This Court entered its Summary Order on February 23, 2023. Appellants timely petitioned for rehearing *en banc*. This Court denied the Appellants' petition for rehearing *en banc* on April 12, 2023. The next day, this Court issued its mandate.

1

In light of the legal frivolity of the Appellants' arguments, the dearth of factual analysis provided in Appellants' opening brief, and this Court's findings and warning in its Summary Order, Universitas began preparing a Motion for Frivolous Appeal and the Imposition of Sanctions pursuant to Rule 38 of the Federal Rules of Appellate Procedure, 28 U.S.C. § 1927 (2018), and this Court's inherent powers. The completed proposed motion for sanctions and associated exhibits are attached herein as Exhibit A.

On May 3, 2023, Universitas informed counsel for Appellants, Mr. Einhorn and Mr. Sandberg, that it intended to seek sanctions for frivolous appeal. Mr. Einhorn alleged that such a motion was premature, as Universitas had not provided the basis for its assertion. Mr. Einhorn indicated that he and his clients would oppose any such motion. Universitas then provided Mr. Einhorn with an explanation of the ground upon which it would seek sanctions. Mr. Sandberg indicated that he and his client would oppose any motion for sanctions. Mr. Sandberg then informed counsel for Universitas that any motion for sanctions filed by Universitas would be met by a motion for sanctions from him and his clients. Mr. Sandberg provided no basis for his claim that sanctions against Universitas were warranted. (*See* Email Correspondence from Jonathan Einhorn and Jeffrey Sandberg dated May 8, 2023, attached as Exhibit B.)

As Universitas explains in detail in the attached proposed Motion for Sanctions, on May 9, 2023, Mr. Sandberg filed a brief in the United States District Court for the Southern District of New York that argued the exact points that this Court had rejected, and suggested that this Court's decision in its Summary Order was inconsistent with Supreme Court precedent. (Ex. A at 8-9.)  In addition, as explained in Universitas's proposed motion, since the issuance of the mandate, neither Mr. Sandberg nor Mr. Einhorn have taken any steps to withdraw the arguments this Court has rejected, which they are continuing to advance in various jurisdictions despite knowing that the arguments are baseless. (Ex. A at 9.)

Universitas has performed further research and does not believe that the arguments it intends to advance are sanctionable, particularly in light of this Court's findings that the arguments the Appellants and their counsel advanced on appeal were meritless or frivolous. Thus, Universitas intends to file its Motion for Sanctions.

Courts possess "inherent powers to control the proceedings that take place before them." *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991)). These powers are not granted by statute or rule, but instead are necessarily vested in courts to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43-44. Thus a federal court may exercise its inherent power to sanction

a party or attorney who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46.

Sanctions are collateral and independent of an underlying action, and the termination of an action does not foreclose imposition of sanctions, if warranted. *See Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999) (internal citations omitted). Specifically, other circuit courts have held that sanctions pursuant to 28 U.S.C. § 1927 may be imposed after a final judgment, as long as such motions are filed within a reasonable time. *Lewis v. Smith*, 480 F. App'x 696, 699 (3rd Cir. 2012); *Kellogg v. Watts Geurra LLP*, 41 F.4th 1246, 1269 (10th Cir. 2022).

This Court may set the exact procedure by which to impose sanctions, including a briefing schedule and the timing of replies. *See Gallop v. Cheney*, 642 F.3d 364, 370-71 (2d Cir. 2011) (ordering an appellant to show cause within thirty (30) days of an order why sanctions should not be imposed and providing appellee a further three (3) days after to file a letter brief regarding the appellee's views on the question of sanctions); *see also Rivera-Aponte v. Gomez Bus Line, Inc.*, 62 F.4th 1, 6 (1st Cir. 2023) (noting that courts may set deadlines for filing motions and enforce those deadlines).

Furthermore, Federal Rule of Appellate Procedure 47(b) notes that a "court of appeals may regulate practice in a particular case in any manner consistent with federal law, these rules, and local rules." The Federal Rules of Appellate Procedure

do not prescribe a firm time limit for a motion for sanctions. Similarly, this court's Local Rules do not set a firm deadline for motions for sanctions or for the form of sanctions motions.[1]

Here, Universitas has only waited two months after this Court entered its mandate to move for sanctions. Universitas had initially prepared to move earlier, but the threat of sanctions from opposing counsel necessitated further research and diligence to ensure that Universitas was not running afoul of procedural requirements for bringing such a motion and that the substance of the motion was supported by applicable caselaw. Moreover, it would have been improper to bring a motion noting the bad faith of opposing counsel in failing to withdraw frivolous arguments in other courts during the pendency of a petition for rehearing *en banc* and without affording a reasonable time to withdraw such arguments after this Court's final disposition. Finally, counsel for Appellants took actions in the underlying case that inform the propriety of sanctions weeks after the issuance of this Court's mandate, and such actions are relevant in determining whether the instant appeal was frivolous and in bad faith in the first instance. Universitas acknowledges that this case is considered closed by this Court as of the issuance of the mandate, but this Court has the authority under its inherent powers to reopen the

---

[1] This Court's local rules do, however, note that sanctions may be imposed for failure to comply with motions practice rules, for vexatiously increasing the size of an appendix, and for filing a frivolous petition for rehearing *en banc*. Local Rules 30.1(f), 35.1(e), 38.1, & 40.1(d).

case to hear and determine a motion for frivolous appeal and sanctions, especially because such motion is procedurally proper.

In light of the frivolous nature of the appeal and the fact that counsel for the Appellants are continuing to advance arguments in this Circuit that this Court has held are meritless, this Court should exercise its discretion to hear the proposed motion attached herein.

WHEREFORE, Universitas respectfully requests that this Court reopen the appeal for the limited purpose of determining whether sanctions are appropriate against Appellants and their Counsel for filing a frivolous and bad-faith appeal and give Universitas until June 27, 2023 to file its motion.

Dated: June 20, 2023

Respectfully submitted,
*/s/ Joseph L. Manson III*
Joseph L. Manson III
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron St,
Alexandria, VA 22314
Telephone: (703) 340-1693
jmanson@jmansonlaw.com

*Attorneys for Petitioner-Appellee*
*Universitas Education, LLC*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)) and Second Circuit Local Rule 27.1(a) because this brief contains 1312 words, excluding the Certifications.

This document complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5), which is made applicable to this Motion by Fed. R. App. P. 27(d)(1)(E), because this document uses a proportionally spaced typeface in size 14 font (Times New Roman) prepared using Microsoft Word.

## **CERTIFICATE OF NOTIFICATION**

Movant has notified opposing counsel of its intent to file a Motion for Sanctions and the relief sought therein by email dated May 5, 2023. Opposing counsel objected to the relief requested. Jonathan Einhorn stated in an email dated May 5, 2023 that his and the client's position is that the Motion for Sanctions was premature, and that Movant was required to provide the basis for the relief sought. Jeffrey Sandberg stated in an email dated May 8, 2023 that Appellants would seek sanctions against Movant if Movant filed a motion for sanctions because Mr. Sandberg and his clients believe that the Motion is frivolous and sanctionable. Appellants, through counsel, indicated that they would file an opposition to the motion in the aforementioned emails. Universitas further notified counsel of this instant motion to reopen the appeal for the limited purpose of moving for sanctions.

Counsel for the Appellants opposed the relief requested herein, and once again threatened to retaliate with sanctions motions of their own and to try to get the undersigned's *pro hac vice* status revoked.

*/s/ Joseph L. Manson III*
Joseph L. Manson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of this Motion was served electronically on June 20, 2023 via the CM/ECF System to the following persons:

<u>*/s/ Joseph L. Manson III*</u>
Joseph L. Manson

# EXHIBIT A

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

UNIVERSITAS EDUCATION, LLC

*Petitioner-Appellee,*

v.

GRIST MILL CAPITAL ET AL.

*Respondent-Appellant.*

Nos. 21-2690(L), 21-2691

## MOTION FOR SANCTIONS AND DOUBLE COSTS PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 38, 28 U.S.C. § 1927, AND THIS COURT'S INHERENT POWERS

# **TABLE OF CONTENTS**

**INTRODUCTION**..................................................................................1

**STATEMENT OF FACTS**.....................................................................2

**I.**    **The District Court Proceeding and Appeal**..........................2

    a.  Background and Entry of Judgment.....................................2

    b.  The Turnover Proceedings...................................................3

    c.  The Motions to Vacate........................................................4

    d.  The Instant Appeal and This Court's Decision...................5

**II.**    **Enforcement Actions**.........................................................7

    a.  Related Proceedings and Actions of Counsel......................7

    b.  Mr. Carpenter's and his Entities' Litigation Strategy.........9

**ARGUMENT**.......................................................................................10

**I.**    **This Court Should Sanction Appellants and their Counsel Under its Inherent Powers and 28 U.S.C. § 1927**.................................11

    a.  Legal Standard for Inherent Powers Sanctions..................11

    b.  Legal Standard for Sanctions Under 28 U.S.C. § 1927......12

    c.  This Court should Sanction both Appellants and their Counsel because They have Pursued the Instant Appeal in Bad Faith...........................14

**II.**    **Appellants and their Counsel Must Pay Double Costs and Universitas's Attorneys' Fees as Just Damages for Pursuing this Frivolous Appeal**................................................18

    a.  Legal Standard.................................................................18

i

b.  <u>Sanctions are Appropriate Under Federal Rule of Appellate Procedure</u> <u>38.</u>.................................................................................................22

**<u>CONCLUSION</u>**.......................................................................................................22

# TABLE OF AUTHORITIES

**Cases:**

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)..........................................................12

*CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462 (2d Cir. 2018)................................................................................................................................15

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017)............................12

*Emmon v. Prospect Capital Corp.*, 675 F.3d 138, 147 (2d Cir. 2012)....................11

*Epperson v. Ent't Express, Inc.*, 242 F.3d 100 (2d Cir. 2001).................................6

*Finch v. Hughes Aircraft Co.*, 926 F.2d 1574 (Fed. Cir. 1991)..............................20

*Gollomp v. Spitzer*, 568 F.3d 355 (2d Cir. 2009).......................................................13

*In re GE Co. Secs. Litig.*, 998 F. Supp. 2d 145 (S.D.N.Y. 2014)............................18

*Int'l Techs. Mktg., Inc. v. Verint Sys.*, Ltd., 991 F.3d 361 (2d Cir. 2021)................12

*JC's East v. Traub*, 84 F.3d 527 (2d Cir. 1996)........................................................20

*Lee v. City of Troy*, 559 F. Supp. 3d 73 (N.D.N.Y. 2021)........................................12

*Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021)............................13

*Mitchell v. Bank of N.Y. Mellon*, 835 F. App'x 318 (10th Cir. 2020).....................18

*Monster Tech. Grp., LLC v. Eller*, No. 21-6146, 2022 U.S. App. LEXIS 21102 (10th Cir. July 29, 2022)....................................................................................................19-20

*Peacock v. Thomas*, 516 U.S. 349 (1996)...........................................................*passim*

*Ransmeier v. Mariani*, 718 F.3d 64 (2d Cir. 2013)......................................11, 18, 19

*Rodriguez Alvarez v. Bahama Cruise Line, Inc.*, 898 F.2d 312 (2d Cir. 1990)..................................................................................................18, 19, 20, 21

*Schlaifer Nance, Co. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999)................14

*Singer v. Shannon & Luchs Co.*, 868 F.2d 1306 (D.C. Cir. 1989)..........................18

*Soliman v. Ebasco Servs., Inc.*, 822 F.2d 320 (2d Cir. 1987)...................................16

*United States v. Int'l Brotherhood of Teamsters,* 948 F.2d 1338 (2d Cir. 1991).....13

*United States v. Potamkin Cadillac Corp.*, 689 F.2d 379 (2d Cir. 1982)...........19, 21

*Universitas Educ., LLC v. Avon Capital, LLC*, No. 22-6038, 2022 U.S. App. LEXIS 35300 (10th Cir. Dec. 21, 2022)...................................................................8

*Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-fj-00005, 2021 U.S. Dist. LEXIS 26388 (W.D. Okla. Feb. 11, 2021)................................................................10

*Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-fj-00005, 2020 U.S Dist. LEXIS 251679 (W.D. Okla. Oct. 20, 2020)............................................................10

*Universitas Educ., LLC v. Benistar*, No. 3:20-cv-00738-KAD (D. Conn. 2020).......8

*Universitas Educ., LLC v. Grist Mill Capital, LLC*, No. 21-2690(l), 21-2691, 2012 U.S. App. LEXIS 4257 (2d. Cir. Feb. 23, 2023).........................................4, 6, 7, 17

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 72268 (S.D.N.Y. Mar. 31, 2016)........................................................14

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 3:14-mc-00125-RNC (D. Conn. 2014)...................................................................................................................8-9

*Universitas Educ., LLC v. Nova Grp., Inc.*, No. 1:11-cv-01590, 2014 U.S. Dist. LEXIS 109077 (S.D.NY Aug. 7, 2014)...................................................................2

*Universitas Educ., LLC v. Nova Group, Inc.*, Case No. 11-cv-1590, 2013 U.S. Dist. LEXIS 142479 (S.D.N.Y. Sep. 30, 2013)..............................................................10

*Universitas Educ., LLC v. Nova Group, Inc.*, Case No. 11-cv-1590, 2013 U.S. Dist. LEXIS 142901 (S.D.N.Y. May 21, 2013)................................................................9

*Wilder v. GL Bus Lines*, 258 F.3d 126 (2d Cir. 2001)..........................................12, 17

**Statutes:**

28 U.S.C. § 1927 (2018)....................................................................*passim*

**Rules:**

Fed. R. App. P. 38.........................................................................*passim*

Fed. R. Civ. P. 58.........................................................................*passim*

Fed. R. Civ. P. 60(b)...............................................................4, 5, 16, 20

Fed. R. Civ. P. 60(b)(4)................................................................4, 17

Fed. R. Civ. P. 60(b)(6)....................................................................4

Appellee Universitas Education, LLC ("Universitas") respectfully files its Motion for Sanctions and Double Costs ("Motion") pursuant to Rule 38 of the Federal Rules of Appellate Procedure ("FRAP"), 28 U.S.C. § 1927 (2018), and this Court's inherent powers against Appellants Grist Mill Capital, LLC ("Grist Mill") and Daniel Carpenter, as well as Jeffrey Sandberg and Jonathan Einhorn (and their respective law firms), who serve as counsel for the Appellants in the above-captioned case. In support of its Motion, Universitas states as follows:

## **INTRODUCTION**

This appeal concerns motions to vacate filed in the United States District Court for the Southern District of New York ("District Court") by the Appellants, which challenge judgments in excess of $30 million entered against them on patently frivolous grounds, over six years after the judgments were entered and should have been appealed.[1]

The actions of Appellants and their complicit counsel in this appeal have been undertaken in bad faith to continue Mr. Carpenter's relentless war of attrition against Universitas. Attorneys Jeffrey Sandberg and Jonathan Einhorn have enabled Mr. Carpenter's abuse by pursuing an appeal they knew was frivolous. Mr. Sandberg has already been found liable to Universitas for advancing a frivolous appeal in the Court

---

[1] To date, Universitas has recovered less than $6 million from Mr. Carpenter and various entities under his control.

of Appeals for the Tenth Circuit. Both Mr. Sandberg and Mr. Einhorn are continuing to advance the arguments this Court rejected in various district courts in a clear testament to their bad faith and disrespect for this Court's authority. Sanctions in the form of double costs and all of the attorneys' fees expended by Universitas in this appeal are appropriate and should be jointly and severally taxed against the Appellants and their Counsel, as well as their law firms the Einhorn Law Offices and Palmer Lehman Sandberg PLLC.

## STATEMENT OF FACTS

### I.    The District Court Proceeding and Appeal

####     a.  Background and Entry of Judgment

Universitas was the sole and irrevocable beneficiary of two life-insurance policies, whose face value totaled $30 million, taken out on the life of Sash Spencer and placed in the Charter Oak Trust. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 1:11-cv-01590, 2014 U.S. Dist. LEXIS 109077, at *6 (S.D.NY Aug. 7, 2014). When Mr. Spencer died, Nova Group, Inc., Trustee of the Charter Oak Trust, wrongfully denied Universitas's claim to the death benefit and defalcated the proceedings at Mr. Carpenter's direction. The proceeds were transferred to Grist Mill, another Carpenter entity. Universitas prevailed in an arbitration proceeding and a proceeding to confirm the award in the District Court. The District Court awarded Universitas a $30,181,880.30 judgment against Nova.

b.  The Turnover Proceedings

Post-judgment discovery revealed that Mr. Carpenter orchestrated the theft and concealment of the Spencer Proceeds for the benefit of himself and his family. *Id.* at \*10-\*11. Post-judgment discovery also revealed that Nova was insolvent and could not satisfy the judgment as it had caused the Charter Oak Trust to transfer all its assets to Grist Mill years prior, despite prior sworn statements submitted by Nova that it could satisfy a $30 million award. Thus, Universitas initiated, by motion, two turnover proceedings to attempt to recover assets held by the recipients of the stolen Spencer Proceeds. Mr. Carpenter was named a party in the first turnover proceeding and was represented by counsel throughout the proceedings. Grist Mill, as well as other Carpenter shell companies, was named as a turnover respondent in the second proceeding. *Id.* at \*6-\*10.

Mr. Carpenter waived any objections to the District Court's exercise of personal jurisdiction over him in the first turnover proceeding. (Universitas Supp. App'x 37:10-18) The District Court also found that the turnover respondents waived service of process for the second turnover motion and accepted service by email. (Universitas Supp. App'x 191-250.) Mr. Carpenter filed an opposition brief on October 25, 2013 that argued that the District Court lacked subject matter jurisdiction pursuant to *Peacock v. Thomas*, 516 U.S. 349 (1996). Grist Mill filed a joint opposition with turnover respondents, but Grist Mill did not join the argument

3

that the District Court lacked personal jurisdiction over it. The District Court rejected these arguments and others regarding service of process deficiencies. This Court has affirmed the District Court's holding. (*Universitas Educ., LLC v. Grist Mill Capital, LLC*, No. 21-2690(l), 21-2691, 2012 U.S. App. LEXIS 4257, at *6 (2d. Cir. Feb. 23, 2023), Summary Order, Doc. 118-1 at 6 (hereinafter "Summary Order".)

The District Court entered judgment on the second turnover motion on August 7, 2014 and awarded judgments of $30 million against Grist Mill and Mr. Carpenter. Some of the turnover respondents jointly moved for reconsideration, but their motion was denied. None of the turnover respondents appealed the August 7, 2014 judgment.

### c. The Motions to Vacate

Mr. Carpenter filed his motion to vacate the turnover judgment in October of 2020. Grist Mill filed its original motion to vacate in January of 2021, and filed an amended motion to vacate in February of 2021, which removed an argument that Grist Mill had the right to argue that the District Court lacked ancillary jurisdiction under *Peacock.* Both Appellants sought to vacate the 2014 judgments by invoking Federal Rules of Civil Procedure 60(b)(4) and 60(b)(6).

Universitas promptly informed both Appellants that their arguments— particularly the arguments under *Peacock* and Mr. Carpenter's argument that the Hon. Judge Swain's alleged failure to sign the judgment voided it under Federal Rule

of Civil Procedure 58—were completely frivolous and unsupported by law or fact. The District Court agreed, rejected the arguments, and sanctioned Mr. Carpenter for bringing clearly meritless arguments in his own motion to vacate.[2] Counsel for Grist Mill withdrew before the District Court rendered its final decision.

### d. The Instant Appeal and This Court's Decision

Ultimately, GMC and Mr. Carpenter appealed four of the arguments advanced in their motions to vacate: (1) the District Court lacked personal jurisdiction over them in the Turnover Judgment; (2) Mr. Carpenter and GMC were not served with adequate process; (3) the Court lacked subject matter and ancillary jurisdiction; and (4) the judgment was void pursuant to Federal Rule of Civil Procedure 58.

As an initial matter, this Court found that the Appellants "failed to satisfy *any* of the requirements for a Rule 60(b) motion." (Summary Order at 5.) The personal jurisdiction and ancillary jurisdiction arguments in the Appellants' Opening Brief contained no analysis or assignment of error to the District Court's decision. Both arguments were fatally underdeveloped and summarily rejected by this Court—the ancillary jurisdiction argument was particularly egregious as it contained only a quote of *Peacock* divorced from any factual analysis. (Summary Order at 5-6.) This Court also found that the Appellants' ancillary jurisdiction argument was "frivolous

---

[2] A motion for sanctions remains pending against former Grist Mill's counsel, Mintz & Gold LLP, in the District Court,.

under [Second Circuit] precedent, as [it] long ago held that *Peacock* does not negate a court's ancillary jurisdiction 'over an action to collect a judgment . . . . even if the parties are non-diverse.'" (*Id.* quoting *Epperson v. Ent't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001).) The personal jurisdiction argument advanced by Appellants in their Opening Brief contained nothing more than a recitation of the applicable legal standards and a conclusory assertion that the District Court's decision needed to be overturned. This Court found that the Appellants "present[ed] no grounds to allow [this Court] to set aside as clearly erroneous" the findings that Mr. Carpenter waived his personal jurisdiction defense and that both Appellants forfeited the defense by litigating the action on the merits extensively before invoking personal jurisdiction defenses. (Summary Order at 6.)

This Court similarly found that the Appellants failed to carry their burden to demonstrate that they had not waived service of process. This Court also noted that this Court had previously "unanimously rejected" the Appellants' argument that service of process in a turnover proceeding had to be carried out according to New York State law. (Summary Order at 6 n.2.) The Appellants' position on appeal was particularly indefensible in light of Grist Mill's concession in the District Court that New York State law did not need to be followed for hearing procedures or service of process. (App'x 392 n.5),

6

Finally, this Court found that the Appellants' argument that the judgments against them are void because Judge Swain did not personally sign them are baseless and that Rule 58 requirements were met in this case. (Summary Order at 7.) This Court admonished counsel for Appellants stating that: "In light of the numerous challenges that we find to be either frivolous or baseless, counsel for Appellants are reminded that as officers of the court . . . they are duty-bound to avoid pursuing frivolous appeals and presenting clearly meritless arguments to this Court" and that "conduct inconsistent with [those] obligations may result in the imposition of discipline." (Summary Order at 7 n.3.)

## II.   Enforcement Actions

### a.  Related Proceedings and the Actions of Counsel

Universitas is prosecuting numerous other actions related to its recovery efforts. Mr. Sandberg and Mr. Einhorn are heavily involved in those matters. Universitas is pursuing a garnishment proceeding against one of the turnover respondents, Avon Capital, LLC, in the Western District of Oklahoma. Mr. Sandberg is counsel of record for SDM Holdings, LLC in that case, which holds the assets subject to garnishment. In an appeal dealing with an ancillary issue of adequate representation of counsel in the Western District of Oklahoma case, the Tenth Circuit sanctioned Mr. Sandberg for pursuing a frivolous appeal without the authorization of SDM Holdings and at the direction of a Carpenter entity. Mr.

Sandberg was ordered to pay "just damages" in the form of attorneys' fees incurred by Universitas in defending his frivolous appeal. (Order dated Feb. 28, 2023, *Universitas Educ., LLC v. Avon Capital, LLC*, No. 22-6038, 2022 U.S. App. LEXIS 35300 (10th Cir. Dec. 21, 2022), attached hereto as Exhibit 1.)

Universitas is also pursuing multiple cases before the United States District Court for the District of Connecticut. The first involves an attempt to impose alter ego liability on other Carpenter entities that were not turnover respondents. In a filing on a Carpenter entity's behalf before the United States District Court for the District of Connecticut, Mr. Einhorn gratuitously attacked Judge Swain's integrity stating that "Judge Swain just copied whatever Universitas put in its affidavits . . . ." (Mot. to Intervene dated August 29, 2022, *Universitas Educ., LLC v. Benistar*, No. 3:20-cv-00738-KAD (D. Conn. 2020), attached herein as Exhibit 2.) Mr. Carpenter has been sanctioned in that case for failing to produce discovery. A second case before the District of Connecticut involves a charging order against Carpenter Financial Group, Inc., another turnover respondent. Mr. Einhorn moved to vacate the charging order, arguing that vacatur was warranted in part because the judgment against Carpenter Financial Group was void for lack of signature and that that District Court lacked ancillary jurisdiction under *Peacock*. (Mot. to Vacate dated Aug. 18, 2022 at 2; Reply Br. in Further Supp. of Mot. to Vacate dated Sept. 23, 2022 at 7-8, *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 3:14-mc-00125-RNC

8

(D. Conn. 2014), attached herein as Exhibits 3 and 4.) Mr. Sandberg has also appeared in that case on behalf of Carpenter Financial Group. Despite this Court having rejected these arguments, neither Mr. Sandberg nor Mr. Einhorn has taken steps to withdraw these arguments, in a show of bad faith and disrespect for this Court's decision.[3]

### b. Mr. Carpenter and his Entities' Litigation Strategy

Mr. Carpenter and his entities' legal strategy against Universitas is one of attrition. The intent of the legal strategy is to render recovery of Universitas's judgment prohibitively costly. Advancing patently meritless arguments and then repeatedly re-litigating those arguments through various procedural vehicles is a hallmark of that strategy. *See Universitas Educ., LLC v. Nova Group, Inc.*, Case No. 11-cv-1590, 2013 U.S. Dist. LEXIS 142901 (S.D.N.Y. May 21, 2013) (finding that a motion to reconsider was "plainly without merit" and amounted to nothing more than an "attempt to relitigate the same issues by invoking a different procedural vehicle[]").[4] For instance, Mr. Carpenter's *Peacock* argument has not only been rejected by the District Court and this Court. It has also been rejected by the United

---

[3] Universitas is seeking sanctions for Mr. Einhorn's actions in advancing those and other meritless arguments. Universitas's motion for sanctions remains pending but was filed before this Court rendered its February 7, 2023 decision on the merits.

[4] Notably the District Court has found Mr. Carpenter himself in contempt for discovery abuses by Nova because Mr. Carpenter exercised full control over his entities and is responsible for their conduct. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 99957, at *27-*29 (S.D.N.Y. July 11, 2013).

States District Court for the Western District of Oklahoma in a decision that explained that ancillary jurisdiction was unnecessary if the independent basis of diversity jurisdiction exists. *Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-fj-00005, 2020 U.S Dist. LEXIS 251679, at *32 (W.D. Okla. Oct. 20, 2020), *adopted by* 2021 U.S. Dist. LEXIS 26388 (W.D. Okla. Feb. 11, 2021) ("Even assuming . . . this Court cannot proceed exercising ancillary jurisdiction . . . diversity of citizenship provides an independent basis for [jurisdiction."). Mr. Sandberg serves as counsel in that litigation.

The District Court also sanctioned Carpenter-controlled entities in response to multiple arguments in motions to quash and a motion to dismiss for lack of subject matter jurisdiction. The motions filed were patently frivolous, including the motion to dismiss, which was based on subject matter jurisdiction that was "foreclosed by a more than 30-year old decision of the Supreme Court." *See Universitas Educ., LLC v. Nova Group, Inc.*, Case No. 11-cv-1590, 2013 U.S. Dist. LEXIS 142479 (S.D.N.Y. Sep. 30, 2013). Notably, the Appellants' arguments that the District Court's decision was void under Rule 58 is based on outdated caselaw that is no longer operative since Rule 58 was amended two decades ago.

## **ARGUMENT**

The instant Appeal is patently frivolous, and it has wasted the valuable time and judicial resources of this Court and Universitas. Federal Rule of Appellate

Procedure 38 permits an appellate court to award just damages to an appellee that defended a frivolous appeal. The Appellants' appeal was frivolous in light of the completely meritless arguments presented to this Court, and both Appellants and their counsel should be sanctioned for bringing it. Moreover, sanctions are appropriate against the Appellants' counsel for knowingly and in bad faith multiplying the proceedings in contravention of 28 U.S.C. § 1927. Finally, the instant appeal has all the characteristics of Mr. Carpenter and his entities' abusive litigation practices, and this Court should exercise its inherent powers to sanction the Appellants and their counsel for continuing those practices. Thus, this Court should award Universitas double costs and its attorneys' fees in defending this appeal as just damages and sanctions against Grist Mill, Mr. Carpenter, John Einhorn, Jeffrey Sandberg, and Palmer Lehman Sandberg, PLLC,[5] jointly and severally.

## I. This Court Should Sanction Appellants and their Counsel Under its Inherent Powers and 28 U.S.C. § 1927.

### a. Legal Standard for Inherent Power Sanctions

A court's authority to impose sanctions is grounded, "first and foremost," in its "inherent power to control the proceedings that take place" before it. *Ransmeier*

---

[5] This Court has previously held that sanctions pursuant to 28 U.S.C. § 1927 may be levied against a law firm as a whole, particularly when the Court also finds that inherent powers sanctions are appropriate. *Emmon v. Prospect Capital Corp.*, 675 F.3d 138, 147 (2d Cir. 2012).

*v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991)); *see also Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (holding that courts possess "inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). This includes the ability for a court to impose "monetary sanctions against . . . litigant[s] (or [their] counsel) for misconduct." *Lee v. City of Troy*, 559 F. Supp. 3d 73, 83 (N.D.N.Y. 2021) (quoting *Int'l Techs. Mktg., Inc. v. Verint Sys.*, Ltd., 991 F.3d 361, 367 (2d Cir. 2021)). Thus, a federal court may exercise its inherent power to impose monetary sanctions on a party or an attorney who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46. It may also sanction an attorney who has "negligently or recklessly failed to perform his responsibilities as an officer of the court." *Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001).

　　　　　b. Legal Standard for Sanctions Under 28 U.S.C. § 1927

Pursuant to 28 U.S.C. § 1927, "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 "authorizes sanctions when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose, and upon a finding of

conduct consisting or akin to bad faith." *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (internal citations and quotations omitted); *United States v. Int'l Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991) (noting that "[b]ad faith is the touchstone" in determining whether sanctions are appropriate under § 1927).[6]

A finding of bad faith requires that an attorney's conduct was both "without a colorable basis" and that it was "motivated by improper purposes such as harassment or delay." *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 282 (2d Cir. 2021). This Court has found that an attorneys' conduct consisted of bad faith when the attorneys had received notice from other courts that their claims were meritless[7] and when counsel "persisted in alleging unfounded claims despite ample opportunity in the case to withdraw them." *Gollomp*, 568 F.3d at 369-71 (finding that failure to withdraw arguments after being warned that they were sanctionable can support a finding of bad faith).

In practice, "the only meaningful difference between an award made under § 1927 and one made pursuant to the Court's inherent power" is that a § 1927 award is restricted to attorneys, while inherent power sanction awards may be made against

---

[6] In addition to the substantive requirement for the imposition of sanctions, this Circuit has also imposed a procedural requirement of notice and an opportunity to be heard for the party against whom sanctions are sought.

[7] The court in *Gollomp* noted that it could take judicial notice of the filings of other lawsuits and the arguments contained therein to support a finding of bad faith and the imposition of sanctions. 568 F.3d at 369.

"an attorney, a party, or both." *Schlaifer Nance, Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999).

    c. <u>This Court should Sanction both Appellants and their Counsel because They have Pursued the Instant Appeal in Bad Faith.</u>

As explained, *supra*, this Court rejected every argument made by Appellants and their counsel on appeal. It further noted that all the arguments advanced were baseless or outright frivolous. Thus, the imposition of sanctions turns on finding that Appellants and their counsel acted in bad faith. The record makes abundantly clear that this entire proceeding was undertaken by Appellants and their counsel in bad faith and with a clear intent to harass Universitas and vexatiously multiply the proceedings.

First, the record in the underlying case is replete with findings that Mr. Carpenter and his entities specifically engage in abusive litigation practices, including re-litigating meritless arguments using different procedural vehicles, as part of a litigation strategy that is tantamount to a war of attrition against Universitas. The District Court has found that Mr. Carpenter's goal is to render collection more difficult for Universitas. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 72268, at *7 (S.D.N.Y. Mar. 31, 2016) (explaining that Carpenter's conduct in post-judgment proceedings is "primarily aimed at avoiding or otherwise delaying Universitas' enforcement of the judgment").

Second, the Appellants' and their counsel's bad faith is apparent in their arguments on appeal. As this Court noted in its Decision, "Appellants' argument that service of process must have been carried out according to New York State law [was] unambiguously rejected . . . in *CSX Transportation, Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 468-70 (2d Cir. 2018). Grist Mill cited this exact case in its motion to vacate and conceded that New York procedural strictures were inapplicable in turnover proceedings under New York law in federal court. Nevertheless, on appeal, Grist Mill tried to withdraw its concession and instead made an argument that it knew was meritless.

Additionally, a finding of bad faith by Appellants and their counsel is supported by the numerous opportunities they have had to withdraw offending arguments and the fact that numerous courts have informed them that the arguments that they are pursuing are frivolous. Not only has the District Court rejected the *Peacock* argument, but so has the Western District of Oklahoma. Mr. Sandberg is counsel of record in the Western District of Oklahoma case, and knows that the argument is meritless. Mr. Carpenter was sanctioned for making this argument in the District Court, and yet Grist Mill and Mr. Carpenter pursued it on appeal, even after Grist Mill withdrew it in the District Court.

The Appellants and their counsel also had ample opportunity to withdraw their Rule 58 arguments. The District Court's decision put Appellants and their counsel

15

on notice that the arguments were predicated on outdated caselaw. Nevertheless, Appellants and their counsel pursued the arguments on appeal, using the exact same caselaw that the District Court found was inapplicable because of changes to Rule 58. Their decision to do so evinces bad faith.

The egregious conduct of Mr. Sandberg and Mr. Einhorn in this and ancillary cases supports sanctions. Mr. Einhorn and Mr. Sandberg are officers of the court, but they have abdicated their responsibilities in representing Mr. Carpenter. Mr. Sandberg, at a Carpenter entity's direction, pursued an entire appeal without authorization from his purported client in the Court of Appeals for the Tenth Circuit. Mr. Sandberg was sanctioned by the Tenth Circuit under FRAP 38 for bringing the appeal absent authorization, conduct which this Court has found merits a referral for disciplinary action. *Soliman v. Ebasco Servs., Inc.*, 822 F.2d 320, 322-24 (2d Cir. 1987). Mr. Sandberg also filed a brief in the District Court on May 9, 2023 arguing that the Motions to Vacate are timely under Rule 60(b) and summarily stated that the "Second Circuit disagreed in its opinion . . . [with] prior precedent." (Reply Br. Against Sanctions, May 9, 2023, *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 1:11-cv-01590 (S.D.N.Y), attached herein as Exhibit 5.) Mr. Sandberg is simply choosing to ignore this Court's decision and is continuing to argue against it below.[8]

---

[8] Notably, Mr. Sandberg tries to reconcile his arguments, which cite inapposite cases, by claiming that there has been intervening changes of law with respect to personal jurisdiction. This contention

Mr. Einhorn has, in his representation of Mr. Carpenter, attacked Judge Swain's integrity as a judge, and has failed to withdraw arguments in other matters that this Court has explicitly found to be frivolous. These actions demonstrate an "egregious disrespect" for the Court.

Mr. Sandberg and Mr. Einhorn multiplied the proceedings in this matter by pursuing the instant appeal despite the fact that it was clear that it had no chance of success. Their improper actions are not an isolated incident—they are emblematic of their representation of Mr. Carpenter and his entities. Their continued pursuit of arguments this Court has rejected makes clear that their intent is not to advance meritorious arguments towards resolution; it is to continue arguing and delaying Universitas's recovery at any cost. This Court admonished Mr. Sandberg and Mr. Einhorn in its Summary Order, reminding them that "they are officers of the court" and are "duty-bound to avoid pursuing frivolous appeals and presenting clearly meritless arguments to the Court." (Summary Order at 7 n.3.) This Court has held that that sanctions are appropriate against an attorney who has "negligently or recklessly failed to perform their responsibilities as an officer of the Court." *Wilder*, 258 F.3d at 130. The record makes clear that both Mr. Einhorn and Mr. Sandberg have done exactly that. Thus, this Court should impose monetary sanctions jointly

---

is simply not true. To the extent he claims that the time limit for Rule 60(b)(4) motions is effectively unlimited, it is irrelevant as Appellants' jurisdictional arguments fail on the merits.

and severally on Appellants and their counsel and require that these parties pay all of Universitas's reasonably incurred attorneys' fees in defending this appeal.

## II. **Appellants and their Counsel Must Pay Double Costs and Universitas's Attorneys' Fees as Just Damages for Pursuing this Frivolous Appeal**

### a. Legal Standard

"Beyond a court's inherent power," FRAP 38 provides authority to impose sanctions for the filing of a frivolous appeal. *Ransmeier*, 718 F.3d 64, 68 (2d Cir. 2013). FRAP 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." This Circuit and others have long held that "just damages" include awards of attorneys' fees. *E.g. Rodriguez Alvarez v. Bahama Cruise Line, Inc.*, 898 F.2d 312 (2d Cir. 1990) (internal citations omitted); *Mitchell v. Bank of N.Y. Mellon*, 835 F. App'x 318, 328 (10th Cir. 2020). The purpose of FRAP 38 is twofold—to provide justice and recourse to the appellee and as a penalty to the appellant. *In re GE Co. Secs. Litig.*, 998 F. Supp. 2d 145, 151 (S.D.N.Y. 2014) (citing Fed. R. App. P. 38 1967 Advisory Committee Notes); *see also Singer v. Shannon & Luchs Co.*, 868 F.2d 1306, 1308 (D.C. Cir. 1989) (noting that Rule 38 "seeks to deter and punish frivolous appeals" and noting that the "egregiously objectionable conduct . . . justif[ies] imposing fewer technical restrictions").

This Court has found that sanctions can be awarded under FRAP 38 if the arguments presented on appeal are "patently frivolous" and if the conduct of a litigant or attorney "evinces bad faith or an egregious disrespect for the Court or judicial process." *Ransmeier*, 718 F.3d at 68. Appeals are also deemed frivolous if they are "brought without the slightest chance of success." *United States v. Potamkin Cadillac Corp.*, 689 F.2d 379, 382 (2d Cir. 1982) (finding an appeal frivolous where it was a "continued abuse of process" which was "totally lacking in merit, framed with no relevant supporting law, conclusory in nature, and utterly unsupported by the evidence") (internal citations omitted).

This Court has also awarded sanctions, including attorneys' fees, under FRAP 38 against a party "advancing meritless arguments for the sole purpose of harassing the prevailing party and subjecting it to undue time and expense." *Rodriguez*, 898 F.2d at 317 ("The clear lack of merit in [Appellant's] appeal, combined with [Appellant's] consistent intransigence in responding to Alvarez's claim throughout this case, leads us to the inescapable conclusion that this appeal was launched solely for harassment value."). This includes by challenging a district court's findings of facts but failing to provide any specific examples of error in the record of the district court's error, and instead simply making "illusory assertions" of error. *Id.* Other Circuits have determined that an appeal may be deemed frivolous when "the result is obvious, or the appellant's arguments of error are wholly without merit." *Monster*

19

*Tech. Grp., LLC v. Eller*, No. 21-6146, 2022 U.S. App. LEXIS 21102, at *5-*6 (10th Cir. July 29, 2022); *see also Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1578-79 (Fed. Cir. 1991) (finding that three separate grounds for affirmance, including waiver and no abuse of discretion, presented "such an overwhelming obstacle that [the decision] to file the appeal can only be seen as a frivolous waste of the resources of [the] court and of the time and money of the [opponent]").

Sanctions under FRAP 38 may be imposed jointly and severally between an appellant and their counsel. *JC's East v. Traub*, 84 F.3d 527, 532 (2d Cir. 1996).

  b. Sanctions are Appropriate Under Federal Rule of Appellate Procedure
     38.

This Court should sanction the Appellants pursuant to FRAP 38. The instant appeal is a textbook frivolous appeal. This Court has already found that every argument made on appeal was baseless or outright frivolous. This Court found that the Appellants failed to satisfy any of the requirements for bringing a Rule 60(b) motion, and the arguments should have been brought in a timely appeal.

Additionally, this Court held that the District Court correctly found that the Appellants had waived service of process and personal jurisdiction arguments. Much like in *Rodriguez*, the Appellants failed to point to anything in the factual record in their Opening Brief that would suggest that the District Court did not have personal jurisdiction over them. Instead, they recited a lengthy standard and then asserted in conclusory fashion "that this [sic] Court did not have personal jurisdiction over Mr.

Carpenter . . . ." With respect to Appellants' *Peacock* argument, this Court held that not only was the argument frivolous on its face, but that it consisted of nothing more than a block quote and conclusory assignment of error devoid of factual analysis. This Court similarly found that the Appellants' argument that the judgments against them were void under Federal Rule of Civil Procedure 58 was "baseless."

Taken together, these findings make clear that the instant appeal was "brought without the slightest chance of success" and was filed in bad faith for no other reason than to harass Universitas, the prevailing party, and subject it to undue time and expense. This is consistent with Mr. Carpenter's and his entities' legal strategy throughout the underlying proceeding and in ancillary enforcement actions. This Court's decisions in *Rodriguez*, 898 F.2d at 317, and *Potamkin Cadillac*, 689 F.2d at 382, make clear that the advancement of baseless, unsupported, and threadbare arguments on appeal in a transparent attempt to harass a prevailing party is ground for the imposition of sanctions under FRAP 38. As this Court noted in *Rodriguez*, the appellee and its counsel "should not have to bear the brunt of [the appellant's] vexatious tactics." *Id.* at 318. As such, this Court should award Universitas double costs and its reasonably-incurred attorneys' fees as just damages for defending this frivolous appeal.

## **<u>CONCLUSION</u>**

For all the aforementioned reasons, Universitas respectfully requests that this Court find that Grist Mill, Mr. Carpenter, Mr. Einhorn, Mr. Sandberg, and Palmer Lehman Sandberg, PLLC should be sanctioned and required to pay all of Universitas's reasonably incurred attorneys' fees and double costs in defending the instant appeal. Should this Court find an award of attorneys' fees proper, the undersigned shall provide time records and supporting affidavits for the time expended in this appeal.

Dated: June __, 2023

<div style="margin-left:40%">

Respectfully submitted,
*/s/ Joseph L. Manson III*
Joseph L. Manson III
LAW OFFICES OF JOSEPH L. MANSON III
600 Cameron St,
Alexandria, VA 22314
Telephone: (703) 340-1693
jmanson@jmansonlaw.com

*Attorneys for Petitioner-Appellee*
*Universitas Education, LLC*

</div>

22

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)) and Second Circuit Local Rule 27.1(a) because this brief contains 5198 words, excluding the Table of Contents, Table of Authorities, and Certifications.

This document complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5), which is made applicable to this Motion by Fed. R. App. P. 27(d)(1)(E), because this document uses a proportionally spaced typeface in size 14 font (Times New Roman) prepared using Microsoft Word.

## **CERTIFICATE OF NOTIFICATION**

Movant has notified opposing counsel of this Motion for Sanctions and the relief sought therein by email dated May 5, 2023. Opposing counsel objected to the relief requested. Jonathan Einhorn stated in an email dated May 5, 2023 that his and the client's position is that the Motion for Sanctions was premature, and that Movant was required to provide the basis for the relief sought. Jeffrey Sandberg stated in an email dated May 8, 2023 that Appellants would seek sanctions against Movant if Movant filed a motion for sanctions because Mr. Sandberg and his clients believe that the Motion is frivolous and sanctionable. Appellants, through counsel, indicated that they would file an opposition to the motion in the aforementioned emails.

*/s/ Joseph L. Manson III*
Joseph L. Manson

23

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this Motion was served electronically on June __, 2023 via the CM/ECF System to the following persons:


*/s/ Joseph L. Manson III*
Joseph L. Manson

# **EXHIBIT 1**

FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

February 28, 2023

Christopher M. Wolpert
Clerk of Court

UNIVERSITAS EDUCATION, LLC,

      Petitioner/Judgment Creditor -
      Appellee,

v.

AVON CAPITAL, LLC,

      Respondent/Judgment Debtor,

ASSET SERVICING GROUP, LLC,

      Respondent/Garnishee,

and

SDM HOLDINGS, LLC,

      Respondent/Garnishee - Appellant,

-------------------------------

AVON CAPITAL, LLC, a Wyoming
limited liability company,

      Intervenor.

No. 22-6038
(D.C. No. 5:14-FJ-00005-HE)
(W.D. Okla.)

_____

**ORDER**
_____

Before **BACHARACH**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

     This matter is before the court on: (1) Appellee Universitas Education, LLC's

motion for attorneys' fees; and (2) Attorney Sandberg's response in opposition thereto.

Appellee moves for an award of its attorneys' fees expended in defending this appeal pursuant to Fed. R. App. P. 38 and 10th Cir. R. 39.2. The court may award attorneys' fees and double costs pursuant to Fed. R. App. P. 38 if an appeal is frivolous. Such an award is appropriate only if the court determines that the appeal was brought for purposes of delay, or the result was obvious, or the appellant's arguments of error are wholly without merit. *Braley v. Campbell,* 832 F.2d 1504, 1510 (10th Cir. 1987). The court finds that this appeal was frivolous and the criteria for the assessment of costs and attorneys' fees under Rule 38 have been met. Accordingly, the motion is granted.

While we grant Appellee's request for attorneys' fees, we remand to the United States District Court for the Western District of Oklahoma to determine the amount of fees that were reasonably and necessarily incurred. *Hoyt v. Robson Co., Inc.*, 11 F.3d 983, 985 (10th Cir. 1993). The district court may, in its discretion, conduct any and all further proceedings it deems necessary and appropriate on the issue of appeal-related attorneys' fees.

A copy of this order shall stand as a supplement to the mandate that was issued on February 7, 2023.

Entered for the Court
CHRISTOPHER M. WOLPERT, Clerk

By: Candice Manyak
    Counsel to the Clerk

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC | ) | |
| | ) | |
| Plaintiff | ) | CIVIL ACTION NO. |
| | ) | 3:20-cv-00738-JAM |
| vs. | ) | |
| | ) | |
| BENISTAR, et al | ) | |
| | ) | AUGUST 29, 2022 |
| Defendants | ) | |

**BRIEF IN SUPPORT OF MOTION OF CARPENTER FINANCIAL GROUP, INC.**
**TO INTERVENE AS AN INTERESTED PARTY**

**PRELIMINARY STATEMENT**

Proposed Intervenor Carpenter Financial Group, Inc  (hereinafter "CFG") respectively asks this Court for permission to intervene in this case because Attorney Joseph Manson and Universitas are continuing to commit a fraud on the Court and clearly wasting the Court's time.

As the Court is clearly aware, Universitas is suing Carrie and Steve Meckel and four innocent and uninvolved parties simply because they had some alleged tenuous monetary connection to CFG. In his filing in opposition to the Four LLC's Motions to Dismiss on August 24, 2022, Attorney Manson makes a number of misstatements.

For instance, Attorney Manson claims the Charter Oak Trust Welfare Benefit Plan was not an ERISA Plan. (See Manson Opp. at 3 fn. 1) But the Department of Labor raided the offices at 100 Grist Mill Road in May 2011 claiming that it had jurisdiction over the Charter Oak Trust because it was in fact an ERISA Plan. That case has been in continuous litigation for a decade with three trips to the Second Circuit, and the Government is currently appealing Judge Underhill's ruling in favor of Mr. Carpenter to destroy the documents still in the Government's possession. Attorney Manson continues to defame innocent parties and claim that Benistar is a criminal

1

organization despite the Second Circuit's clear mandate that court filings should not be used to defame any parties—much less the innocent parties in this case. *See Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2019).

Clearly, CFG satisfies all four the requirements of Rule 24 for a permissive intervention in this case. CFG has a vested interest in this case because it owns 99% of the Defendant Grist Mill Partners, LLC, which will ask this Court to dismiss the lien Universitas put on the property at 100 Grist Mill Road, which is currently in foreclosure with TD Bank. The Defendant 1 & 3 Mill Pond already sold the property that was in foreclosure to pay off TD Bank before Universitas brought this patently frivolous and vexatious lawsuit. Similarly, Defendant Seir Hill Partners, LLC is only being sued because CFG allegedly advanced money to purchase the building in Norwalk, but Seir Hill Partners is owned 99% by Molly Carpenter (who was dismissed with prejudice in this case) and 1% by Caroline Financial Group, Inc., which has never been sued by Universitas despite Caroline being the Managing Member of several defendants in this case. Perhaps worst of all is the lawsuit against the Meckels because they bought a property from the Defendant Birch Hill Partners, LLC using a mortgage, but the money in Birch Hill Partners, LLC, that allegedly came from CFG in 2010, before Judge Swain's judgment against Nova Group, Inc. in 2012 or the Clerk's Judgment in August of 2014, which is currently under appeal at the Second Circuit.

But the reason that this Court should allow CFG to intervene is to aid the Court in sorting through all Attorney Manson's misstatements. Sharon Siebert of Universitas was Sash Spencer's Mistress and her neighbor Barbara Kniffen (Seibert's neighbor and alleged notary) never visited Sash Spencer while he was in intensive care dying in the hospital in May of 2008. Sash Spencer did not sign those forms and his widow Mary Spencer threatened Wayne Bursey and Jack Robinson with a lawsuit if they paid a dime to the two "floosies" (Mary Spencer's Attorney's words, not Mr. Carpenter's). In fact, no one ever threatened Mr. Carpenter because he had nothing

to do with filling out the application or denying the claim and to this very day, Mr. Carpenter has never met or even talked to Sash Spencer's broker, Bruce Mactas. Moreover, Mr. Carpenter has shown several times the Government's Exhibit used at his trial that he calculated Universitas paying $19,800,000 before the claim was denied by Wayne Bursey, the Trustee of the Charter Oak Trust, once the Sharon Seibert fraud was discovered. But not only has Universitas lied to this Court—Universitas lied to Judge Swain as well. *Please see, e.g.* Doc. 301-3 in the Meckel filing, showing that there is no "Inc." or "LLC" after Carpenter Financial Group" but there are THREE DIFFERENT TAX ID NUMBERS for CFG in the Judgment Restraining Notice submitted by Universitas.

Because Judge Swain just copied whatever Universitas put in its affidavits, and despite knowing that there were FOUR different CFG's—but did not know whether it was the Delaware entity or the Connecticut entity or an Inc. or an LLC—she left the company description blank. *See* Doc 301-3, Exhibit B, showing three different EINs for Carpenter Financial Group. In fact, PACER shows CFG, LLC was one of the Petitioner's in Judge Covello's Court protesting the IRS Raid of 2010. (*see Pettibone Tavern v. Commissioner*, 3:10-MC-00064-AVC (April 29, 2010); *see also*, 3:01-CV-01942-AVC (October, 15, 2001) where CFG, LLC as plaintiff sued Sovereign Bank in 2001).

Even worse, while Mr. Carpenter was in prison, Universitas filed a Charging Order with Judge Chatigny that he granted in October of 2015. The only activity in that case in seven years is CFG's filing of a Motion to Dissolve or Vacate the Charging Order pursuant to the "One Satisfaction Rule." Please see the Judge Chatigny Motion attached as Exhibit One. The law in New York—as well as Connecticut—is very clear, Universitas can only collect once. When Universitas collected $12,000,000 in Judge Vanessa Bryant's courtroom, the $11,140,000 allegedly owed by some Carpenter Financial Group was wiped out. If CFG does not owe money to Universitas, then

3

the Defendants in this case should all be dismissed. For the reasons set forth above, CFG has filed this motion and respectfully requests this Court's permission to allow it to intervene in this case, so at to present the truth to this Court and present relevant evidence showing that Universitas is owed nothing and should not benefit from its fraudulent conduct and instead it should be sanctioned for wasting the Court's valuable time and resources pursuant to 28 U.S.C 1927.

## **LAW AND ARGUMENT**

### A.      **Legal Standard**

Federal Rule of Civil Procedure 24 provides four distinct paths for parties to intervene in a pending case, two of which are applicable here. First, upon timely motion, Rule 24(a)(2) provides for intervention as of right to "anyone" who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2); *Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 2200–01 (2022); *see also MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006).

Second, Rule 24(b)(1)(B) allows permissive intervention for a party that "has a claim or defense that shares with the main action a common question of law or fact." "Even if the court concluded that the movants had not made a showing that they may intervene as of right, it would permit the movants to intervene pursuant to Federal Rule of Civil Procedure 24(b). That provision allows the court to permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). *Connecticut Fine Wine &*

*Spirits, LLC v. Harris*, No. 16-CV-1434 (JCH), 2016 WL 9967919, at *8–9 (D. Conn. Nov. 8, 2016)

Under both Rule 24(a) and (b), "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir.2014).

**B.     Law & Argument**

The Federal Rules of Civil Procedure provide for "intervention of right" under Rule 24(a) and "permissive intervention" under Rule 24(b). CFG satisfies both standards.

**1)   Carpenter Financial Group, Inc. is entitled to intervene as of right.**

As the Supreme Court recently stated that "[o]ur starting point lies in Rule 24(a)(2) of the Federal Rules of Civil Procedure. As relevant here, the Rule provides that a "court must permit anyone to intervene" who, (1) "[o]n timely motion," (2) "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing  of the action may as a practical matter impair or impede the movant's ability to protect its interest," (3) "unless existing parties adequately represent that interest." *Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 2200–01 (2022). CFG meets all four requirements.

**2)   This motion is timely**

CFG's motion is "timely" because this Court has not yet ruled on motions to dismiss the First Amended Complaint. CFG moved expeditiously to file this motion after Attorney Manson's fraudulent filing of August 24, 2022 and after it filed its own motion to vacate the charging order in *Universitas v. Nova Group, Inc, et al.*, 14-mc-00125-RNC and permitting CFG to intervene will not prejudice any party. CFG's motion is timely. *See, e.g., Am. S.S. Owners Mut. Prot. and Indem. Ass'n., Inc. v. Alcoa S.S. Co.*, 2005 WL 427593, at *4 (S.D.N.Y. Feb. 22, 2005) ("There is no

dispute that the motion to intervene is timely, having been filed only a few months after the Club filed its complaint in this multi-party action.")

### 3) CFG has an interest in this action

A party has a right to intervene if it "claims an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). This interest is sufficient for intervention if it is "'direct, substantial, and legally protectable,'" as opposed to "remote from the subject matter of the proceeding, or … contingent upon the occurrence of a sequence of events before it becomes colorable." *Brennan v. N.Y. City Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (*quoting Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co*., 922 F.2d 92, 97 (2d Cir. 1990)).

CFG satisfies this requirement too as explained above in the preliminary statement. CFG is the subject of a charging order that has been pending in an action filed by Universitas since October 27, 2015. CFG seeks intervention as Universitas is owed nothing and should not benefit from its fraudulent conduct. CFG thus has a strong interest in remedying the harm that Universitas has caused to its members and other parties in this action. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (associations can bring suits on behalf of their members); see, *e.g., Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.* (Harvard Corp.), 397 F. Supp. 3d 126, 132 (D. Mass. 2019).

### 4) CFG's interest will be impaired without intervention

A party has a right to intervene if it "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a). CFG satisfies this requirement because CFG's ability to protect its interests would be impaired or impeded by an adverse decision in this case. If Universitas prevails in this case, the decision could form precedent that could perpetuate Universitas's to continue its fraudulent conduct SFFA's in future lawsuits. This potential precedential effect is sufficient to warrant intervention as of right.

*See Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 21 (E.D.N.Y. 1996) ("[T]he stare decisis effect of a court's decision is sufficient to demonstrate the requisite impairment of an interest to support a motion to intervene."); *N.Y. Pub. Interest Research Grp., Inc. v. Regents of the Univ. of the State of N.Y.*, 516 F.2d 350, 352 (2d Cir. 2000) (same). At a minimum, "[t]he reality is that [SFFA] would at least find itself waging an uphill battle" to challenge an admissions process that had already been upheld as constitutional. *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 162 (S.D.N.Y. 2000). CFG's interest thus may be impaired without intervention

**5) CFG's interest will not be adequately protected by the parties to the action**

A party has a right to intervene if "existing parties" may not "adequately represent" the intervenor's interest. Fed. R. Civ. P. 24(a). CFG meets this requirement as well. CFG has a unique interest in the outcome, given its motion to vacate the charging order in *Universitas v. Nova Group, Inc*. Universitas has sued to collect money it claims that it is owed. CFG, by contrast, seeks to prove that Universitas is perpetuating a fraud before the Court and that it has already collected its claimed debt.. See, e.g., *Schaghticoke Tribal Nation v. Norton*, No. 3:06CV81 (PCD), 2006 WL 1752384, at *6 (D. Conn. June 14, 2006) ("[I]nadequate representation by the [f]ederal [government] is more likely to be found if the Movant[] assert[s] a personal interest that does not belong to the general public.") (cleaned up).

Moreover, unlike the other defendants, CFG is currently seeking to vacate a charging order that is subject to the same claims at issue in this action. This too supports intervention. *See, e.g., Schaghticoke Tribal Nation*, 2006 WL 1752384, at *7 (D. Conn. June 14, 2006) (government does not provide adequate representation if it has not "demonstrated sufficient motivation to … present all colorable contentions"); *Ctr. for Biological Diversity v. Zinke,* No. CV-18-00047-TUC-JGZ, 2018 WL 3497081, at *4 (D. Ariz. July 20, 2018) (government does not provide adequate representation if it will not "undoubtedly make all the intervenor's arguments," is not "capable and

willing to make such arguments," or "would neglect" elements raised by intervenor). Because the other defendants are not subject to the Charging Order that CFG is moving to vacate and not parties in *Universitas v. Nova Group, Inc.*, they do not have a complete "congruence of interests," there is inadequate representation. *Brennan*, 260 F.3d at 133

**6) Alternatively, CFG should be allowed to permissively intervene.**

Even assuming in the alternative that intervention as of right is improper, permissive intervention is still appropriate. This Court has made similar findings in *North River v O & G Industries*:

> Even if I were to conclude that the proposed intervenors were not entitled to intervention as of right, I would conclude that permissive intervention is appropriate. Rule 24(b) allows intervention by permission of the court when the intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The proposed intervenors here raise counterclaims that clearly share common questions of law or fact. The existing action brought by North River claims that the process by which Keystone handled the initial claims settlement process in the aftermath of the explosion violated the terms of the insurance contract between North River and Keystone. Proposed intervenors' counterclaim similarly alleges violations—this time, on the part of North River—of the terms of the same contract. Specifically, the proposed intervenors claim that North River should have negotiated with Keystone and that the failure to do so was in bad faith, negligent, and additionally in violation of Massachusetts's unfair trade practices law. Additional considerations and the balance of equities also support permissive intervention. For claims of permissive intervention, the "elements of the rule must be read in balance ... A showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation." *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir.1984). Moreover, a primary consideration must be "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978); *see also Citizens Against Casino Gambling in Erie Cty. v. Hogen*, 417 Fed.Appx. 49, 51 (2d Cir.2011)

*N. River Ins. Co. v. O&G Indus., Inc.*, 315 F.R.D. 1, 7 (D. Conn. 2016).

Rule 24(b) provides that a Court has discretion to grant permissive intervention when the intervenor "has a claim or defense that shares with the main action a common question of law or

fact." Fed. R. Civ. P. 24(b). "Permissive intervention is appropriate in circumstances in which intervention would not unduly delay or prejudice the adjudication of the original parties' rights." *Mejia v. Time Warner Cable Inc.,* 2017 WL 3278926, at *17 (S.D.N.Y. August 1, 2017). "Additional relevant factors include: (1) the nature and extent of the intervenors' interests, (2) the degree to which those interests are adequately represented by other parties, and (3) whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Connecticut v. Pruitt,* No. 3:17CV796 (WWE), 2017 WL 11572824, at *2–3 (D. Conn. Sept. 1, 2017). The Court should also conclude that CFG is an "indispensable" party after the recent frivolous and vexatious filings.

CFG is also entitled to permissive intervention. Permissive intervention under Rule 24(b) is "discretionary with the trial court." *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986). A district court may grant a motion for permissive intervention if the application is timely and if the "'applicant's claim or defense and the main action have a question of law or fact in common.'" *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000) (quoting Fed. R. Civ. P. 24(b)(2)). The court also must consider "whether granting permissive intervention 'will unduly delay or prejudice the adjudication of the rights of the existing parties.'" *Id*. (*quoting* Fed. R. Civ. P. 24(b)(2)). CFG clearly satisfies these requirements for permissive intervention.

First, as explained above, CFG's motion is timely. The parties are still litigating Motions to Dismiss. No reply briefs have been filed. Second, CFG's claims share with the main action common questions of law or fact. If CFG were to bring its own lawsuit, its lawsuit would implicate the precise facts at issue here. CFG's discovery would involve the same discovery that has already been conducted in this case.

9

Finally, granting permissive intervention to CFG will not "unduly delay or prejudice the adjudication of the original parties' rights." To the contrary, considerations of judicial economy weigh in favor of intervention. "The purpose of … intervention is to prevent a multiplicity of suits where common questions of law or fact are involved." *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990); *see, e.g., United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994) ("Intervention … attempts to … efficiently administrat[e] legal disputes by resolving all related issues in one lawsuit."). If CFG is not granted intervention, it would be forced to file its own separate lawsuit against Universitas, creating additional litigation and burdens for all parties and this Court. Permissive intervention is designed to prevent this "multiplicity of suits." *Wash. Elec. Co-op., Inc.*, 922 F.2d at 97; *see, e.g., Golden Ins. Co. v. PCF State Restorations, Inc.*, No. 17-CV-5390 (BCM), 2018 WL 10593630, at *7 (S.D.N.Y. May 11, 2018) (intervention warranted in light of "overarching considerations of economy and efficiency that undergird … permissive intervention"); *Nu-Chem Labs., Inc. v. Dynamic Labs., Inc.,* No. 96-CV-5886 (JS), 1998 WL 35180780, at *4 (E.D.N.Y. May 19, 1998) (same). Thus, at a minimum, CFG should be granted permissive intervention in the interests of justice and preserving judicial resources and this Court's valuable time.

## **CONCLUSION**

Because of the aforesaid arguments, the Intervenor, Carpenter Financial Group, Inc., respectfully prays that this Honorable Court grants this motion and allows CFG to proceed as an intervening Interested Party in this matter.

Respectfully Submitted
CARPENTER FINANCIAL GROUP, INC.

By: _/s/ Jonathan J. Einhorn_
JONATHAN J. EINHORN
129 WHITNEY AVENUE

NEW HAVEN, CT 06510
FEDERAL BAR NO. ct00163
EINHORNLAWOFFICE@GMAIL.COM

## **CERTIFICATION**

I hereby certify that on this 29th day of August, 2022, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.

By: */s/ Jonathan J. Einhorn*
     JONATHAN J. EINHORN

# **EXHIBIT 3**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---------------------------------------------------------

UNIVERSITAS EDUCATION, LLC,    :
Plaintiff,                    :      **Case No. 3:14-mc-00125-RNC**
                                :
-against                    :
                                :
NOVA GROUP, INC., et al.,       :      **August 18, 2022**
Defendant.              :

---------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE AND/OR RELEASE CFG FROM CHARGING ORDER OF OCTOBER 27, 2015

Pursuant to Federal Rules of Civil Procedure Rule 60(b)(5), Petitioner and alleged Judgment Debtor Carpenter Financial Group, Inc. (hereinafter "CFG") respectfully submits this memorandum in support of its Motion to Release CFG from and/or Vacate the $11,400,000 Charging Order dated October 27, 2015 because through payments, along with the settlements from various other Judgment Debtors and Third Parties, more than the full amount of the Charging Order has been paid, and that through the Second Circuit's "One Satisfaction Rule" any claims against Petitioner CFG have now been satisfied.

### PRELIMINARY STATEMENT

On October 27, 2015, this Court entered a charging order "pursuant to C.G.S. 34-171, to charge the membership interest of the Judgment Debtor, Carpenter Financial Group ("CFG"), in Grist Mill Partners, LLC, and in any and all other limited liability companies in which CFG may have an interest with, with the unsatisfied portion of the Judgment entered in Universitas' favor against CFG for Charging Order on August 12, 2014 in the Southern District of New York, and filed with this Court on November 6, 2014."

Moreover, the Clerk's Judgment did not satisfy the clear-cut rules of F.R.C.P. Rule 58(b)(2) where, in an order that is doing more than reporting the jury verdict, it must be signed by

the District Court Judge. See Exhibit One. Recently, in an order involving the same parties dated

March 31, 2020, Judge Swain denied Universitas relief, and stated that the court did not have

subject matter jurisdiction citing the Supreme Court's ruling in *Peacock v. Thomas*, 516 U.S. 349

(1996). See Exhibit Two.

In the time since this Court's Charging Order, Universitas has been able to recover:

$12,000,000 on February 27, 2018 from WSFS Bank for Christiana Bank, which was the Insurance

Trustee for the Charter Oak Trust (see Exhibit Three); $4,487,007.81 on or about June 19, 2018

from the Grist Mill Trust (see Exhibit Four); $900,333.61 from BPETCO (see Exhibit Five); and

over $500,000 from USAA (see Exhibits Six and Seven).

Since the Clerk's Judgment was not a valid judgment pursuant to Rule 58(b) because it

was not signed by a District Court, and was void *ab initio*, and therefore could not be lodged as a

valid judgment in this Court pursuant to 28 U.S.C. §1963, therefore, the Charging Order should

be dissolved in its entirety and/or discharged pursuant to Rule 60(b)(5) for that reason; or in the

alternative, should be vacated because it was never a valid judgment in the first place, and both

Courts therefore lacked subject matter jurisdiction and personal jurisdiction over the

Petitioner/Judgment Debtor CFG pursuant to the Supreme Court's decision in *Peacock v. Thomas*,

citing the famous case from Connecticut, *H.C. Cook v. Beecher*:

> Our recognition of these supplementary proceedings has not, however, extended
> beyond attempts to execute, or to guarantee eventual executability of, a federal
> judgment. We have never authorized the exercise of ancillary jurisdiction in a
> subsequent lawsuit to impose an obligation to pay an existing federal judgment on
> a person not already liable for that judgment. Indeed, we rejected an attempt to do
> so in *H.C. Cook Co. v. Beecher,* 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910).
> In *Beecher,* the plaintiff obtained a judgment in federal court against a corporation
> that had infringed its patent. When the plaintiff could not collect on the judgment,
> it sued the individual directors of the defendant corporation, alleging that, during
> the pendency of the original suit, they had authorized *358 continuing sales of the
> infringing product and knowingly permitted the corporation to become insolvent.
> We agreed with the Circuit Court's characterization of the suit as "an attempt to

2

make the defendants answerable for the judgment already obtained" and affirmed the court's decision that the suit was not "ancillary to the judgment in the former suit." *Id.,* at 498–499, 30 S.Ct., at 602. *Beecher* governs this case and persuades us that Thomas' attempt to make Peacock answerable for the ERISA judgment is not ancillary to that judgment. *Peacock v. Thomas*, 516 U.S. 349, 357–58, 116 S. Ct. 862, 868, 133 L. Ed. 2d 817 (1996).

Finally, the Clerk's Judgment does not specify "which of four" Carpenter Financial Groups are subject to the Clerk's Judgment. It does not specify whether it was an LLC or an INC, or Delaware or Connecticut. Therefore, CFG respectfully submits that the Charging Order in this matter should be vacated or dissolved, or in the alternative, that CFG be released pursuant to Rule 60(b)(5) as the Judgment against Petitioner CFG has been satisfied and paid in full.

## ARGUMENT

### I.    Legal Standard

Federal Rule of Civil Procedure 60(b) codifies the post-judgment remedies available to a party seeking relief from a final judgment and specifically contemplates the situation where "the judgment has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5). A court may amend its prior judgment to the extent it "has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5) dictates that when one defendant in a multi-defendant action settles, the non-settling defendants are entitled to credit the amount of the settlement against any remaining judgment. *See, e.g., Gerber v. MTC Elec. Techs. Co., Ltd.*, 329 F.3d 297, 303 (2d Cir. 2003) (*citing Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989)).

Notwithstanding whether a debtor expressly delegates an obligation to a third party, "a performance rendered by [a] third person that is bargained for and received by [a] claimant in satisfaction of [a] claim operates as a discharge of the debtor." 13 Corbin on Contracts §70.6; *accord Mathias v. Jacobs*, 238 F.Supp.2d 556, 571-72 (S.D.N.Y. 2002) ("[The claimant] is entitled to the benefit of only one full performance and one  satisfaction of a contractual debt; he cannot

collect twice to discharge the same obligation, whether payment is made by the promisor himself, by a third person, or by both."). "This common-sense precept of contract law does not require action by the debtor; if a third party negotiates with an obligee to pay the debt of an obligor, and the obligee accepts that payment, the obligor's debt is discharged. The obligee, as a matter of law and equity, is not entitled to double performance on the same contract." *In re Lehman Brothers Inc., Debtor,* 2016 WL 417594 at *6 (S.D.N.Y. July 6, 2016). *See, e.g., Okemo Mountain, Inc. v. United States Sporting Clays Ass'n,* 376 F.3d 102, 105 (2d Cir. 2004).

## II. The Charging Order Should Be Vacated Under Rule 60(b)(5) As The Judgment Has Been Satisfied Under the One Satisfaction Rule

A non-settling defendant is "entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages." *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989); *In re Masters Mates & Pilots Pension Plan*, 957 F.2d 1020, 1031 (2d Cir. 1992), and 15 U.S.C. §78u-4(f)(7)(B). In such cases, the Second Circuit has applied a "One Satisfaction Rule" rather than a "proportionate responsibility rule," affording a non-settling defendant a reduction equal to the amount of a prior settlement. *Singer* at 600. *See, also, In re Facebook, Inc.,* 674 F. App'x 37, 39-40 (2d Cir. 2016).

A judgment creditor must give nonsettling defendants credit for at least the amount of ***any*** settlement of common damages, because if it did not, plaintiffs could recover from both the settling and nonsettling defendants for the same damages. "A plaintiff may not recover twice for the same injury." *Phelan v. Local 305*, 973 F.2d 1050, 1063 (2d Cir. 1992), *citing Ostano Commerzanstalt v. Telewide Systems*, 880 F.2d 642, 649 (2d Cir. 1989) (double recovery puts plaintiffs in better position than had they not been injured). The "One Satisfaction Rule" also requires that nonsettling defendants receive credit for any amount actually paid by settling defendants for common

4

damages. Thus, the Second Circuit has struck down a judgment reduction provision that gave credit for the lesser of the amount paid or the proportion of fault. *Masters Mates* at 1031. "Absent a showing that damages are not common, a nonsettling defendant whose rights against settling defendants are to be barred is entitled to judgment reduction at least in the amount paid by all settling parties." *Id.*

The Second Circuit's "one satisfaction rule ... prohibits a plaintiff from recovering more than one satisfaction for each injury." *Gerber* at 303 (*quoting Singer* at 600); *see also BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1277 (11th Cir. 2008)("The one-satisfaction rule ... operates to prevent double recovery, or the overcompensation of a plaintiff for a single injury."). The Supreme Court has stated the same: "If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount. *See* Restatement (Second) of Torts §875 (1977)." *Honeycutt v. United States*, 137 S. Ct. 1626, 1631 (2017).

A series of cases in the Second Circuit have explained that the "One Satisfaction Rule" requires that nonsettling defendants receive credit for settling defendants' share of common damages, that is, damages for which both the settling and nonsettling defendants are responsible. Settlements have been approved when they provided a judgment reduction formula that gave nonsettling defendants credit for the greater of (1) "the settlement amount for common damages," or (2) the "proportionate share" of the settling defendants' fault as proven at trial. *Gerber* at 303. This "capped proportionate share" formula is acceptable because it "ensures that a judgment credit is at *least* the amount of the settlement for common damages" and therefore complies with the one satisfaction rule. *Id.* (emphasis in original). *See, also, In re Facebook, Inc.,* 674 F. App'x 37 (2d Cir. 2016), In such cases, the Second Circuit has applied a "One Satisfaction Rule" rather than a

"proportionate responsibility rule," affording a non-settling defendant a reduction equal to the amount of a prior settlement. *Id.,* quoting *Singer* at 600.

A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment. Under this rule, when a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant. *See, e.g., Hess Oil Virgin Islands Corp. v. UOP, Inc*., 861 F.2d 1197, 1208 (10th Cir. 1988); *U.S. Industries, Inc*. at 1236; *see also* Restatement (Second) of Torts §885(3), comments e & f.

New York law does not permit for double recovery. *Zarcone v. Perry*, 78 A.D.2d 70, 79, 434 N.Y.S.2d 437, 443 (1980), aff'd, 55 N.Y.2d 782, 447 N.Y.S.2d 248, 431 N.E.2d 974 (1981). Accordingly, Rule 60(b)(5) may be utilized to correct a judgment to prevent double recovery. *See, e.g., Torres–Troche v. Municipality of Yauco*, 873 F.2d 499, 501 (1st Cir.1989) (finding, on Rule 60(b)(5) motion, that award should be offset by previous settlement to prevent double recovery); *Sunderland v. City of Philadelphia*, 575 F.2d 1089, 1090–91 (3d Cir.1978) (finding district court erred in denying Rule 60(b)(5) motion because "a district court does not have discretion to require two satisfactions, and the opposing party has suffered no prejudice from the moving party's delay in raising the satisfaction issue."); *see also Philips Lighting Co. v. Schneider*, No. 05-CV-4820 SLT MDG, 2014 WL 4274182, at *12 (E.D.N.Y. Aug. 28, 2014) ("To the extent that Eltron's underlying obligations, and thus Schneider's corresponding secondary obligation, has been

reduced through settlement and/or payments by Eltron, Schneider's obligations should also be reduced.").

### III.    The Charging Order Violated the Three-Year Statute of Limitations under ERISA

As can be seen from the enclosed Affidavit by Sharon Siebert in the Massachusetts action Universitas brought against the Estate of Jack Robinson (see Exhibit Eight), she makes clear that Universitas knew the Charter Oak Trust was amended in January 2007 to include the 20% retention of proceeds by the Trust. As this Court knows, the Government always claimed that the Charter Oak Trust was never amended until *after* Sash Spencer died, and denied Mr. Carpenter's claims that the Trust ever did such an amendment *before* his death. In fact, and as the Affidavit unequivocally proves, the Plan Document *was* amended in January of 2007, and again in March of 2007 when Sash Spencer entered the Charter Oak Trust. The reason this is important is because Universitas has always claimed that Mr. Carpenter "stole" the funds, when it is clear from the Affidavit that the Plan was amended ***prior to*** Sash Spencer's death, and the Plan Documents have always shown that the primary beneficiary of all of the Charter Oak Trust policies was Grist Mill Capital. So, in acknowledging that Universitas knew about the 20% retention, this means that the claims by Universitas must also be reduced by $6 million, which is 20% of the $30 million.

The Court will also recall that this matches Mr. Carpenter's calculations submitted by the Government at trial in Government Exhibit 2225 attached as Exhibit Nine. More importantly, it is clear that the Sash Spencer applications were done some time prior to December of 2006, Mr. Carpenter was not indicted until December of 2013, and it was not until 2014 that Universitas brought its claim for getting the Charging Order issued based on the invalid Clerk's Judgment of August 12, 2014. The reason this is significant is because Sash Spencer died in 2008, and the original claims against the Charter Oak Trust were made in 2008 and 2009, which starts the three

7

year statute of limitations under ERISA, and as this Court knows, the Charter Oak Trust was always an ERISA welfare benefit trust.

Moreover, there is another problem with Universitas having a charging order for the Sash Spencer proceeds, as they were the illicit proceeds at the heart of the Money Laundering Counts of Mr. Carpenter's May 2014 Indictment. Therefore, if these were truly the proceeds of fraud, as determined by this Court's Verdict of June 06, 2014, then Universitas is not entitled to them because they were determined to be a fraud against Lincoln. In the alternative, if these are the proceeds of a legitimate welfare benefit trust, then bringing an action in Connecticut in 2014 was three years too late under the ERISA Statute of Limitations rule. Lastly, and as can be seen from Judge Swain's Order attached as Exhibit Two, under the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349 (1996), it would have been necessary for Universitas to establish separate grounds and separate jurisdiction for pursuing claims against whatever Carpenter Financial Group entity they were going after. Because Universitas did not do that in Connecticut or the Southern District of New York, the Charging Order is invalid as a matter of law, and should be dissolved and/or vacated for any of the above reasons.

Finally, not only did this Court determine that the Sash Spencer proceeds were the proceeds of fraud, Universitas does not come to this Court with the "clean hands" required of a suit in equity. Extensive discovery has proven that Mr. Carpenter did not amend the Charter Oak Trust document after Mr. Spencer's death (See Exhibit Eight Siebert's Aff. at ¶ 13) and that he did not use those proceeds to buy the Rhode Island Beach House as alleged by the Government in their fraudulent press releases. Discovery has also proven that not a dime of the Spencer proceeds went to fund the building at 100 Grist Mill Road, which is the subject of this invalid Charging Order. But the biggest revelation is the fact that neither Sharon Seibert (Sash Spencer's Mistress) nor her neighbor the

putative "Notary" Barbara Kniffen ever visited Sash Spencer while he was dying in the Intensive Care Unit in May 2008. This has been one big "Fraud on the Court" by Universitas and its Counsel Joseph Manson.

### IV. The Charging Order Should Be Vacated because CFG was never properly Served

As can be seen from Exhibit Ten, Petitioner CFG was never properly served under Rule 4(e) by hand or mailing to its official address as required by Connecticut State Law. See affidavit of service attached as Exhibit Ten showing that no CFG Entity was not served at any known address.

"A judgment obtained in the absence of *in personam* jurisdiction is void." *Orix Fin. Servs. v. Phipps,* 2009 WL 2486012, at *2 (S.D.N.Y. Aug. 14, 2009) (*quoting China Mariners Assur. Corp. v. M.T. W.M. Vacy Ash,* 1999 WL 126921, at *3 (S.D.N.Y. Mar. 9, 1999) (*citing Jaffe & Asher v. Van Brunt,* 158 F.R.D. 278, 279 (S.D.N.Y. 1994)). "Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction over a defendant." *Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.,* 8 F.Supp.2d 372, 375 (S.D.N.Y. 1998). A court lacks *in personam* jurisdiction where a judgment has been "obtained by defective service." *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 103 (1987). Accordingly, a judgment obtained by way of defective service is void for lack of personal jurisdiction and must be set aside as a matter of law." *Id.* (*citing Howard Johnson v. Wang,* 7 F.Supp.2d 336 (S.D.N.Y. 1998)). Rule 4(e) governs the procedure for service of individuals. This rule states that proper service may be effected by, *inter alia,* "following state law for serving a summons ... in the state where the district court is located or where service is made." Fed. R. Civ. P. 4.

Here, Universitas purported to have served Petitioner CFG with the Charging Order Request and Affidavit. *See* Affidavit of Service attached as Exhibit Ten showing CFG was not

served by hand or at any address that CFG has had an office. Universitas did not effect proper service on Petitioner CFG as none of the addresses listed in the Affidavit are valid locations for Petitioner CFG or any other CFG Entity. Since Universitas did not effect proper service under the Rules of the State of Connecticut, this Court did not have personal jurisdiction over Petitioner and accordingly, the Charging Order should be vacated and/or dissolved. *See, e.g., United States v. Crosland,* 2018 WL 3029038 (E.D.N.Y. June 18, 2018).

Proper service of process in this case was non-existent as Petitioner CFG was never served or made aware of the filings. Even assuming Petitioner had proper notice of the action, which clearly it did not (as this Court knows that Mr. Carpenter was in prison at the time), the Second Circuit has rejected the argument that "actual notice" is sufficient to cure improper service. *See National Development Co. v. Triad Holding Corp.,* 930 F.2d 253, 256 (2d Cir. 1991); *GMA Accessories v. BOP, LLC,* 2008 U.S. Dist. LEXIS 26120, at *7 (S.D.N.Y. 2008). S*ee, also, Ins. Corp. of Ireland v. Compagnie Des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) (regarding a federal court's acquisition of subject-matter jurisdiction, holding that the "consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings."). Therefore, this Court lacked personal jurisdiction and subject matter jurisdiction over CFG.

Since service of process is the means by which a court asserts jurisdiction to adjudicate the rights of a party, especially when the defendant was not a party to the original arbitration, a judgment is void if the defendant was not properly served because the court is powerless to enter judgment against that defendant. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84-87 (1988). This Motion must be granted if service of process was insufficient because "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service

of summons must be satisfied." *Omni Capital* at 104. Service of process must satisfy not only the rule under which service is made but also the constitutional requirement of due process. *Ackermann v. Levine*, 788 F.2d 830, 838 (2d Cir. 1986). To satisfy due process, the serving party must provide "notice reasonably calculated, ***under all circumstances***, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust, Co.*, 339 U.S. 306, 314 (1950) (emphasis added). This, clearly, did not happen because the Charging Order request and Affidavit were never properly served on Petitioner CFG or any version of CFG for that matter.

The requirement to direct the mailing to the attention of "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process is intended to ensure that the summons and complaint expeditiously reaches the appropriate decision maker in the organization." *Gowan v. HSBC Mortg. Corp. (USA) (In re Dreier LLP)*, 2011 WL 3047692, at *2 (Bankr. S.D.N.Y. July 22, 2011). Moreover, even if Universitas provided actual notice, ***it did not cure the insufficient service of process*** and confer personal jurisdiction. *See Triad Holding Corp.* at 256 (emphasis added). But, for the sake of this Motion to Vacate and Dissolve the Charging Order of October 27, 2015, this Court need only see that Universitas has been paid well more than the $11,140,000 that the alleged Judgment Debtor CFG owes, so therefore this Court should discharge, dissolve, and vacate the Charging Order as the law of the Second Circuit is clear that no matter what third party settles with Universitas, those amounts accrue to the benefit of Petitioner as a set-off under the "One Satisfaction Rule." *See, e.g.*, *Gerber v. MTC Elec. Techs. Co., Ltd.*, 329 F.3d 297, 303 (2d Cir. 2003) (*citing Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989)).

CFG submits that not only was service of process ineffective and improper in this case based on well-established Connecticut law and Second Circuit federal law, it did not occur at all. Attached as Exhibit Three is the Certificate of Service that was filed as Dkt. #7 in this case listing six address: four for Grist Mill Partners – all of which are incorrect – and two for CFG – both being the corporate agent of the company, which is not the agent for service of process for CFG. But even if they were, it still does not constitute proper service under Connecticut law. Unlike its federal counterpart, Connecticut law provides that a lawsuit is "brought" not upon the filing of the complaint, but upon service of process on the defendant. *See e.g. Kotec v. Japanese Educ. Inst.,* 321 F.Supp.2d 428, 431 (D.Conn. 2004) ("It is well settled that in Connecticut (unless otherwise specified by the legislature) a case is considered 'brought' for purposes of a statute of limitations on the date of service of the complaint upon the defendant and that, in a federal diversity action, such state rules control and not F.R.C.P. 3."). Thus, the CPLA's limitations period is not tolled in a federal diversity action until the defendant is served with a copy of the summons and complaint. *See Converse v. General Motors Corp.,* 893 F.2d 513, 515–16 (2d Cir. 1990) (affirming the dismissal of a complaint filed before, but served after, the expiration of the limitations period and stating "**the Connecticut Supreme Court has long adhered to the rule that only actual service upon the defendant will satisfy the state statute of limitations**").

Just as in *Converse*, in this case there was no service of process at the time the complaint was filed or anytime thereafter, and therefore the complaint should be dismissed as the statute of limitations period has clearly passed. Here, CFG did not file any waiver of service form and as a result of Universitas' failure to properly serve CFG, the suit never formally "commenced" under Connecticut law and the statute of limitations governing Universitas' claims was never tolled. The three-year limitations period, which continued to run while this litigation proceeded,

has long since expired in October 2012 at the latest and therefore Universitas' claims should be dismissed.

In this case, the CFG that owns Grist Mill Partners, LLC, which in turn owns the property at 100 Grist Mill Road, is a Delaware corporation doing business in Connecticut, and an officer of the company should have been served or a mailing should have been done to a valid address. Instead, Universitas sent service to 226 Mayapple Road, which is not only the incorrect address, but it has never been the address for Mr. Carpenter, let alone CFG. Similarly, Universitas never served anything to 100 Grist Mill Road or Mr. Carpenter's home address, despite the fact that they claim CFG was a criminal enterprise that ran other criminal enterprises from 100 Grist Mill Road. The reason for this is clear: Universitas knew that as of June 2014, Mr. Carpenter had reported to prison and Curaleaf took over 100 Grist Mill Road, so they failed to send anything to 100 Grist Mill Road or Mr. Carpenter's home address and instead filed service of processes to addresses unrelated to CFG.

For this reason alone, this Court should dismiss all claims against CFG and dissolve the Charging Order because Universitas never properly served CFG in violation of the laws of Connecticut and the Second Circuit.

**CONCLUSION**

WHEREFORE, because the Petitioner has received through payments, along with the settlements from various other Judgment Debtors and Third Parties, more than the full amount of the $11,140,000 Charging Order, and that through the Second Circuit's "One Satisfaction Rule," any claims against CFG have now been satisfied, CFG moves this Court to immediately discharge and release CFG from, and/or vacate, the October 27, 2015 Charging Order which should be dissolved and/or vacated by this Court.

Dated: August 18, 2022

Respectfully Submitted
Carpenter Financial Group, Inc.,

*/s/ Jonathan J. Einhorn*

JONATHAN J. EINHORN
129 WHITNEY AVENUE
NEW HAVEN, CT 06510
FEDERAL BAR NO. ct00163
EINHORNLAWOFFICE@GMAIL.COM

**CERTIFICATION**

I hereby certify that on this 18th day of August, 2022, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jonathan J. Einhorn*

JONATHAN J. EINHORN
129 WHITNEY AVENUE
NEW HAVEN, CT 06510
FEDERAL BAR NO. ct00163
EINHORNLAWOFFICE@GMAIL.COM

# **EXHIBIT 4**

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

------------------------------------------------------

**UNIVERSITAS EDUCATION, LLC,**      :

**Plaintiff,**      :     **Case No. 14-mc-00125-RNC**

      :

**-against**      :     **Hon. Robert N. Chatigny**

      :

**NOVA GROUP, INC., et al.,**      :     **September 23, 2022**

**Defendant.**      :

------------------------------------------------------

## REPLY IN SUPPORT OF MOTION TO VACATE
## AND/OR RELEASE CARPENTER FINANCIAL GROUP, INC.
## FROM CHARGING ORDER OF OCTOBER 27, 2015

Pursuant to Federal Rules of Civil Procedure Rule 60(b)(5), Petitioner and alleged Judgment Debtor Carpenter Financial Group, Inc. (hereinafter "CFG") respectfully submits this reply to Universitas's Response [Dkt 37] to CFG's Motion to Release CFG from and/or Vacate [Dkt 33] the October 27, 2015 Charging Order [Dkt 8]. In summary, the Motion to Vacate should be granted because: (1) CFG was not properly served – the law firm employee's affidavit stating documents were provided to Federal Express and the lack of documents establishing actual service by Federal Express  indisputably establish this; (2) the judgment against Grist Mill Capital is satisfied under the One Satisfaction  rule because Universitas's collections exceed the $11,140,000 Order; and (3) the charging order violated the three-year statute of limitations under ERISA. CFG would respectfully show the Court as follows:

## RESPONSE TO INTRODUCTION

Universitas begins by falsely representing to the Court on page 1 of the Response that the arguments in CFG's motion were made previously, hoping that this will persuade to give the Motion to Vacate short shrift. While Universitas does not dispute that Universitas's collections exceed the judgment amount, Universitas argues that equity somehow permits the Court to ignore

the One Satisfaction Rule. Universitas's argument fails because Universitas collected $12,000,000 on February 27, 2018 from WSFS Bank for Christiana Bank, which was the Insurance Trustee for the Charter Oak Trust [Dkt 33-5]; $4,487,007.81 on or about June 19, 2018 from the Grist Mill Trust [Dkt 33-6]; $900,333.61 from BPETCO [Dkt 33-7]; and $343,031.52 and $450,000 from USAA [Dkt 33-8, 33-9].

### RESPONSE TO FACTUAL BACKGROUND

Instead of addressing or asserting facts relevant to this Court's decision, Universitas instead begins its discussion on page 2 by demonizing Mr. Carpenter, and Universitas continues its harangue until page 5 of the Response. Notably, however, Universitas makes a number of false assertions. First, on page 2 and then again on page 6 of the Response [Dkt 37], Universitas falsely and intentionally asserts that Universitas was the beneficiary of the policies. In fact, the case cited by Universitas provides that the policies were placed into the Charter Oak Trust Welfare Plan (the "Plan") and that Universitas was named a beneficiary of the Plan. *Universitas Educ., LLC v. Nova Group, Inc.*, 784 F.3d 99, 100 (2d Cir. 2015). Of course, if Universitas wishes to continue to repeat and rely upon this falsehood (Universitas has intentionally made the same false statement in other courts), then Universitas is admitting that Universitas was not a beneficiary of the Plan and Universitas should never have received an arbitration award and judgment confirming the arbitration award, without which there should be no charging order.

On page 4, Universitas summarily concludes that the motion requesting a charging order and "relevant documents" were served upon CFG, and Universitas points this Court to Document #7 – the so-called "Affidavit of Service" by an employee of the law firm that represented Universitas. [Dkt 7] For simple reasons, Universitas avoids discussing the facts stated in the affidavit beyond this conclusory statement because the affidavit is insufficient to establish service

on CFG. While the affidavit was filed in this Court on October 16, 2015 and states the law firm employee deposited documents with Federal Express, there is nothing in the record establishing the documents were actually delivered – there is no actual proof of service and return of service. [Dkt 7] Additionally, Universitas fails to explain how depositing documents with Federal Express is proper service under federal law and Connecticut law.

On page 5 of the Response [Dkt 37], Universitas accurately states that Judge Swain rejected the argument that the judgment was required to be signed by Judge Swain. This is, however, not the whole truth – an appeal was filed in the Second Circuit regarding this ruling. It is undisputed that the order is not signed by Judge Swain. [Dkt 330-3] On page 6, Universitas takes issue with Judge Swain's March 31, 2020 order that dismisses Universitas's requests for entry of judgment. To be clear, Judge Swain wrote that if Universitas chose to file a motion:

> Any such motion must address the legal basis, if any, for the Court's exercise of personal jurisdiction over the non-party entities named in the above referenced letter motions, whether such a motion is the appropriate procedural mechanism by which the Court can enforce its Memorandum Order confirming the arbitration award in this case (Docket Entry No. 40) against non-parties to the underlying litigation, and whether such motion practice is consistent with the limitations of ancillary jurisdiction as described in *Peacock v. Thomas*, 516 U.S. 349 (1996), and the Court's order interpreting *Peacock* and denying Plaintiff's prior turnover motion in this case. See Docket Entry No. 545.

[Dkt 33-4] In other words, Universitas was instructed to not to file a motion unless Universitas could establish that Judge Swain's court had subject matter jurisdiction. Unsurprisingly, Universitas has not filed a new motion in Judge Swain's court.

## RESPONSE TO ARGUMENT

On page 7 of its Response [Dkt 37], Universitas argues that there are no grounds for relief under Rule 60(b). While Universitas points to the challenge to the Southern District of New York judgment, Universitas ignores the fact that CFG was not properly served. Further, Universitas concludes that the $12 million payment by WSFS, the insurance trustee, should not be applied to the judgment, but the One Satisfaction Rule applies because Universitas is entitled to one payment for Universitas's injury – Universitas has been paid. Universitas's argument that it somehow inequitable for the $12 million Universitas was paid by WSFS to be applied against the judgment is truly hollow – the One Satisfaction Rule requires that the funds Universitas received by applied against the judgment.

**A.      Universitas's Comity Argument Lacks a Necessary Fact – CFG Is Not a Party in the Matter Before Judge Meyer.**

On page 8 of the Response, Universitas argues that this Court should abstain from addressing the One Satisfaction Rule on comity grounds. *Terket v. Lund*, 623 F.2d 29, 33 (7th Cir. 1980) (providing that courts should seek to avoid the "confusion and waste of time that might flow from putting the same issues before two courts at the same time."). Universitas omits a key point however – CFG is not a party to the case before Judge Meyer. Further, Universitas fails to point the documents filed in Judge Meyer's court where the One Satisfaction Rule is argued – so exactly where is the One Satisfaction Rule pending?

On page 10, Universitas argues that "certain entities" are liable for Universitas's attorneys' fees and that Mr. Carpenter has not paid for the attorneys' fees – critically, Universitas does not assert that CFG is responsible for Universitas's attorneys' fees. This argument is a red herring. In other words, what does some unidentified entities' potential liability for attorneys; fees have to do with CFG?

**B.** **The One Satisfaction Rule Applies Because the WSFS Payment Is for "Common Damages.**

On page 11 of the Response [Dkt 37], Universitas admits that "the [$12 million] WSFS settlement was for breach of fiduciary duty for allowing Mr. Carpenter to steal $30.6 million." Universitas also admits on page 11 that the "one recovery rule" holds that a settlement from one defendant entitles other defendants to a corresponding credit against the judgment against them when the settlement and the judgment represent common damages. *See Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989). Here, the injury or damages Universitas claims are common – Universitas was not paid by the Plan after the Plan received the insurance policies proceeds. WSFS was the insurance trustee [Dkt 33-5], and Universitas sued WSFS because, in Universitas's own words, WSFS failed to stop Mr Carpenter. Obviously, these are "common damages."

Sensing the obvious – that the One Satisfaction Rule requires a $12 million credit against the judgment – Universitas tries to distract the Court with a discussion about the collateral source rule. The theory behind the collateral source rule is that a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy. *See* Restatement (Second) of Contracts § 347 cmt. e. The collateral source rule, rooted in New York's common law, provides, as a general rule, that an injured plaintiff's damages should not be mitigated or reduced based on payments the injured plaintiff received from a source wholly independent of and collateral to the wrongdoer. *See Healy v. Rennert*, 9 N.Y.2d 202, 173 N.E.2d 777, 213 N.Y.S.2d 44 (1961); *Rutzen v. Monroe Cty Long Term Care Program, Inc.*, 104 Misc. 2d 1000, 1001, 429 N.Y.S.2d 863, 864 (Sup. Ct. 1980); *see also Applehead Pictures LLC v. Perelman*, 80 A.D.3d 181, 191, 913 N.Y.S.2d 165, 173 (1st Dep't 2010) (stating: "The 'collateral source rule' requires the tortfeasor to bear the full cost of the injury he or she has caused regardless of any benefit the victim has received from an independent or 'collateral' source") (citations

omitted). "In New York, the [collateral source] doctrine has been limited to collateral payments from disability compensation, pension funds, retirement allowance or insurance which is procured by the injured party." *In re Emergency Beacon Corp.*, 48 B.R. 341, 350 (S.D. N. Y Bktcy. 1985) (citing *Szybura v. City of Elmira*, 28 A.D.2d 1154, 1155, 284 N.Y.S.2d 190, 192 (3rd Dep't 1967)).

On page 12, Universitas quotes *Doe v. Darien Bd. of Educ.*, No. 3:11cv1581 (JBA), 2015 U.S. Dist. LEXIS 158261, at *6-*7 (D. Conn. Nov. 24, 2015) for the statement that "A 'collateral source' is usually defined as a payment that is independent of the defendant and one that the defendant played no part in creating." (cit. omitted). While Universitas accurately quotes this sentence, Universitas intentionally omits the very next sentence in this opinion: "Typically, the doctrine applies to such independent sources as insurance policies maintained by plaintiff or an innocent third party, employment wages and benefits, gratuities, social security benefits, and welfare payments." *Doe v. Darien Bd. of Educ.¸* at *7 (quoting *N. Atl. Fishing, Inc. v. Geremia*, 153 B.R. 607, 611 (D.R.I. 1993)).

Here, WSFS was not an insurer and WSFS was not paying Universitas pursuant to an insurance policy and Universitas offers no evidence that WSFS was an insurer or some other type of "collateral source"; instead, WSFS was an insurance trustee. The collateral source rule is inapplicable, and, contrary to Universitas's argument on page 13, is not a windfall for Mr. Carpenter (who, again, is not a party) or CFG. Significantly, moreover, if Universitas was the "Beneficiary" of the Charter Oak Trust Welfare Benefit Plan (the "Plan") and Christiana Bank (WSFS) was the Trustee of the Plan, then the Plan was in fact a benefit plan covered by ERISA's extended reach. But, of course, this Court realizes that the United States Supreme Court's decision in *Peacock v. Thomas* is based upon the famous Connecticut opinion, *H.C. Cook v. Beecher*, 217 U.S. 497 (1910).

**C.      Universitas Fails to Provide the Necessary Support of its Res Judicata or Issue Preclusion.**

On page 14 of its Response [Dkt 37], Universitas argues that CFG's argument is barred by res judicata or issue preclusion. Universitas asks this Court to presume that CFG is in privity with Mr. Carpenter and provides no supporting evidence. Further, CFG is not a party to the motion that is the subject of Judge Swain's denial that Universitas points to. *Universitas Educ., LLC v. Nova Grp., Inc.*, 2021 U.S. Dist. LEXIS 185733 (S.D. N.Y 2021).

CFG is arguing that the registered judgment was required to be signed by Judge Swain. [Dkt 33-1] While Judge Swain rejected this argument, as stated above this issue is being appealed. In summary, Rule 58 of the Federal Rules of Civil Procedure limits a clerk's authority to execute judgments without the Court's approval. Fed. R. Civ. P. 58(b)(2). The judgment document that Universitas registered is not signed by Judge Swain. [Dkt 1] Additionally, the registered judgment contained more than an award of costs and a sum certain, as the registered judgment: (1) denied the request for permanent injunction, (2) denied the request for equitable relief, (3) terminated the temporary injunction; and (4) denied the request to modify the temporary injunction. [Dkt 1] Judge Swain's signature was required as a result. Fed. R. Civ. P. 58(b)(2).

**D.      Universitas Is Misstating CFG's Arguments.**

On page 16 of the Response [Dkt 37], Universitas asserts that CFG is attacking the judgment entered by Judge Swain. Yes, the lack of Judge Swain's signature on the registered judgment is being argued (which is, again, the subject of an appeal and must be raised in this Court so that this issue is properly presented should the Second Circuit disagree with Universitas and Judge Swain while this motion is pending and Universitas failed to provide the Court with the factual necessary support for Universitas's res judicata and issue preclusion argument). However, contrary to Universitas's argument, CFG is not arguing that Judge Swain lacked subject matter,

but is instead arguing that this Court lacked subject matter jurisdiction. Further, Universitas argues

that Judge Swain has ruled on the statute of limitations and One Satisfaction Rule issues – notably,

Universitas wholly fails to point this Court to where Judge Swain made such rulings.

**E.      Universitas Fails to Establish That This Court Has Jurisdiction.**

On page 17, Universitas first argues that this Court has ancillary jurisdiction. Universitas

ignores this language from *Peacock* that affirmatively eviscerates Universitas's argument*:*

> We have never authorized the exercise of ancillary jurisdiction in a subsequent
> lawsuit to impose an obligation to pay an existing federal judgment on a person not
> already liable for that judgment. Indeed, we rejected an attempt to do so in *H.C.
> Cook Co. v. Beecher*, 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910).

*Peacock v. Thomas*, 516 U.S. 349, 357–58 (1996). Universitas's reliance upon *Epperson* is also

misplaced, as *Epperson* involved a fraudulent transfer claim that was held to be within the scope

of ancillary jurisdiction. *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100, 106 (2nd Cir.

2001). This is not a fraudulent transfer case. Instead, because this is a "post-judgment proceeding[]

to collect an existing judgment and proceedings, such as claims of alter ego liability and veil-

piercing, that raise an independent controversy with a new party in an effort to shift liability"

ancillary jurisdiction is not present. *Epperson*, 242 F.3d at 106.

Next, Universitas takes a stab at diversity jurisdiction on page 17. Satisfaction of the

requirement of diversity is "determined as of the date that suit is filed - the 'time-of-filing' rule."

*Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc*., 166 F.3d 59, 62 (2d Cir. 1999).

Universitas points to a March 4, 2013 unpublished opinion issued on March 4, 2013 for support

that Universitas and its members are New York residents. *Universitas Educ., LLC v. Nova Group,

Inc*., 513 Fed. Appx. 62, 63 (2nd Cir. 2013).  This is wholly inadequate support – Universitas filed

the registered judgment 20 months later on November 6, 2014. [Dkt 1]

At the bottom of page 17, Universitas also points to an "Exhibit 4" as evidence of CFG's citizenship for diversity purposes, but this exhibit is not attached to Universitas's Response. In conclusion, Universitas failed to establish that this Court has subject matter jurisdiction.

**F.      CFG Was Not Properly Served with Process for Multiple Reasons.**

On page 18, Universitas concludes by arguing that CFG was properly served with process. Where is the summons addressed to CFG? *See* FED. R. CIV. P. 4. It isn't on the Court's docket.

How was CFG "served" – by an employee of Universitas's law firm? Where does federal law or Connecticut law permit this? Rule 4 permits a person that is not a party to serve a summons, and a party's law firm employee may not serve the subpoena.

Where's the proof of service? The law firm employee affidavit states documents were provided to Federal Express. [Dkt 7] Proof of service must be filed. FED. R. CIV. P. 4(l). Where's the proof of delivery by Federal Express – it isn't attached to the law firm employee affidavit. [Dkt 7]

**G.      Statute of Limitations.**

As this Court is aware, Judge Scheindlin held in 2015 that Universitas's claims against another third-party, TD Bank, N.A., were barred by multiple statutes of limitations. *Universitas Education, LLC v. T.D. Bank, N.A.*, 15-cv-5643 (SAS), 2015 U.S. Dist. LEXIS 170264, 2015 WL 9304551 (S.D. N. Y. Dec. 21, 2015) (filed in this case at Dkt. 17, Exh 2). Because CFG cannot do a better job than Judge Scheindlin of explaining the various statute of limitations violations by Universitas in this case, CFG defers to Judge Scheindlin's decision. [Dkt 17, Exh. 2] As for the ERISA three-year statute of limitations issue, the Plan was the subject of a DOL raid in May of 2011, whereby the DOL stated that it had jurisdiction because the Charter Oak Trust Welfare Benefits Plan was in fact an ERISA plan and thus subject to ERISA's requirements. Universitas's

arguments to the contrary are clearly unavailing as the unlawful DOL raid on May 26, 2011 is subject to yet another appeal by the Government to the Second Circuit of Judge Underhill's rulings in Mr. Carpenter's favor. *See Carpenter v Allen*, Case No. 22-1057 (2nd Cir. 2022).

## CONCLUSION

WHEREFORE, because the Petitioner has received through payments, along with the settlements from various other Judgment Debtors and Third Parties, more than the full amount of the $11,140,000 Charging Order, and that through the Second Circuit's "One Satisfaction Rule," any claims on CFG have now been satisfied, CFG moves this Court to release CFG from and/or vacate, the October 27, 2015 Charging Order be dissolved and/or vacated by this Court.

Dated: September 23, 2022
        Respectfully Submitted
        Carpenter Financial Group, Inc.,

        By:  /s/ Jonathan J. Einhorn
        JONATHAN J. EINHORN
        129 WHITNEY AVENUE
        NEW HAVEN, CT 06510
        FEDERAL BAR NO. ct00163
        EINHORNLAWOFFICE@GMAIL.COM

## CERTIFICATION

I hereby certify that on this 23rd day of September, 2022, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.

        By: */s/ Jonathan J. Einhorn*
        JONATHAN J. EINHORN

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **UNIVERSITAS EDUCATION, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No.: 1:11-cv-1590-LTS-HBP** |
| | § | |
| **NOVA GROUP, INC., as trustee, sponsor,** | § | |
| **and fiduciary of THE CHARTER OAK** | § | |
| **TRUST WELFARE BENEFIT PLAN, et al.,** | § | |
| **Defendants.** | § | |
| | | |
| **NOVA GROUP, INC., as trustee, sponsor,** | § | |
| **and fiduciary of THE CHARTER OAK** | § | |
| **TRUST WELFARE BENEFIT PLAN,** | § | |
| **Plaintiff,** | § | |
| | § | **No.: 1:11-cv-8726-LTS-HBP** |
| **v.** | § | |
| | § | |
| **UNIVERSITAS EDUCATION, LLC, et al.,** | § | |
| **Defendants.** | § | |

**OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS
AND STATEMENT IN SUPPORT OF
ROGER STAVIS, ESQ. AND KEVIN BROWN, ESQ.**

**TO THE HONORABLE JUDGE LAURA TAYLOR SWAIN, MAY IT PLEASE
THE COURT:**

**NOW COMES THE DEFENDANT IN THIS CASE**, Grist Mill Capital LLC
(Delaware) in support of the Attorneys from Mintz & Gold, Roger Stavis, Esq. and
Kevin Brown, Esq. to oppose the frivolous motion for sanctions made by the Counsel
for Universitas.

**PRELIMINARY STATEMENT**

As this Court is well aware, Universitas uses sanctions motions and threats of
sanctions repeatedly as part of Universitas's litigation strategy. In fact, it was Roger
Stavis that "won" for Nova Group Inc. in 2015. But a claim for sanctions should never

1

be about litigation strategy or "winning and/or losing" as that would have a chilling effect on the entire judicial process. Nor are sanctions about being "right and/or wrong." In fact, Universitas's motion for sanctions seeks an award based upon a withdrawn motion – Universitas's motion is clearly unsupportable.

Further, the attorneys here should not be sanctioned for relying upon binding precedent that there is no "reasonable time" requirement. While the Second Circuit disagreed, as is certainly its right, the holding in the opinion does not support an award of sanctions.

For example, the Supreme Court's statements in *Buck v. Davis*,[1] where an innocent Defendant was convicted and sentenced to death by a Texas jury in 1999 and Mr. Buck had exhausted all of his legal remedies by 2006, which was then followed by a Rule 60(b)(6) Motion in 2014 (eight years after exhaustion of all legal remedies) and won in 2017. As another example, and as discussed below, Justice Sotomayor emphasized that Rule 60(b)(6) is alive and well in *Kemp v. United States* 142 S.Ct. 1856 (2022).

Moreover, as Judge Scheindlin stated in her scholarly opinion ruling against Universitas in favor of TD Bank in December of 2015 (see Exhibit 1, Order), Universitas knew the money was all gone in October of 2009, so any Universitas lawsuit against anyone for any reason after October 2012 would be time-barred by the applicable Statutes of Limitations.

---

[1] 580 U.S. 100, 126, (2017).

But once again – the imposition of sanctions should not be about "Right and/or Wrong" or "Winning and/or Losing" – the imposition of sanctions should be reserved for those attorneys who are wasting the Court's time and valuable resources like Mr. Manson who is clearly on a personal frolic and left his clients a long time ago when they collected a judgement against WSFS/Christiana Bank that was the Insurance Trustee of an ERISA Plan known as the Charter Oak Trust Welfare Benefit Plan. The ERISA Preemption Clause also clearly precluded any type of lawsuit after October 2012 as well.

Attorneys Stavis and Brown are well-respected, principled attorneys that represented GMC – Delaware within the boundaries of proper advocacy. Attorneys Brown and Stavis should not be sanctioned.

## I. THERE IS NO REASONABLE TIME-LIMIT IN BRINGING A MOTION PURSUANT TO RULE 60(b)(6)

Justice Sotomayor made clear in her concurrence in *Kemp* that the 2022 majority opinion in *Kemp* did not affect the ability of a Defendant to pursue justice through a Rule 60(b)(6) Motion brought at any time:

> "First, I join the Court's opinion with the understanding that nothing in it casts doubt on the availability of Rule 60(b)(6) to reopen a judgment in extraordinary circumstances, including a change in controlling law. See, *e.g., Buck v. Davis*, 580 U.S. 100, 126, (2017) (concluding that the petitioner was "entitle[d] to relief under Rule 60(b)(6)" because of a change in law and intervening developments of fact); ("[A] motion might contend that a subsequent change in substantive law is a 'reason justifying relief,' Fed. Rule Civ. Proc. 60(b)(6), from the previous denial of a claim"); *Polites v. United States*, 364 U.S. 426, (1960) (leaving open that a "clear and authoritative change" in the law governing judgment in a case may present extraordinary circumstances). Today's decision does not purport to disturb these settled precedents."

*Kemp v. United States*, 142 S. Ct. 1856, 1865 (2022).

In fact, Justice Sotomayor cited the Supreme Court's decision in *Buck v. Davis* 580 U.S. 100, 126 (2017) for that very point. In *Buck*, the Defendant was found guilty and sentenced to death in 1999, had exhausted all his legal remedies in 2006, and then brought his Rule 60(b)(6) Motion in 2014, and the motion was ultimately granted by the Supreme Court in 2017:

> "A Texas jury convicted petitioner Duane Buck of capital murder. Under state law, the jury could impose a death sentence only if it found that Buck was likely to commit acts of violence in the future. Buck's attorney called a psychologist to offer his opinion on that issue. The psychologist testified that Buck probably would not engage in violent conduct. But he also stated that one of the factors pertinent in assessing a person's propensity for violence was his race, and that Buck was statistically more likely to act violently because he is black. The jury sentenced Buck to death. Buck contends that his attorney's introduction of this evidence violated his Sixth Amendment right to the effective assistance of counsel. This claim has never been heard on the merits in any court, because the attorney who represented Buck in his first state postconviction proceeding failed to raise it. In 2006, a Federal District Court relied on that failure—properly, under then-governing law—to hold that Buck's claim was procedurally defaulted and unreviewable. In 2014, a full eight years later, Buck sought to reopen that 2006 judgment by filing a motion under Federal Rule of Civil Procedure 60(b)(6). He argued that this Court's decisions in *Martinez v. Ryan,* 566 U.S. 1, (2012), and *Trevino v. Thaler,* 569 U.S. 413 (2013), had changed the law in a way that provided an excuse for his procedural default, permitting him to litigate his claim on the merits. In addition to this change in the law, Buck's motion identified ten other factors that, he said, constituted the "extraordinary circumstances" required to justify reopening the 2006 judgment under the Rule. See *Gonzalez v. Crosby,* 545 U.S. 524, 535, (2005). The District Court below denied the motion, and the Fifth Circuit declined to issue the certificate of appealability (COA) requested by Buck to appeal that decision. We granted certiorari, and now reverse." *Buck v. Davis*, 580 U.S. 100, 104–05, (2017)

"Buck's conviction and sentence were affirmed on direct appeal. *Buck v. State,* No. 72,810 (Tex. Crim. App., Apr. 28, 1999). His case then entered a labyrinth of state and federal collateral review, where it has wandered for the better part of two decades.   Buck filed his first petition for a writ of habeas corpus in Texas state court in 1999. The four claims advanced in his petition, however, were all frivolous or noncognizable. *See Ex parte Buck,* No. 699684–A (Dist. Ct. Harris Cty., Tex., July 11, 2003), pp. 6–7. The petition failed to mention defense counsel's introduction of expert testimony that Buck's race increased his propensity for violence." *Buck v. Davis*, 580 U.S. 100, 108 (2017)

"Buck brought his Rule 60(b) motion under the Rule's catchall category, subdivision (b)(6), which permits a court to reopen a judgment for "any other reason that justifies relief." Rule 60(b) vests wide discretion in courts, but we have held that relief under Rule 60(b)(6) is available only in "extraordinary circumstances." *Gonzalez,* 545 U.S., at 535, 125 S.Ct. 2641. In determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 864, (1988).  In the circumstances of this case, the District Court abused its discretion in denying Buck's Rule 60(b)(6) motion. The District Court's conclusion that Buck "ha[d] failed to demonstrate that this case presents extraordinary circumstances" rested in large measure on its determination that "the introduction of any mention of race"—though "ill[ ]advised at best and repugnant at worst"—played only a "*de minimis* " role in the proceeding.  The Fifth Circuit, for its part, failed even to mention the racial evidence in concluding that Buck's claim was "at least unremarkable as far as [ineffective assistance] claims go." . But our holding on prejudice makes clear that Buck may have been sentenced to death in part because of his race. As an initial matter, this is a disturbing departure from a basic premise of our criminal justice system: Our law punishes people for what they do, not who they are. Dispensing punishment on the basis of an immutable characteristic flatly contravenes this guiding principle. As petitioner correctly puts it, "[i]t stretches credulity to characterize Mr. Buck's [ineffective assistance of counsel] claim as run-of-the-mill.""

*Buck v. Davis*, 580 U.S. 100, 123–24 (2017).

Respectfully, if the defendant in *Buck* was permitted to file a Rule 60(b)(6)

motion fifteen years after he was found guilty of murder, there is no time limit when

a motion is filed in the interests of justice. The defendant in *Buck* cited only two

supporting authorities, while in this case Attorney Brown cited no less than six major

changes in the law regarding when a company may be sued.

## II. THERE IS NO TIME-LIMIT WHATSOEVER IN BRINGING A MOTION PURSUANT TO RULE 60(b)(4)

While the Second Circuit disagreed in its opinion regarding this case, prior

precedent holds that there is no "time limit" in bringing a Rule 60(b)(4) Motion.

There is no Reasonableness Requirement because this is a Rule 60(b)(4)

Motion. As recently as 2021, the Second Circuit wrote "'[a] motion to vacate a default

judgment as void' under Rule 60(b)(4), however, usually 'may be made at any time.'"

*Gater Assets Ltd. v. Moldovagaz*, 2 F.4th 42, 53 (2d Cir. 2021) (quoting *Grace v. Bank*

*Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 190 (2d Cir. 2006).

> "In fact, it has been oft-stated that, for all intents and purposes, a motion
> to vacate a default judgment as void 'may be made at any time.'" *State*
> *St. Bank [& Trust Co. v. Inversiones Errazuriz Limitada]*, 374 F.3d
> [158], 179 [(2d Cir. 2004)] (quoting *Beller & Keller v. Tyler*, 120 F.3d 21,
> 24 (2d Cir.1997)). *Grace*, 443 F.3d at 190; *Irvin v. Harris*, 944 F.3d 63,
> 67 n. 3 (2nd Cir. 2019); *see "R" Best Produce, Inc. v. DiSapio*, 540 F.3d
> 115, 123–24 (2d Cir 2008) (quoting Second Circuit precedent from 2003,
> 1998, 1997 and 1963, holding the Rule 60(b)(4) motion was not
> untimely). "'A defendant is always free to ignore the judicial
> proceedings, risk a default judgment, and then challenge that judgment
> on jurisdictional grounds.'" *DiSapio*, at 123 (quoting *Insurance Corp. of*
> *Ireland, [Ltd. v. Compagnie des Bauxites de Guinee*], 456 U.S. 694 [, 706
> (1982)]; *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525
> (1931)).

*Gater Assets Ltd.,* 2 F.4th at 53.

Other circuits also hold that there is no reasonableness requirement for Rule

60(b)(4) motions, a partial list includes: *Bell Helicopter Textron, Inc. v. Islamic*

*Republic of Iran*, 734 F.3d 1175, 1179 (D.C. Cir. 2013); *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 n.9 (10th Cir. 1979) (void judgment is a nullity, therefore motion is filed within a reasonable time). Thus, counsel's statement that this appeal fits within the exception is accurate. Finally, the sole reference to a "diligence requirement" under Rule 60 is located in Rule 60(b)(2) and is inapplicable because the motion at issue is a Rule 60(b)(4) motion.

Further, because the Judgment under dispute was either "Void" or "not Void" and if the judgment was Void, then this Court has no discretion, it must vacate the judgment that was Void:

> "Irvin argues on appeal that the district court's judgment is void under Federal Rule of Civil Procedure Rule 60(b)(4) because it violated due process. In particular, he argues that (1) the class was not adequately represented, and that (2) the district court was required to provide notice to the class or conduct a fairness hearing. Because we agree with Irvin's first argument, we do not address the second. Generally, we review a district court's ruling on a Rule 60(b) motion for abuse of discretion. **But when we consider a Rule 60(b)(4) motion challenging a judgment obtained without due process, "a deferential standard of review is not appropriate because if the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)."** *Central Vt. Pub. Serv. Corp. v. Herbert*, **341 F.3d 186, 189 (2d Cir. 2003) Indeed, Rule 60(b)(4) "is unique ... because relief is not discretionary and a meritorious defense is not necessary."** *Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 733 n.3 (2d Cir. 1980)".

*Irvin v. Harris*, 944 F.3d 63, 68 (2d Cir. 2019).

## III. CHANGES TO THE LAW REGARDING JURISDICTION SUPPORT THE RULE 60(B) MOTION

A number of famous personal jurisdiction cases came out after the Universitas claim began in November of 2013. The Second Circuit's decision in *Brown v. Lockheed*

and the Supreme Court's decision in *Daimler*, *Walden v. Fiore*, and *Bristol-Myers Squibb* represent new major changes in the controlling law that Justice Sotomayor described as support for a Rule 60(b) motion. As stated in the Second Circuit's recent decision in *Siasia v. FIFA*:

> "There are two types of personal jurisdiction that a court may exercise over a party: general jurisdiction and specific jurisdiction. A court "may assert [general] jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman* ("*Daimler*"), 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "[F]or a court to exercise specific jurisdiction over a claim there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017)

> "The record does not support finding that Siasia made a prima facie showing of personal jurisdiction under either theory. Siasia's support for general jurisdiction relies on generalized claims and poorly supported speculations of future activity that plainly do not suffice to render FIFA "essentially at home" in New York. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see, e.g.*, *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627–30 (2d Cir. 2016). On appeal, Siasia argued that the court should find general jurisdiction over FIFA in New York because the United States Soccer Federation ("U.S. Soccer"), one of FIFA's member associations, is incorporated in New York and has its principal place of business in Chicago. But counsel explicitly conceded that this theory was never presented to the district court. Oral Argument at 25:00–26:10. Accordingly, even though U.S. Soccer is incorporated in New York, we find the record too undeveloped to support a distinction from *Daimler*, where the Supreme Court rejected a theory of general jurisdiction over a corporate defendant based on an argument that the defendant's subsidiary—which was not incorporated and did not have its principal place of business in California—was at home in the forum. 571 U.S. at 136–42; *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 332 (2d Cir. 2016) ("*Daimler*'s reasoning was based on an analogy to general jurisdiction over individuals, and there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or

another entity."). As to specific jurisdiction, the sole allegation concerning the events underlying this lawsuit that connects it to New York is that FIFA banned Siasia from using a coaching license he had been issued by U.S. Soccer. Siasia supports this claim only with conclusory statements labeling the coaching license a "New York license" and claiming that U.S. Soccer is FIFA's "New York agent." This record is insufficient to find that FIFA purposefully availed itself of New York in connection with Siasia's claims. *See Bristol-Myers Squibb*, 137 S. Ct. at 1781 ("For specific jurisdiction, a defendant's general connections with the forum are not enough."). This Court therefore finds the existing record insufficient to meet Siasia's burden for personal jurisdiction. Given this deficiency, we need not consider the parties' arguments regarding subject matter jurisdiction and failure to state a claim."

*Siasia v. Fed'n Internationale de Football Ass'n*, No. 22-72, 2023 WL 405762, at *1–2 (2d Cir. Jan. 26, 2023).

## IV. ATTORNEYS STAVIS AND BROWN DID NOTHING THAT IS SANCTIONABLE

Contrary to the repetitive claims for sanctions made by Universitas in all of its cases, the Second Circuit recently vacated an award of $20,000 in sanctions while citing the 2015 Universitas decision:

"We agree with Weiss that the District Court erred, or "abused its discretion," *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (alteration and citation omitted), by sanctioning him for bringing Plaintiff's RICO unlawful debt collection claims while alleging only one usurious loan." *See Universitas Educ., LLC v. Nova Grp., Inc.*, 784 F.3d 99, 102 (2d Cir. 2015) ("We review all aspects of a District Court's decision to impose sanctions for abuse of discretion.") (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999)). A court may sanction counsel for signing pleadings whose legal theories are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2); *see also id.* 11(c). "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend ... the law as it stands." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990). **"The fact that a legal theory is a long-shot does not**

necessarily mean it is sanctionable." ***Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011).** The inquiry is one of "objective unreasonableness and is not based on the subjective beliefs of the person making the statement." *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014). 'However faulty,' [Weiss's] positions 'were not so untenable as a matter of law as to necessitate sanction.' " *Salovaara v. Eckert*, 222 F.3d 19, 34 (2d Cir. 2000) (alteration and citation omitted). Indeed, "[t]he mere fact that" a court in a different jurisdiction agreed with Weiss "is enough, in the absence of controlling authority to the contrary, to support a good faith argument for extension ... of existing law." *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 831 (2d Cir. 1992). Thus, we hold that it was error to sanction Weiss for bringing Plaintiff's RICO unlawful debt collection claims while alleging only one usurious loan. The District Court characterized its "decision to impose sanctions" as "*in large part*[ ] due to the Complaint's overstep in asserting four RICO claims for collection of unlawful debt against all six Defendants in this action, based on allegations of a single usurious loan." App'x 642 (emphasis added). It is not apparent that the District Court would have ordered Weiss to pay $20,000—or anything at all—based solely on his signing a pleading with reckless factual claims. Accordingly, we vacate the April 24, 2020, order imposing sanctions and remand the cause for further proceedings." *See Salovaara v. Eckert*, 222 F.3d 19, 34–35 (2d Cir. 2000).

*Weiss v. David Benrimon Fine Art LLC*, No. 20-3842-CV, 2021 WL 6128437, at *2-4 (2d Cir. Dec. 28, 2021).

Suffice it to say, all of Attorney Brown's arguments in this case are accurate and meritorious and none of them are "long shots" that would still not warrant sanctions according to recently decided cases of the Second Circuit.

## V. CONCLUSION

In conclusion, Universitas wholly fails to provide any legitimate factual or legal basis for its requested sanctions.

**RELIEF REQUESTED**

WHEREFORE, PREMISES CONSIDERED, Grist Mill Capital, LLC prays that Universitas's

Motion for Sanctions be denied, and that Defendant be awarded such other and further relief, at

law and in equity, to which Defendant may be entitled.

<div align="right">

Respectfully submitted,

s/ Jeffrey R. Sandberg
Jeffrey R. Sandberg, Texas Bar No. 00790051
Palmer Lehman Sandberg, PLLC
8350 North Central Expressway, Suite 1111
Dallas, TX 75206
Telephone: (214) 242-6444
Facsimile: (214) 265-1950
E-mail: jsandberg@pamlaw.com
(ADMITTED PRO HAC VICE)

Attorneys for Carpenter Financial Group,
LLC, Grist Mill Holdings, LLC, Grist Mill
Capital, LLC and Daniel Carpenter

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of May 2023, I electronically transmitted the
attached document to the Clerk of Court using the ECF System for filing. Based on
the records currently on file, the Clerk of Court will transmit a Notice of Electronic
Filing to the following ECF registrants:

Joe Manson, Esq.

<div align="right">

s/ Jeffrey R. Sandberg

</div>

# EXHIBIT B

RE: Motion for Sanctions Second Circuit

Jeff Sandberg <JSandberg@pamlaw.com>

Mon 5/8/2023 10:49 AM

To:Joseph Karam <jkaram@jmansonlaw.com>;Jonathan Einhorn <einhornlawoffice@gmail.com>

Cc:Joseph Manson <jmanson@jmansonlaw.com>

Good morning,
I oppose your proposed motion described below and consider your proposed motion to be frivolous and sanctionable. If you file a motion seeking sanctions against me and my firm as described below, I will seek sanctions against both of you and your firm in the Second Circuit appeal you reference below.
Have a nice day, Jeff

Jeffrey R. Sandberg, JD, MBA, CPA
Member of the Bar, Texas and Florida
Board Certified in Civil Appellate Law
By the Texas Board of Legal Specialization

Palmer & Manuel, PLLC
Campbell Centre I
8350 North Central Expressway
Suite 1111
Dallas, Texas 75206
(214) 242-6454 Direct Line
(214) 242-6444 - Main Line
(214) 265-1950 Fax
jsandberg@pamlaw.com



To learn more about our law firm see our website at www.pamlaw.com

CONFIDENTIALITY NOTICE: This e-mail may be confidential and subject to attorney/client and attorney work product privileges. It is intended only for the addressee. If you are not the intended recipient, please reply with a note informing us it was misdirected, and then delete this e-mail message. Thank you.

**From:** Joseph Karam <jkaram@jmansonlaw.com>
**Sent:** Monday, May 08, 2023 9:41 AM
**To:** Jonathan Einhorn <einhornlawoffice@gmail.com>
**Cc:** Jeff Sandberg <JSandberg@pamlaw.com>; Joseph Manson <jmanson@jmansonlaw.com>
**Subject:** Re: Motion for Sanctions Second Circuit

Mr. Einhorn,

While the applicable precedent does not require Universitas to disclose more at this time, there are multiple bases upon which Universitas intends to seek sanctions.

Under Rule 38, Universitas contends that the appeal was patently frivolous and that Universitas is entitled to double costs and attorneys' fees. Indeed, the Second Circuit explicitly found that every argument advanced on appeal was baseless or outright frivolous. Second Circuit precedent makes clear

that just damages may be taxed jointly and severally against an appellant and their counsel for violations of this rule.

We seek sanctions under 28 U.S.C. Sec. 1927 because Mr. Sandberg and you multiplied the proceedings in the case by filing a completely unnecessary appeal with no chance of success. The record makes clear that your actions and Mr. Sandberg's as counsel are in bad faith. Thus, Universitas contends that sanctions are appropriate.

Finally, we seek sanctions against you and your clients pursuant to the Court's inherent powers for largely the same aforementioned reasons. Mr. Carpenter's and his entities' litigation strategy in the underlying matter has always been to obfuscate by advancing meritless arguments through various procedural vehicles. These are precisely the actions taken by Grist Mill Capital and Mr. Carpenter on appeal, and you and Mr. Sandberg are complicit in that strategy. In light of the Court's admonition to you and Mr. Sandberg in its Decision for abdicating your obligation to not bring frivolous arguments before the Court, Universitas believes that sanctions are appropriate under the Court's inherent power.

Regards,
Joe


Joseph Karam

Associate

Law Offices of Joseph L. Manson III

600 Cameron Street

Alexandria, VA 22314

o: 703.340.1693

m: 630.200.5432

---

**From:** Jonathan Einhorn <einhornlawoffice@gmail.com>
**Sent:** Friday, May 5, 2023 4:20 PM
**To:** Joseph Karam <jkaram@jmansonlaw.com>
**Cc:** Jeff Sandberg <JSandberg@pamlaw.com>; Joseph Manson <jmanson@jmansonlaw.com>
**Subject:** Re: Motion for Sanctions Second Circuit

Mr Karam; We disagree with your position as to the entry of sanctions. It would be premature to file a request for the same without specifically giving us notice for the basis for the request. Local Rule 27.1(b) only relates to our motion practice and no motion has been filed yet. If and when any such motion is filed it will be objected to and opposed.

Jonathan J. Einhorn

On Fri, May 5, 2023 at 1:51 PM Joseph Karam <jkaram@jmansonlaw.com> wrote:

> Mr. Sandberg and Mr. Einhorn,

I am reaching out to you pursuant to Second Circuit Local Rule 27.1(b) to inform you that Universitas intends to move for sanctions against yourselves, your law offices, and your clients, Grist Mill Capital and Daniel Carpenter in relation to the Second Circuit case captioned *Universita Education LLC v. Nova Group et al*, No. 21-2690, 21-2691 (2d Cir. 2021). Universitas intends to seek double costs and attorneys' fees pursuant to Federal Rule of Appellate Procedure 38, 28 U.S.C. Sec. 1927, and the court's inherent powers.

Please let us know your and your client's positions on the relief sought, as well as whether you and your clients intend to file a response to the motion as soon as practicable.

We intend to file on Monday, May 8, 2023.

Regards,


Joseph Karam

Associate

Law Offices of Joseph L. Manson III

600 Cameron Street

Alexandria, VA 22314

o: 703.340.1693

m: 630.200.5432


--
Jonathan J. Einhorn, Esq.
Attorney & Counselor at Law
129 Whitney Avenue
New Haven, CT. 06510
tel: 203-777-3777
einhornlawoffice@gmail.com
fax: 203-782-1721
cell: 203-623-7373